USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/13/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RAMON MORENO, et al., :
                              Plaintiffs, :
                              :
                -against- : 15 Civ. 9936 (LGS)
                              :
DEUTSCHE BANK AMERICAS HOLDING : **OPINION AND ORDER**
CORP., et al., :
                             Defendants. :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

       Plaintiffs Ramon Moreno and Donald O'Halloran ("Plaintiffs") bring this putative class action, alleging that certain Deutsche Bank entities mismanaged their 401(k) plan in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. Defendants Deutsche Bank Americas Holding Corp. ("DBAHC"), Deutsche Bank Matched Savings Plan Investment Committee (the "Investment Committee"), Deutsche Bank Americas Holding Corp. Executive Committee (the "Executive Committee"), Richard O'Connell, Deutsche Bank AG ("DB AG"), Deutsche Investment Management Americas Inc. ("DIMA"), DeAWM Service Company ("DSC") and RREEF America, LLC ("RREEF") (collectively, "Defendants") move to dismiss the First Amended Complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is denied in part and granted in part.

I. **BACKGROUND**

   A. **Factual Allegations**

       The following facts are taken from the Complaint and assumed to be true for the purposes of this motion. *See Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015).

       Plaintiffs are former participants in the Deutsche Bank Matched Savings Plan (the "Plan"). The Plan is a defined contribution plan, or 401(k) plan, that allows eligible Deutsche

Bank employees "to invest a percentage of their earnings on a pre-tax basis." The Plan provides its participants with a menu of investment options from which to choose when investing under the Plan.

As of 2009, the Plan had roughly $1.9 billion in assets and offered participants 22 "designated investment alternatives," ten of which were "proprietary Deutsche Bank mutual funds." In addition to the designated investment alternatives, the Plan offered participants "the option of opening a self-directed brokerage account," which gives participants "access to a broad array of stocks, bonds, and mutual funds." The core of the Complaint's allegations concerns the inclusion of Deutsche Bank proprietary mutual funds among the Plan's offerings. According to the Complaint, "Deutsche Bank earned millions of dollars in investment management fees by retaining [these proprietary mutual funds] in the Plan."

The Complaint specifically alleges that the Plan included three proprietary index funds that charged excessive fees in relation to other comparable index funds managed by the Vanguard Group ("Vanguard"). For instance, it asserts that from 2009 until February 2013, the Plan included the Deutsche Equity 500 Index Fund, a "passive" investment vehicle that is designed to track the performance of the S&P 500 Index. This proprietary fund is alleged to have charged management and administrative fees that were more than eleven times higher than an available Vanguard's index fund that tracked the S&P 500 Index. The Complaint further alleges that the expense ratio of this proprietary fund increased each year between 2010 and 2013 while the expense ratio associated with Vanguard's index fund remained the same. During this same period, the size of the Plan's investment in the proprietary fund also increased each year. In February 2013, the Deutsche Equity 500 Index Fund and other proprietary index funds were removed from the Plan and replaced with Vanguard index funds. The Plan's offering of the

Deutsche Equity 500 Index fund rather than the lower cost Vanguard index fund allegedly resulted in Plan participants paying over $ 2 million in "excess fees."

The Complaint also asserts that the Plan included actively-managed proprietary funds that charged investment management fees two to five times higher than other "actively managed funds in the same style." As the Complaint avers, not only did these proprietary funds have higher fees, but they also consistently underperformed as measured by benchmark indices. The Complaint asserts that as to two proprietary funds in particular, the Plan was the only defined contribution plan among roughly 1,400 such plans with more than $500 million in assets to hold these funds.

The Complaint alleges that the Plan was mismanaged in two other ways. First, the Plan failed to include the least expensive share class for each of its offered proprietary funds. The Complaint alleges that, given the amount of assets it held, the Plan would have been eligible to offer the share classes with the lowest expense ratios for several proprietary funds, but that the Plan failed to make such options available. Second, Defendants "failed to adequately investigate non-mutual fund alternatives such as collective trusts and separately managed accounts." The Complaint claims that Deutsche Bank offers its institutional clients these other types of investment accounts, which are in "the same investment style" as the Plan's proprietary funds but have expense ratios that were 30 to 40% lower.

**B. Defendants**

Defendant DBAHC "provides the funding for the Plan" and is designated as the Plan Administrator. Its "primary purpose" is to "serve as the vehicle" for "Deutsche Bank's pension and benefit plans."

Defendant the Investment Committee is "named by the Plan as one of the parties

responsible for administering and managing the Plan." Its duties include selecting and removing investments that the Plan offers to its participants. The Investment Committee is monitored by Defendant the Executive Committee, which has the authority to appoint and remove Investment Committee members. Defendant O'Connell is the Plan Administrator whose responsibilities include "establish[ing] and administer[ing] rules and procedures with respect to all matters relating to the election and use of the Investment Funds."

Defendant DIMA, which is owned by DBAHC, is a participating employer in the Plan, meaning its eligible employees may invest in the Plan. DIMA also serves as an investment advisor to the proprietary Deutsche Bank mutual funds included in the Plan. Similarly, Defendant RREEF, which is owned by DBAHC, is a participating employer in the Plan and was an investment sub-advisor to one proprietary mutual fund held by the Plan. Defendant DSC is a participating employer in the Plan and serves as the "transfer agent, dividend-paying agent, and shareholder service agent for the Deutsche Bank mutual funds in the Plan" and receives revenues from the Plan's investments in those mutual funds.

DB AG is the parent corporation of all Deutsche Bank entities, including DBAHC, and a participating employer in the Plan. The Complaint alleges that "all revenues generated by [DBAHC, DIMA, DSC and RREEF] are reported as revenues of [DB AG]." Lastly, the Complaint also asserts claims against John Does 1–40. Because no Doe defendant has appeared or joined the instant motion to dismiss, Plaintiffs' claims against John Does 1–40 are not at issue.

**C. Plaintiffs' Causes of Action**

On December 21, 2015, Plaintiffs filed this putative class action on behalf of "[a]ll participants and beneficiaries of [the Plan] at any time on or after December 21, 2009, excluding Defendants, any of their directors, and any officers or employees of Defendants with

responsibility for the Plan's investment or administrative function." The Complaint, which was amended in March 2016, asserts five causes of action under ERISA.

Count One asserts that the defendants it alleges are Plan fiduciaries -- the Investment Committee, the Executive Committee, O'Connell, DBAHC, DIMA and RREEF[1] -- breached their duties of care and loyalty in selecting, retaining and monitoring the Plan investments. Counts Two and Three allege prohibited transactions. Count Two alleges that the inclusion of proprietary mutual funds caused the Plan to engage in prohibited transactions with parties in interest -- DIMA, RREEF and DSC -- because these entities were paid monthly fees for the services they rendered to the proprietary funds. Count Three asserts that Defendants DBAHC, DIMA and RREEF are Plan fiduciaries that engaged in prohibited self-dealing transactions because they received consideration for the investment management services performed by DIMA and RREEF, which are subsidiaries of DBAHC.

Count Four alleges that DBAHC, O'Connell and the Executive Committees breached their fiduciary duties by failing to monitor the Plan's decision-making process. Count Five seeks equitable disgorgement from the Plan employers -- DB AG, DSC, DBAHC, DIMA and RREEF ("Employer Defendants") -- of any "ill-gotten proceeds" that resulted from the Plan's offering the proprietary funds.

Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). They argue that (1) the suit is barred by ERISA's statute of limitations, (2) Plaintiffs have failed to state a claim upon which relief can be granted for each Count and (3) DIMA and

---

[1] The Complaint alleges that these defendants are fiduciaries of the Plan under 29 U.S.C. § 1002(21)(A). It further alleges that the Investment Committee, the Executive Committee and O'Connell also have fiduciary status pursuant to 29 U.S.C. § 1102(a) because they are named fiduciaries of the Plan. As addressed below, Defendants contest only Plaintiffs' assertion that DIMA and RREEF are Plan fiduciaries.

5

RREEF lack fiduciary status as defined under 29 U.S.C. § 1002(21)(A).

## II.     STANDARD

In deciding motions to dismiss under Rule 12(b)(6), "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn*, 795 F.3d at 306.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  In reviewing a complaint, a court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

"Because the statute of limitations is an affirmative defense, Defendants carry the burden of showing that Plaintiff[s] failed to plead timely claims." *Demopoulos v. Anchor Tank Lines, LLC*, 117 F. Supp. 3d 499, 507 (S.D.N.Y. 2015); *see Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008) ("The lapse of a limitations period is an affirmative defense that a defendant must plead and prove." (citing Fed. R. Civ. P. 8(c)(1))).  Accordingly, dismissal based on an affirmative defense at the complaint stage is warranted only if "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Staehr*, 547 F.3d at 425 (emphasis omitted) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).

### III.   DISCUSSION

#### A.  Statute of Limitations

Defendants assert that Plaintiffs' suit is barred by the applicable statute of limitations. *See* 29 U.S.C. § 1113.  This argument is rejected.

ERISA provides "alternative limitations periods" that "depend[] on the underlying factual circumstances."  *Janese v. Fay*, 692 F.3d 221, 227–28 (2d Cir. 2012).  As pertinent here, "[t]he first period, applicable in the absence of any special circumstances, is six years from the date of the last action that was part of the breach" or violation.  *Id.* at 228; *see* 29 U.S.C. § 1113(1). "The second period is three years, applicable and beginning when a putative plaintiff has 'actual knowledge' of the [breach or] violation . . . ."[2]  *Janese*, 692 F.3d at 228 (quoting *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001)); *see* 29 U.S.C. § 1113(2).  Whichever of the two dates is earlier is the applicable bar date.  *See* 29 U.S.C. § 1113.

#### 1.  The Three-Year Limitations Period

Defendants first contend that the three-year limitations period is triggered because Plaintiffs had actual knowledge of the alleged ERISA violations.  In support, they argue that certain legally required Plan disclosures made clear to Plaintiffs that the Plan included proprietary funds that allegedly charged high fees and performed poorly more than three years prior to the filing of the initial complaint in December 2015.  Even assuming, as courts have done, that an ERISA plaintiff has actual knowledge of fees and performance data that are

---

[2]  Section 1113 also includes a tolling provision "in the case of fraud or concealment."  29 U.S.C. § 1113.  When a "complaint alleges fraud or concealment with the requisite particularity," a plaintiff must file suit within six years from the date that "plaintiff discovers, or should with reasonable diligence have discovered, the breach."  *Janese*, 692 F.3d at 228.  Because the Complaint pleads timely claims, the tolling provision is inapplicable at this stage of the litigation.

7

"clearly disclosed" by plan documents, *see Young v. Gen. Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 420 (S.D.N.Y. 2008), Defendants' argument is unavailing at this stage of the proceeding.

Actual knowledge requires the plaintiff to know "all material facts necessary to understand" that a breached has occurred. *Caputo*, 267 F.3d at 193. "[I]t is not enough that [the plaintiffs] had notice that something was awry; [the plaintiffs] must have had specific knowledge of the actual breach of duty upon which [they sued]." *Id.* (quoting *Brock v. Nellis*, 809 F.2d 753, 755 (11th Cir. 1987)). The Complaint asserts that Defendants violated ERISA by offering proprietary funds that charged fees that were excessive in relation to funds that were not included in the Plan but readily available. Given this allegation, the data for these comparator funds' fees and performance are material to Plaintiffs understanding that ERISA has been violated. *See Leber v. Citigroup 401(k) Plan Inv. Comm.*, No. 07 Civ. 9329, 2014 WL 4851816, at *4 (S.D.N.Y. Sept. 30, 2014) ("Plaintiffs could not have known that the fees were excessive, and thus a basis for an ERISA claim, without the relevant comparison point for assessing excessiveness.").

In this case, the Complaint explicitly alleges that Plaintiffs did not have knowledge of the "comparison of Plan costs and investment performance versus other available alternatives, comparison to other similarly-sized plans, information regarding other available share classes, and information regarding separate and collective trusts" until "shortly before this suit was filed." This allegation must be accepted as true on this motion. *Littlejohn*, 795 F.3d at 306. Defendants have not shown that it is clear from the face of the Complaint or any judicially

8

noticed court filings[3] that Plaintiffs actually knew of the fee or performance data for the comparable alternative funds more than three years before the commencement of this suit. Accordingly, dismissal under Rule 12(b)(6) based on ERISA's three-year statute of limitation is denied.

### 2. *The Six-Year Limitations Period*

Defendants alternatively argue that Plaintiffs' prohibited transaction claims -- Counts Two and Three -- are barred by the six-year limitation period provided by 29 U.S.C. § 1113(1). Section 1113(1) bars claims that are filed more than six years after "[t]he date of the last action which constituted a part of the . . . violation." *Id.* § 1113(1). Defendants argue that the claims are time barred because the only transaction allegedly prohibited under § 1106 was the initial decision to include the proprietary funds in the Plan and the proprietary funds were all initially selected "well over six years ago."

This argument fails as it does not accurately characterize the allegations in the Complaint. The Complaint alleges that the relevant prohibited transactions were the "shareholder service fees" paid to DSC and the monthly payments made to DIMA and RREEF in exchange for investment management services, and not the selection of the proprietary funds. According to the Complaint, these payments were deducted from "the assets being held for the Plan that were invested in Deutsche Bank-affiliated mutual funds."

---

[3]   Defendants attached to their motion to dismiss documents they claim can be considered at the complaint stage because those documents "are either legally required disclosures, or are documents possessed by or known to Plaintiffs and upon which Plaintiffs relied in bringing this action." *See ATSI Commc'ns, Inc.*, 493 F.3d at 98. Because Plaintiffs do not dispute that such documents can be judicially noticed and such documents are not dispositive to the statute of limitation defense, the Court assumes -- without deciding -- that Defendants' documents can be properly considered.

9

Citing 29 U.S.C. § 1101(b)(1), Defendants respond that these monthly payments to "fund advisors are not governed by ERISA because mutual fund assets are not plan assets." At this stage of the litigation, this argument is unpersuasive. Section 1106(a) covers transactions that constitute an "indirect . . . furnishing of . . . services" or "indirect . . . transfer[s] to . . . a party in interest, of any assets of the plan." *Id.* § 1106(a)(1)(C), (D). By alleging that Defendants included the proprietary funds for the purpose of increasing the amount of fees paid to DIMA, RREEF and DSC, the Complaint sufficiently alleges that the challenged transactions were indirect transfers to a party in interest.

Dismissal is not warranted based on Defendants' statute of limitations affirmative defense as it is not clear from the face of the Complaint or judicially noticed court filings that Plaintiffs' claims are time barred under 29 U.S.C. § 1113.

### B. Failure to State a Claim

#### 1. Breach of Fiduciary Duty (Count I)

The Complaint sufficiently pleads a claim for breach of fiduciary duty under 29 U.S.C. § 1104(a). Section 1104(a)(1) imposes both a duty of loyalty and a duty of care. *See Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570 (1985). The duty of loyalty requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of[] providing benefits to participants and their beneficiaries; and . . . defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A).

The duty of care compels a fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with

like aims." *Id.* § 1104(a)(1)(B). "[T]his standard focus[es] on a fiduciary's conduct in arriving at an investment decision, not on its results, and ask[s] whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir. 2013) (second and third alteration in original) (internal quotation marks and citation omitted). Whether a fiduciary acted with the requisite care "is measured according to the objective prudent person standard developed in the common law of trusts." *Chao v. Merino*, 452 F.3d 174, 182 (2d Cir. 2006). "[U]nder trust law, a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828–29 (2015).

Even where a plaintiff's allegations "do not directly address[] the process by which the Plan was managed, a claim alleging a breach of fiduciary duty may still survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed." *Pension Benefit Guar. Corp.*, 712 F.3d at 718 (internal quotation marks and citation omitted). "For instance, the complaint may allege facts sufficient to raise a plausible inference that . . . a superior alternative investment was readily apparent such that an adequate investigation would have uncovered that alternative." *Id.* at 719.

The Complaint plausibly alleges that, by failing to remove excessively costly proprietary mutual funds, the defendants who were Plan fiduciaries breached their duties to act in the best interests of the Plan and with due care. The Complaint alleges that proprietary index funds offered by the Plan charged fees that were excessive compared with similar investment products offered by Vanguard. Specifically, the Complaint alleges that one proprietary index fund charged fees that were more than eleven times higher than a comparable Vanguard index fund,

11

and that this fee differential increased each year as did the Plan's investment in the proprietary fund. Equally important, the Complaint alleges that Defendants stood to benefit from the alleged excessive fees because Deutsche Bank entities were paid investment management fees by these proprietary funds. These specific allegations regarding excessive fees from which Defendants stood to gain is sufficient to support the inference that the process used by the defendants who were Plan fiduciaries to select and maintain the Plan's investment options was "tainted by failure of effort, competence, or loyalty." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009).

Defendants offer their own facts to contest the plausibility of the allegation that the proprietary funds were underperforming. Defendants' assertions raise factual issues that cannot be resolved at the motion to dismiss stage. In sum, Defendants' contention that the Complaint fails to state a claim for breach of fiduciary duty is rejected.

### 2. Prohibited Transaction Claims (Count II and III)

Defendants argue that Plaintiffs have failed to state prohibited transaction claims under 29 U.S.C. § 1106 because the alleged transactions are covered by certain statutory exemptions. This argument is unavailing because it is not clear from the face of the Complaint or judicially noticed court filings that any exemption applies.

A defendant bears the burden of showing that an exemption to § 1106 applies. *See Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1215 (2d Cir. 1987) (noting that a fiduciary charged with engaging in a prohibited transaction "must prove by a preponderance of the evidence that the transaction in question fell within an exemption"). Because the defendant has the burden of proof, whether an exemption precludes a plaintiff's prohibited transaction claim is treated as an "affirmative defense[] for pleading purposes." *Allen v. GreatBanc Tr. Co.*, No. 15-

3569, 2016 WL 4474730, at *3 (7th Cir. Aug. 25, 2016).  As such, on a Rule 12(b)(6) motion, it must be clear from the face of the Complaint or judicially noticed court filings that the Plan's use of proprietary funds falls within an available exemption.  *See Staehr*, 547 F.3d at 425.

Defendants first contend that the prohibited transaction claims are foreclosed under 29 U.S.C. § 1108(b)(8), which provides that § 1106's prohibitions do not restrict "[a]ny transaction between a plan and . . . a common or collective trust fund or pooled investment fund maintained by a party in interest which is a bank or trust company supervised by a State or Federal agency" if the following conditions are met:

> (A) the transaction is a sale or purchase of an interest in the fund,
> (B) the bank, trust company, or insurance company receives not more than reasonable compensation, and
> (C) such transaction is expressly permitted by the instrument under which the plan is maintained, or by a fiduciary (other than the bank, trust company, or insurance company or an affiliate thereof) who has authority to manage and control the assets of the plan.

Defendants have not shown from the face of the Complaint that each of these requirements is met.  For instance, the exemption applies only to a "sale or purchase of an interest in the fund," but the alleged prohibited transactions are the payment of periodic fees to DIMA, RREEF and DSC from the assets being held for the Plan.  *See Santomenno v. Transamerica Life Ins. Co.*, No. 12 Civ. 2782, 2016 WL 2851289, at *6 (C.D. Cal. May 13, 2016) (noting that § 1108(b)(8) "is not about fees or how fees are properly collected").  At this stage of the litigation, § 1108(b)(8) does not bar Plaintiffs' claims.

Defendants also argue that the alleged transactions are exempt under Department of Labor ("DOL") Prohibited Transaction Exemption 77–3 ("PTE 77–3"), 42 Fed. Reg. 18,734 (Mar. 31, 1977).  PTE 77–3 provides in pertinent part that "'the restrictions of [29 U.S.C. § 1106] shall not apply to the acquisition or sale of shares of an open-end investment company

13

registered under the Investment Company of Act of 1940' -- i.e., a mutual fund -- 'by an employee benefit plan covering only employees of such investment company.'" *Leber v. Citigroup, Inc.*, No. 07 Civ. 9329, 2010 WL 935442, at *10 (S.D.N.Y. Mar. 16, 2010) (quoting PTE 77–3). This exemption applies only if certain requirements are met, including that "the plan must pay no 'investment management, investment advisory or similar fee' to the mutual fund, although the mutual fund itself may pay such fees to its managers." *Id.* (quoting PTE 77–3(a)). Further, "[a]ll other dealings between the plan and the investment company" must be "on a basis no less favorable to the plan than such dealings are with other shareholders of the investment company." PTE 77–3(d).

Defendants have not shown from the face of the Complaint that the dealings between the proprietary mutual funds and the Plan were not "less favorable to the [Plan] than such dealings are with other shareholders" of those mutual funds. Specifically, the Complaint alleges that the defendants who were Plan fiduciaries failed to include in the Plan the lowest-cost share classes while such share classes were made available to Deutsche Bank's institutional clients. *See Krueger v. Ameriprise Fin., Inc.*, No. 11 Civ. 2781, 2012 WL 5873825, at *17 (D. Minn. Nov. 20, 2012) (denying Rule 12(b)(6) motion based on PTE 77–3 where the plaintiffs claimed that the defendants failed to make available "the lowest-cost share class of [certain] funds" that were available to "similarly situated institutional shareholders, who could have invested in lower cost shares"). Accordingly, Defendants have failed to show that an exemption precludes the prohibited transaction claims.

### 3. *Lack of Fiduciary Status*

Counts I, II and III state a valid claim against some defendants, but not DIMA and RREEF, which are dismissed from those claims. The Complaint fails to allege that DIMA and

14

RREEF are Plan fiduciaries under ERISA. Section 1002(21)(A)(ii) provides that "a person is a fiduciary with respect to a plan to the extent . . . he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan." Courts have incorporated the DOL's regulations, 29 C.F.R. § 2510.3–21, when interpreting § 1002(21)(A)(ii), explaining that:

> to plead that a defendant is a fiduciary because it provided 'investment advice for a fee,' a plaintiff must plead that (1) the defendant provided individualized investment advice; (2) on a regular basis; (3) pursuant to a mutual agreement, arrangement, or understanding that (4) the advice would serve as a primary basis for the plan's investment decisions; and (5) the advice was rendered for a fee.

*Walker v. Merrill Lynch & Co.*, No. 15 Civ. 1959, 2016 WL 4775823, at *5 (S.D.N.Y. Mar. 25, 2016) (quoting *F.W. Webb Co. v. State St. Bank & Tr. Co.*, No. 09 Civ. 1241, 2010 WL 3219284, at *8 (S.D.N.Y. Aug. 12, 2010)); *accord Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co.*, 768 F.3d 284, 297 (3d Cir. 2014) (applying the five-part test derived from 29 C.F.R. § 2510.3–21).[4]

The Complaint does not sufficiently allege that DIMA and RREEF provided investment advice to the Plan for a fee. The Complaint asserts that DIMA and RREEF provided investment advice to the mutual funds, but does not allege that it provided such advice to the Plan. Plaintiffs also fail to allege any facts to support the inference that the advice rendered by DIMA and RREEF served as the "primary basis" for the Plan's investment decisions. *See Walker*, 2016 WL 4775823, at *7. Rather, the Complaint alleges that the decision to include or remove the proprietary mutual funds was made by the Investment Committee, and does not allege that

---

[4] Although the DOL has promulgated a regulation that amends its interpretation of the term "fiduciary" as defined in 29 U.S.C. § 1103(21)(a)(ii), the interpretation in the text above remains effective through April 2017. *See* 29 C.F.R. § 2510.3–21(j); *see generally* Definition of the Term "Fiduciary"; Conflict of Interest Rule—Retirement Investment Advice, 81 Fed. Reg. 20, 946, 20,954–58 (Apr. 8, 2016) (to be codified at 29 C.F.R. § 2510.3–21) (discussing the five-part test and DOL's prospective amendments).

DIMA or RREEF provided any investment advice to the Investment Committee. Because the Complaint fails to allege that DIMA and RREEF are fiduciaries, Counts I, II, and III are dismissed as against them.

### 4. Failure to Monitor Claim (Count IV)

Defendants' only argument as to why Count IV fails to state a claim is that the failure-to-monitor claim is "wholly derivative of Counts I-III and therefore falls on the same grounds." Because Plaintiffs have sufficiently alleged claims under Counts I, II and III, Defendants' argument regarding the failure-to-monitor claim fails.

### 5. Equitable Restitution (Count V)

Defendants seek dismissal of Count V, which seeks equitable restitution under 29 U.S.C. § 1132(a)(3). This section permits plan participants to bring a civil action "to obtain other appropriate equitable relief" to redress "any act or practice which violates" ERISA. 29 U.S.C. § 1132(a)(3). The Complaint alleges that the Employer Defendants "should be required to disgorge all monies they received during the relevant class period as a result of the Plan's investments in Deutsche Bank-affiliated mutual funds."

Under § 1132(a)(3), "equitable relief' . . . refer[s] to those categories of relief that were typically available in equity." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (internal quotation marks and citation omitted). "[A] plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* at 213 (emphasis omitted). One "limited exception" to the requirement that money be clearly traceable occurs when a party seeks an "accounting for profits." *Id.* at 214 n.2. As the Supreme Court explained, "[i]f, for example, a plaintiff is entitled to a constructive trust on particular property held by the defendant, he may

also recover profits produced by the defendant's use of that property, even if he cannot identify a particular res containing the profits sought to be recovered." *Id.*

Plaintiffs contend that they seek "an accounting for profits" and therefore the traceability requirement does not apply. The Complaint, however, fails to state this "limited" equitable claim. The Complaint demands "all monies . . . received" by the Employer Defendants "as a result of the Plan's investments in Deutsche Bank-affiliated mutual funds;" the request is not limited to the profits on particular property held by Defendants. Moreover, to the extent that Plaintiffs seek other kinds of equitable restitution, Plaintiffs fail to allege facts sufficient to meet the traceability requirement. As the Complaint alleges, the fees sought were paid from a "pool of assets." *See Urakhchin v. Allianz Asset Mgmt. of America, L.P.*, No. 15 Civ. 1614, 2016 WL 4507117, at *8 (C.D. Cal. Aug. 5, 2016) (dismissing claim for equitable restitution where the "[p]laintiffs fail to allege that any of the money sought to be disgorged can be traced to particular funds or property in the [d]efendants' possession"). Thus, Plaintiffs have failed to state a claim under 29 U.S.C. § 1132(a)(3).

### IV.  CONCLUSION

For the foregoing reasons, Defendants' Rule 12(b)(6) motion is DENIED in part and GRANTED in part. Count V is dismissed in its entirety, and Defendants DIMA, RREEF, DSC and DB AG are dismissed from this action. Plaintiffs' remaining claims against Defendants DBAHC, the Investment Committee, the Executive Committee and O'Connell remain pending. Defendants' motion for oral argument is DENIED as moot.

The Clerk of Court is directed to close the motions at Dkt. Nos. 30 and 38.

Dated:  October 13, 2016
        New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE