USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__09/05/17___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                               :
RAMON MORENO, et al.,              :
                 Plaintiffs,   :
                               :        15 Civ. 9936 (LGS)
         -against-           :
                               :      **OPINION AND ORDER**
DEUTSCHE BANK AMERICAS HOLDING   :
CORP., et al.,                        :
                  Defendants. :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

Plaintiffs[1] bring this putative class action, alleging Defendants,[2] fiduciaries of the

Deutsche Bank Matched Savings Plan (the "Plan"), mismanaged the Plan in violation of the

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. Plaintiffs move

to certify a class with respect to their claims asserted on behalf of the Plan. For the following

reasons, the motion is granted.

## I.    BACKGROUND

Familiarity with the procedural history and underlying allegations is assumed. *See*

*Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 Civ. 9936, 2016 WL 5957307, at *1–

3 (S.D.N.Y. Oct. 13, 2016).

---

[1] Plaintiffs are Ramon Moreno; Donald O'Halloran; Omkharan Arasarantnam; Baiju Gajjar; and
Rajath Nagaraja.
[2] Defendants are Deutsche Bank Americas Holding Corp.; the Deutsche Bank Matched Savings
Plan Investment Committee; the Deutsche Bank Americas Holding Corp. Executive Committee;
Richard O'Connell; John Arvanitis; Robert Dibble; Tim Dowling; Richard Ferguson; James
Gnall; Louis Jaffe; Patrick McKenna; David Pearson; Joseph Rice; Scott Simon; Andrew
Threadgold; and James Volkwein.

## A.     The Plan

The Plan is a defined contribution plan, or 401(k) plan, for eligible employees of Defendant Deutsche Bank Americas Holding Corp. ("DBAHC") and its affiliates.  The Plan entitles eligible employees to contribute a certain portion of their earnings into individual investment accounts.  Plaintiffs are five current or former participants in the Plan.

From December 2009 through today, the Plan has offered its roughly 22,000 participants a menu of around 20 to 30 "core investment options."  The Plan has also offered a "mutual fund window," i.e., a self-directed brokerage account ("SDBA"), which gives participants access to thousands of mutual funds, as well as stocks and bonds.  Only a small percentage of participants have invested through the SDBA, which is designed for sophisticated investors.

DBAHC is the Plan sponsor.  It manages the Plan through, among others, a Plan Administrator, Defendant the Deutsche Bank Matched Savings Plan Investment Committee ("Investment Committee") and Defendant the Deutsche Bank Americas Holding Corp. Executive Committee ("Executive Committee").  The Investment Committee[3] sets the menu of core investment options and recommends investment policies to the Executive Committee.  The Executive Committee[4] appoints members to the Investment Committee and evaluates its performance.  These Committees are comprised exclusively of DBAHC managers or executives. The Plan Administrator, who has been Defendant Richard O'Connell since 2011, has the day-to-day responsibility for the Plan's operations and administration.

---

[3] Defendants Arvanitis, Dibble, Dowling, Ferguson, Gnall, Jaffe, McKenna, O'Connell, Pearson, Rice, Threadgold, Simon and Volkwein are alleged to have served on the Investment Committee during the pertinent time period.
[4] Defendants Arvanitis, Dibble, Ferguson, Gnall, McKenna and Simon are alleged to have served on the Executive Committee during the pertinent time period.

### B. Defendants' Alleged Mismanagement of the Plan

#### 1. Preference for DBAHC-Affiliated Mutual Funds

As of December 2009, the start of the proposed class period, the Plan offered participants 22 core investment options, ten of which were DBAHC-affiliated mutual funds (the "proprietary funds"). The proprietary funds charge investment management fees and administrative fees that are paid to DBAHC's subsidiaries.

The Third Amended Complaint ("Complaint") alleges that Defendants mismanaged the Plan by favoring high-cost proprietary funds to benefit Defendants at the expense of participants. Citing the report prepared by their proposed expert, Dr. Steven Pomerantz, which was filed in support of this motion, Plaintiffs contend that three of the 10 proprietary funds offered by the Plan were passive "index" funds that consistently charged higher fees than non-proprietary funds that tracked the same index. The Plan retained these proprietary index funds until February 2013, even though a third-party investment advisor alerted the Investment Committee of lower-fee alternatives in 2011. Approximately $502 million was invested in the index proprietary funds when they were removed as investment options. Dr. Pomerantz avers that the average investment fee for the three proprietary index funds was more than five times the fee charged by non-proprietary index funds in the same investment style.

For the Plan's other seven proprietary funds, which were actively managed, Plaintiffs assert that these funds charged higher fees and performed worse than available alternatives. Dr. Pomerantz avers that that the amount invested in these seven proprietary funds peaked at $483 million, and the average fee percentage was almost 70% higher than the fees paid by the average similarly-sized 401(k) plan for similar investments.

Plaintiffs adduce evidence they contend shows the Investment Committee ignored the Plan's Investment Policy Statement ("IPS"), which advised that poorly performing investment options be placed on either a "Special Review List" or "Termination Review List." As of 2010, four proprietary funds were on the Special Review List and one was on the Termination Review List. In 2011, the Investment Committee stopped using the lists in contravention of the IPS until the IPS was amended in 2016 to remove any reference to the lists. Around the time the Investment Committee allegedly ceased using the lists to track fund performance, it also stopped including in its minutes details regarding the performance of specific funds.

### 2. Failure to Consider Cheaper Share Classes or Mutual Fund Alternatives

Plaintiffs assert that Defendants failed to minimize investment management expenses in two other ways for proprietary and non-proprietary mutual funds. First, Defendants did not consider including lower-cost "R6" share classes of the proprietary and non-proprietary mutual funds when such share classes became available in August 2014 and June 2015, respectively. The Plan instead retained the institutional share classes, which Plaintiffs contend offer the same investment product as the R6 share class but charge higher investment management fees. Second, Defendant failed to consider the use of alternatives to mutual funds, such as separate accounts and collective investment trusts, which have lower fees but were in the same investment style.

### 3. Failure to Control Recordkeeping Expenses

According to Plaintiffs, Defendants also failed to control recordkeeping expenses. In 2012, at least some Defendants were advised that the "benchmark rate" for such expenses was $55 per participant. As of February 2013, the Plan paid recordkeeping fees to ADP equal to approximately $100 per participants.

## C.    Plaintiffs' Class Claims under ERISA

The Complaint alleges four counts under ERISA.  Count One asserts that Defendants, who allegedly are Plan fiduciaries, breached their duties of care and loyalty in selecting, retaining and monitoring the Plan investments.  *See* 29 U.S.C. § 1104(a)(1).  Counts Two and Three allege prohibited transactions.  Count Two alleges that the inclusion of the proprietary funds caused the Plan to engage in prohibited transactions with parties in interest, which includes DBAHC's subsidiaries that received fees for investment services rendered to the proprietary funds.  *See id.* § 1106(a)(1).  Count Three asserts that DBAHC engaged in prohibited self-dealing transactions because it caused the Plan to pay investment management fees and expenses to DBAHC's subsidiaries.  *See id.* § 1106(b)(1).  Count Four alleges that DBAHC, O'Connell and the Executive Committee breached their fiduciary duties by failing to monitor the decision-making process of the Investment Committee.

Plaintiffs seek class certification for their claims brought on behalf of the Plan under Federal Rule of Civil Procedure 23 and 29 U.S.C. § 1132(a)(2), which permits participants to seek relief under 29 U.S.C. § 1109.  Section 1109(a) provides that any fiduciary who breaches ERISA-imposed duties shall "make good to such plan any losses to the plan resulting from each such breach" and "be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."  29 U.S.C. § 1109(a).

Sections 1109(a) and 1132(a)(2) permit a participant in a defined-contribution plan to seek "recovery for fiduciary breaches that impair the value of plan assets in [that] participant's individual accounts."  *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008).  Such claims are derivative in nature -- they are not "made for individual relief, but instead are brought in a representative capacity on behalf of the plan."  *L.I. Head Start Child Dev. Servs.,*

*Inc. v. Econ. Opportunity Comm'n of Nassau Cty., Inc.*, 710 F.3d 57, 65 (2d Cir. 2013) (internal quotation marks omitted). Thus any monetary recovery is awarded to the Plan, not the participants. *See LaRue*, 552 U.S. at 262 n.* (Thomas, J. concurring) ("[A] participant suing to recover benefits on behalf of the plan is not entitled to monetary relief payable directly to him; rather, any recovery must be paid to the plan."); *L.I. Head Start*, 710 F.3d at 66 ("[T]he fact that damages awarded to the Plan may provide plaintiffs with an indirect benefit . . . does not convert their derivative suit into an action for individual relief." (internal quotation marks omitted)).

The Complaint requests, among other relief, an order "compelling Defendants to personally make good to the Plan all losses that the Plan incurred as a result of the breaches of fiduciary duties and prohibited transactions" alleged in the Complaint. It also seeks equitable relief, including the "appointment of an independent fiduciary or fiduciaries to run the Plan; transfer of Plan assets out of imprudent investments into prudent alternatives; and removal of Plan fiduciaries deemed to have breached their fiduciary duties and/or engaged in prohibited transactions."

Plaintiffs move for certification of the following proposed class: "All participants and beneficiaries of the Deutsche Bank Matched Savings Plan at any time on or after December 21, 2009, excluding Defendants, any of their directors, and any officers or employees of Defendants with responsibility for the Plan's investment or administrative function." Plaintiffs seek appointment as Class Representatives and Plaintiffs' counsel be designated Class Counsel.

## II.  STANDARD

Under Rule 23(a), plaintiffs may sue as a class only if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

A class must also satisfy at least one of the requirements contained in Rule 23(b).  Fed. R. Civ. P.

23(b); *see Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015).  Here, Plaintiffs seek

certification primarily under Rule 23(b)(1), which permits class certification if prosecuting

separate actions by or against individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members
> that would establish incompatible standards of conduct for the party opposing the
> class; or
> (B) adjudications with respect to individual class members that, as a practical
> matter, would be dispositive of the interests of the other members not parties to
> the individual adjudications or would substantially impair or impede their ability
> to protect their interests.

Fed. R. Civ. P. 23(b)(1).

Rule 23 "'does not set forth a mere pleading standard.'  Rather, a party must not only 'be

prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law

or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule

23(a)." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Wal-Mart Stores, Inc.*

*v. Dukes*, 564 U.S. 338, 350 (2011)).  "The party must also satisfy through evidentiary proof at

least one of the provisions of Rule 23(b)." *Id.*  Rule 23 requires a "rigorous analysis" that

"frequently entail[s] overlap with the merits of the plaintiff's underlying claim." *Roach*, 778

F.3d at 407 (quoting *Comcast*, 133 S. Ct. at 1432).  The plaintiff must establish by a

preponderance of the evidence that each of Rule 23's requirements is met. *In re Vivendi, S.A.*

*Sec. Litig.*, 838 F.3d 223, 264 (2d Cir. 2016).

## III.    DISCUSSION

### A.    The Requirements of Rule 23(a)

#### 1.  Numerosity

The parties do not dispute numerosity.  "Rule 23(a)(1) does not mandate that joinder of all parties be impossible -- only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate."  *Cent. States Se. & Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244–45 (2d Cir. 2007).  In the Second Circuit, "numerosity is presumed where a putative class has forty or more members." *Shahriar v. Smith & Wollensky Rest. Grp.*, 659 F.3d 234, 252 (2d Cir. 2011).  The Plan has around 22,000 participants and 10,000 former participants.  The numerosity requirement is satisfied.

#### 2.  Commonality

Plaintiffs have shown commonality.  Commonality is satisfied where "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "A question of law or fact is common to the class if the question is 'capable of classwide resolution -- which means that its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"  *Johnson v. Nextel Comms. Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (some internal quotation marks, citations and alterations omitted) (quoting *Wal-Mart*, 564 U.S.at 350).  "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."  *Id.*  "Typically, the question of defendants' liability for ERISA violations is common to all class members because a breach of fiduciary duty affects all participants and beneficiaries."  *In re J.P. Morgan Stable Value Fund ERISA Litig.*,

No. 12 Civ. 2548, 2017 WL 1273963, at *7 (S.D.N.Y. Mar. 31, 2017) (internal quotation marks omitted).

Plaintiffs raise numerous questions that are capable of classwide resolution, such as whether each Defendant was a fiduciary; whether Defendants' process for assembling and monitoring the Plan's menu of investment options, including the proprietary funds, was tainted by a conflict of interest or imprudence and whether Defendants acted imprudently by failing to control recordkeeping expenses. Resolution of these questions will "generate common answers apt to drive the resolution" of Defendants' liability. *Wal-Mart*, 564 U.S. at 350 (emphasis omitted). Indeed, numerous courts have found commonality where plaintiffs challenge a 401(k) plan's retention of investment products, including proprietary funds, alleging excessive fees. *See, e.g.*, *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 15 Civ. 1614, 2017 WL 2655678, at *4 (C.D. Cal. June 15, 2017); *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 572 (D. Minn. 2014).

Defendants argue that Plaintiffs cannot show commonality because none of the alleged breaches affected all class members. They note, for instance, that 12,000 class members never invested in a single proprietary fund at any point during the relevant period. Commonality, however, "does not mean that all issues must be identical as to each [class] member." *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 317 F.R.D. 374, 400 (S.D.N.Y. 2016) (internal quotation marks omitted). These distinctions among class members may affect the calculation of damages but do not defeat class certification when the underlying harm derives from the same common contention -- that the investment lineup made available to all participants violated ERISA. *Id.* If Plaintiffs' theories depend on distinct proof or legal questions common to some class members, subclasses may be created for purposes of case management. *See* Fed.

R. Civ. P 23(d); William B. Rubenstein, *Newberg on Class Actions* § 7:32 (5th ed., June 2017 update) ("*Newberg on Class Actions*") (noting that Rule 23(d) "authorize[s] a class action court to create subclasses for management purposes" and "expedite resolution of the case by segregating a distinct legal issue that is common to some members of the existing class" (internal quotation marks and alterations omitted)).

Defendants also argue that resolving this case involves a massive series of individualized analyses that turn on when and in which funds each participant invested. This argument misapprehends Plaintiffs' claims, which are brought on behalf of the Plan. Liability is determined based on Defendants' not Plaintiffs' decisions. *See Spano*, 633 F.3d at 585 ("By focusing exclusively on the final step of the defined-contribution plan -- that is, the participant's decisions with respect to the allocation of his or her funds -- [defendants' argument] ignores the fact that fund participants operate against a common background."). Whether a certain proprietary fund was imprudently retained or whether the recordkeeping expenses were excessive will be resolved with respect to the Plan as a whole. Damages may be determined in the aggregate as they are based on the total amount of Plan assets allocated to certain investments and the duration of those investments.

Defendants similarly contend that "intra-class conflicts" defeat commonality because, depending on the timing of their investments, "some class members had gains during some periods." This argument, cast here as an argument about conflicts over the propriety of an investment, has been repeatedly rejected as an objection to class certification when described as a conflict over the preferred damages period, or as an objection to the adequacy of representation. *See, e.g.*, *In re J.P. Morgan*, 2017 WL 1273963, at *10 ("[C]ourts in this district have found that issues related to differing preferred damages periods do not preclude

certification.") (collecting cases); *In re Symbol Tech., Inc. Sec. Litig.*, No. 05 Civ. 3923, 2015 WL 3915477, at *7 (E.D.N.Y. June 25, 2015) (rejecting argument that different purchase dates "could potentially motivate different class members to argue that the securities were relatively more or less inflated at different time periods") (internal quotation marks omitted). Regardless of how characterized, differing purchase dates among class members do not defeat class certification and instead go to the issue of damages. *See In re Symbol Tech*, 2015 WL 3915477, at *8. ("[P]utative intra-class conflicts relating to the time at which particular class members purchased their securities . . . relate to damages and do not warrant denial of class certification.") (internal quotation marks omitted). Where, as here, class members state the same claims based on the same misconduct, there are sufficient common questions to satisfy Rule 23(a)(2).

Defendants also argue that commonality is not satisfied because this case raises two affirmative defenses -- the execution of releases and the statute of limitations -- that must be litigated on a participant-by-participant basis. "Courts in this circuit have certified classes notwithstanding the purported defects Defendants identify" with respect to ERISA releases and statute of limitations. *In re J.P. Morgan*, 2017 WL 1273963, at *10. Defendants' argument is similarly unavailing.

As to the releases, Defendants note that Plaintiff Moreno signed a severance agreement that includes an express release of his ERISA claims. Defendants do not adduce any evidence as to how many other class members, if any, signed the releases or whether the releases' language vary such that they require individualized determinations. Nor do Defendants cite any legal authority to suggest the release precludes Plaintiff Moreno or any class member from participating in this derivative suit under § 1132(a)(2), an issue the Court need not address on this motion. *See, e.g.*, *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 75 (S.D.N.Y. 2006)

("[N]umerous courts have held that under ERISA, individuals do not have the authority to release a defined contribution plan's right to recover for breaches of fiduciary duty."). Defendants' reference to Plaintiff Moreno's release, without more, does not defeat class certification or justify the creation of a subclass.

As to the statute of limitations defense, Defendants note that, although the proposed class period begins six years before the filing of the initial complaint, ERISA provides for a three-year rather than six-year limitations period when a participant had "actual knowledge" of a purported breach. *See* 29 U.S.C. § 1113; *see Janese v. Fay*, 692 F.3d 221, 227–28 (2d Cir. 2012) (ERISA provides "alternative limitations periods" that "depend[ ] on the underlying factual circumstances"). In support of their position that the statute of limitations defense would require individualized determinations, they point to Plaintiff Nagaraja's testimony that he started to have concerns about excessive fees around 2008 or 2009.

On this record, the statute of limitations defense does not defeat class certification or require narrowing the proposed class period. Under ERISA, a plaintiff's "actual knowledge" of a breach or violation that triggers the three-year period requires the plaintiff to know "all material facts necessary to understand" that a breach has occurred. *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001). "It is not enough that plaintiffs had notice that something was awry." *Id.* (alterations and internal quotation marks omitted). Plaintiffs here challenge the process by which Defendants selected and monitored the Plan's investment options, which includes their alleged disregard of advice that certain funds had excessive fees. The record on this motion does not show that any named Plaintiff or class member had -- or even could have -- "actual knowledge" of that process. Accordingly, the statute of limitations is not an issue that impedes class certification here. *See, e.g.*, *Osberg v. Foot Locker, Inc.*, No. 07 Civ. 1358, 2014

WL 5796686, at *5–6 (S.D.N.Y. Sept. 24, 2014) (rejecting argument that individual questions with regard to "actual knowledge" defeated class certification); *cf. Fish v. GreatBanc Tr. Co.*, 749 F.3d 671, 686–87 (7th Cir. 2014) ("[I]f the fiduciary made an imprudent investment, actual knowledge of the breach would usually require some knowledge of how the fiduciary selected the investment.") (internal quotation marks omitted).  Officers or employees with responsibility for the Plan's investment or administrative function, who might be privy to the Investment Committee's decision making process, are expressly excluded from the proposed class.

### 3. Typicality

Plaintiffs have shown typicality.  Typicality is intended to "ensure that maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotations marks omitted).  The requirement is met where "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009); *accord In re Virtus Inv. Partners, Inc. Sec. Litig.*, No. 15 Civ. 1249, 2017 WL 2062985, at *3 (S.D.N.Y. May 15, 2017).

Plaintiffs are five current or former participants in the Plan who held investments in the Plan at any time on or after December 21, 2009.  Their claims arise from the same course of events -- their participation in the Plan.  They make similar legal arguments to prove liability -- that Defendants mismanaged the Plan in violation of ERISA and continue to do so today.  Each Plaintiff has done one or more of the following: (1) invested in at least one proprietary mutual fund; (2) participated in the Plan during the time period when the recordkeeping fees were

allegedly excessive; and (3) invested in a proprietary or non-proprietary fund for which cheaper alternatives were allegedly available. This is sufficient to show typicality.

### 4. Adequacy of Representation

Plaintiffs have demonstrated adequacy. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class," and "raises concerns about the competency of class counsel and conflicts of interest." *Wal-Mart*, 564 U.S. at 345, 349 n.5. To determine whether a named plaintiff will be adequate, courts consider whether "(1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000); *accord Caufield v. Colgate-Palmolive Co.*, No. 16 Civ. 4170, 2017 WL 3206339, at *5 (S.D.N.Y. July 27, 2017). Here, Plaintiffs and the putative class members share an interest in remedying any alleged mismanagement of the Plan in violation of ERISA. Plaintiffs do not appear to have interests antagonistic to other class members, and Plaintiffs' counsel is qualified to conduct this litigation, as discussed more fully below.

Defendants' argument that Plaintiffs are not adequate class representatives because they do not understand the case and defer to their lawyers is unpersuasive. The claims here involve technical financial decisions affecting billions of dollars in assets and Plan fiduciaries' compliance with the requirements of ERISA. It is understandable, and excusable, that Plaintiffs, who are not lawyers or investment professionals, may have had difficulty answering questions about the claims. *See New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, No. 08 Civ. 5310, 2016 WL 7409840, at *5 (S.D.N.Y. Nov. 4, 2016) ("[I]t is well settled that a proposed representative's lack of knowledge is rarely disqualifying."). Each Plaintiff has filed a

declaration attesting that they have reviewed the allegations of the Complaint, are aware that the suit concerns allegations that Defendants' investment offerings were improper and testified to a similar effect at their depositions.  *Cf. Baffa*, 222 F.3d at 61 ("[C]lass representative status may properly be denied where the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys.").  Further, as discussed above, Defendants' assertion that Plaintiffs Moreno and Nagaraja may be subject to affirmative defenses does not render them inadequate representatives as the record fails to show that these defenses "threaten to become the focus of the litigation." *Id.* at 59-60.  The adequacy requirement is satisfied.

### B.      Class Certification under Rule 23(b)(1)

The proposed class is certified under Rule 23(b)(1)(B).  Rule 23(b)(1)(B) applies where "prosecuting separate actions by or against individual class members would create a risk of . . . adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or substantially impair or impede their ability to protect their interests."  One "classic example[]" of such a case is one that charges "'a breach of trust by an . . . fiduciary similarly affecting the members of a large class' of beneficiaries, requiring an accounting or similar procedure 'to restore the subject of the trust.'"  *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (quoting Advisory Committee's Notes on Fed. R. Civ. P.  23)).  "[T]he structure of ERISA favors the principles enumerated under Rule 23(b)(1)(B), since the statute creates a 'shared' set of rights among the plan participants by imposing duties on the fiduciaries relative to the plan, and it even structures relief in terms of the plan and its accounts, rather than directly for the individual

participants." *Douglin v. GreatBanc Tr. Co.*, 115 F. Supp. 3d 404, 412 (S.D.N.Y. 2015). "Most ERISA class action cases are certified under Rule 23(b)(1)." *Caufield*, 2017 WL 3206339, at *6.

Here, Plaintiffs challenge the investment lineup that the Plan offered to all participants, and the recordkeeping fees imposed on the Plan. Because Defendants' alleged conduct was uniform with respect to each participant, adjudicating Plaintiffs' claims, as a practical matter, would dispose of the interests of the other participants or substantially impair or impede their ability to protect their interests. *See Urakhchin*, 2017 WL 2655678, at *8 ("If this [ERISA] claim [alleging defendants managed a 401(k) plan's assets for their own benefit] were brought by an individual Plan participant, any judgment on Defendants' liability would necessarily affect the determination of any claim for monetary relief for this same conduct brought by other Plan participants in any concurrent or future actions."). Plaintiffs' action is akin to the "classic" example contemplated by the Supreme Court in *Ortiz*: Plaintiffs allege Defendants' conduct affected members of a class of thousands similarly as each were exposed to the same investment options and seek to restore losses to the Plan's assets, which are comprised of the individual accounts that allegedly paid excessive fees. *Ortiz*, 527 U.S. at 834. In addition to money damages, Plaintiffs also seek removal of Defendants as fiduciaries and other equitable relief. Such relief, if ordered, would as a practical matter dispose of the interests of non-party participants. *See id.*; *Krueger*, 304 F.R.D. at 578.

Defendants object to class certification under Rule 23(b)(1) as improper in the wake of the Supreme Court's decisions in *LaRue* and *Wal-Mart*. Although courts are split over whether Rule 23(b)(1)(B) remains an appropriate class vehicle for fiduciary-breach claims under ERISA, a majority have held that it is. *Compare, e.g.*, *Urakhchin*, 2017 WL 2655678, at *8 (certifying class under Rule 23(b)(1)(B); *Krueger*, 304 F.R.D. at 559 (same); *In re Northrop Grumman*

*Corp. ERISA Litig.*, 06 Civ. 6213, 2011 WL 3505264, at *17 (C.D. Cal. Mar. 29, 2011) ("A majority of courts addressing the propriety of certifying an ERISA class under § 502(a)(2) following *LaRue* . . . have continued to find Rule 23(b)(1)(B) certification appropriate."); *with In re J.P. Morgan*, 2017 WL 1273963, at *13 (denying class certification under Rule 23(b)(1)(B)); *Carr v. Int'l Game Tech.*, No. 09 Civ. 584, 2012 WL 909437, at *7 (D. Nev. Mar. 16, 2012) (holding *LaRue* precludes class certification under Rule 23(b)(1)(B)). Several courts in this Circuit have certified a class of plan participants alleging ERISA claims under Rule 23(b)(1)(B) without questioning the subsection's continuing applicability. *See, e.g.*, *Kindle v. Dejana*, 315 F.R.D. 7, 12 (E.D.N.Y. 2016); *Douglin*, 115 F. Supp. 3d at 412; *In re Beacon Assocs. Litig.*, 282 F.R.D. 315, 342 (S.D.N.Y. 2012). For the following reasons, the Court finds that neither *LaRue* nor *Wal-Mart* precludes a class under Rule 23(B)(1)(b).

Defendants argue that, because the Supreme Court in *LaRue* held that § 1132(a)(2) allows a participant to assert a claim based on "fiduciary breaches that impair the value of plan assets in a participant's individual account," 552 U.S. at 256, resolution of named Plaintiffs' claims would not foreclose a fiduciary-breach action filed by an absent class member. Defendants misapprehend Plaintiff's theory of liability. Plaintiffs do not assert harms based on Defendants' misconduct that is specific to his or her individual account. *Cf. id.* 552 U.S. at 251 (addressing ERISA participant's allegation that "he directed [his employer] to make certain changes to the investments in his individual account [in a defined-contribution plan], but [the employer] never carried out these directions"). Rather, named Plaintiffs -- whose collective participation in the Plan covers the entire class period -- challenge Defendants' process for selecting and retaining the investment options presented *to all Plan participants*. Adjudicating their claims challenging

Defendants' management of the Plan as a whole "would necessarily affect the resolution of any concurrent or future actions by other Plan participants." *Urakhchin*, 2017 WL 2655678, at *8.

As to *Wal-Mart*, Defendants contend that a Rule 23(b)(1)(B) class is unavailable given *Wal-Mart*'s observation "that individualized monetary claims belong in Rule 23(b)(3)," and the opinion's language about the due-process concerns with respect to notice and the opportunity to opt out. 564 U.S. at 362. Defendants' reliance on Wal-Mart -- which held that Rule 23(b)(2) does not permit the combination of "individualized awards of monetary damages" and classwide relief -- is misplaced. *Id.* at 361. In contrast to the claims in *Wal-Mart*, Plaintiffs' class claims under Rule 23(b)(1) are derivative in nature, not individualized. *See id.* at 360–61. Any monetary relief will be paid to the Plan, *see L.I. Head Start*, 710 F.3d at 65, and the Plan fiduciaries would be responsible for allocating the recovery among participants, *see In re Northrop Grumman*, 2011 WL 3505264, at *11 (noting the plan fiduciaries are responsible for allocating recovery among the participants); *Tussey v. ABB, Inc.*, No. 06 Civ. 4305, 2007 WL 4289694, at *5 (W.D. Mo. Dec. 3, 2007) (same). "[T]he fact that damages awarded to the Plan may provide plaintiffs with an indirect benefit," such as compensation for any losses, "does not convert their derivative suit into an action for individual relief." *L.I. Head Start*, 710 F.3d at 65 (internal quotation marks omitted); *see also Newberg on Class Actions* § 4:24 ("[E]ven applying *Wal-Mart* strictly, money damages that flow to the entire class ought to remain available under Rule 23(b)(1) as *Wal-Mart* suggests that they might be under Rule 23(b)(2); this would enable (b)(1) certification in, for example, ERISA cases in which monetary relief flows to the fund itself not to any individual litigant directly.")

Quoting *Wal-Mart*, Defendants also assert that certification under Rule 23(b)(1) "is appropriate only where 'individual adjudications would be impossible or unworkable.'" *See* 564

U.S. at 361. They further assert that adjudicating Plan participants' individual claims would be neither impossible nor unworkable because *LaRue* allows each participant to bring an action for losses to his or her "individual account." *LaRue*, 552 U.S. at 256. Defendants misconstrue *Wal-Mart*. Rule 23(b)(1) requires neither impossibility nor unworkability. Rather, as *Wal-Mart* explained, they are "traditional justifications for class treatment" under this subsection. 564 U.S. at 361; *cf. In re Petrobras Sec.*, 862 F.3d 250, 266 (2d Cir. 2017) (explaining that "language [that] conveyed the *purpose* underlying the operative requirements" did not also "create an independent element"). Certification under Rule 23(b)(1)(B) is appropriate because, as noted, Plaintiffs have met the requirements as set forth in the text of the Rule.

Defendants also argue that Rule 23(b)(1)(B) is appropriate only if there is a so-called limited fund, which occurs when the value of the aggregated claims exceeds the fund available to satisfy them. *See Ortiz*, 527 U.S. at 838. Defendants point to no binding precedent that holds Rule 23(b)(1)(B) is so narrow. Rather, "[c]ourts regularly certify 23(b)(1)(B) class actions in non-limited fund situations, particularly in ERISA cases alleging breach of a fiduciary duty," *Newberg on Class Actions* § 4:20, including those within this Circuit after *LaRue* and *Wal-Mart*. *See, e.g.*, *Dejana*, 315 F.R.D. at 10; *Douglin*, 115 F. Supp. 3d at 412; *but see In re J.P. Morgan*, 2017 WL 1273963, at 13.

The class is certified under Rule 23(b)(1)(B). Accordingly, the Court does not address the parties' arguments regarding Rule 23(b)(1)(A) or Rule 23(b)(3).

## C. Class Standing

Defendants challenge the scope of the class on the ground that Plaintiffs lack standing to represent the class with respect to funds in which they did not invest. This argument is incorrect. Under the doctrine of class standing, Plaintiffs may assert claims on behalf of all class members.

"[I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (internal quotation marks and citations omitted). "When this standard is satisfied, the named plaintiff's litigation incentives are sufficiently aligned with those of the absent class members that the named plaintiff may properly assert claims on their behalf." *Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of N.Y. Mellon*, 775 F.3d 154, 161 (2d Cir. 2014)). The "same set of concerns" are implicated and the named plaintiff has class standing where the claims of absent class members and the named plaintiff require similar inquiries and proof. *NECA*, 693 F.3d at 162; *see Ret. Bd.*, 775 F.3d at 161 (noting that the named plaintiff in *NECA* had class standing "largely because the proof contemplated for all of the claims would be sufficiently similar"); *accord Dezelan v. Voya Ret. Ins. & Annuity Co.*, No. 16 Civ. 1251, 2017 WL 2909714, at *7 (D. Conn. July 6, 2017).

Here, Plaintiffs allege that Defendants' process for managing the Plan caused them actual injury. They were charged excessive fees and were offered an unlawful menu of investments, assembled for the benefit of Defendants. Plaintiffs further allege that the putative class members suffered similar harm -- paying excessive fees, or being offered an unlawful lineup of investment options set by Defendants. Because the alleged harms are premised on the process Defendants used to manage the Plan, the claims involve similar inquiries and proof, and thus implicate the same set of concerns. *See Caufield*, 2017 WL 3206339, at *7. Plaintiffs have class standing to pursue the claims on behalf of the absent class members, including those who invested in

proprietary or non-proprietary funds offered by the Plan in which none of them invested.  *See*

*NECA*, 693 F.3d at 162 (holding that named plaintiff had class standing to sue on behalf of

absent class members whose investments, though different, were backed by loans from the same

originators and included nearly identical misrepresentations in separate offering documents as

the named plaintiff's investments).

### D.    Class Definition

Defendants argue that Plaintiffs' proposed class cannot be certified because some class

members lack Article III standing.  Defendants assert that class members who did not invest in

any of the challenged proprietary or non-proprietary funds or who did not pay recordkeeping fees

to ADP lack standing because they did not suffer an injury-in-fact.  "No class may be certified

that contains members lacking Article III standing."  *Denney v. Deutsche Bank AG*, 443 F.3d

253, 263 (2d Cir. 2006).  "Thus, while individual passive members of a putative class are not

required 'to submit evidence of personal standing,' the class 'must . . . be defined in such a way

that anyone within it would have standing.'"  *Royal Park Investments SA/NV v. Deutsche Bank*

*Nat'l Tr. Co.*, No. 14 Civ. 4394, 2017 WL 1331288, at *10 (S.D.N.Y. Apr. 4, 2017) (quoting

*Denney*, 443 F.3d at 263).

In light of these concerns, the class definition is amended to:  "all participants and

beneficiaries of the Deutsche Bank Matched Savings Plan at any time on or after December 21,

2009, *whose individual accounts suffered losses as a result of the conduct alleged in Counts One*

*through Four of the Third Amended Complaint*, excluding Defendants, any of their directors, and

any officers or employees of Defendants with responsibility for the Plan's investment or

administrative function."  *See Krueger*, 304 F.R.D. at 579 (amending class definition in defined-

contribution ERISA case to refer "to participants and beneficiaries 'who were injured by' the

alleged wrongful conduct . . . [to] address Defendants' concerns regarding class members' standing"). This definition is sufficient at this stage of the litigation.

E. **Appointment of Class Counsel**

Plaintiffs' counsel, Nichols Kaster, PLLP, is appointed to serve as Class Counsel. When appointing class counsel, a court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Plaintiffs' counsel are experienced litigators who serve as class counsel in ERISA actions involving defined-contribution plans, *see, e.g.*, *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 15 Civ. 1614, ECF No. 113 (C.D. Cal. June 21, 2017); *Brotherston v. Putnman Inves., LLC*, No. 15 Civ. 13825, ECF No. 88 (D. Mass. Dec. 13, 2016), and serve or served as counsel of record in other actions alleging breach of fiduciary duty claims under ERISA, *see, e.g.*, *Beach v. JPMorgan Chase Bank*, 17 Civ. 563 (S.D.N.Y.); *Andrus v. N.Y. Life Ins. Co.*, 16 Civ. 5698 (S.D.N.Y.). Plaintiffs' counsel, who have been counsel of record from the start of the case, have committed significant resources to the case, including drafting the pleadings, responding to a motion to dismiss and engaging in extensive discovery. They also attest that they will devote the resources necessary to prosecute this case to a conclusion and are not aware of any conflict of interest that would impede their ability to represent the class members. *See* Fed. R. Civ. P. 23(g)(4). The appointment of the Nichols Kaster as Class Counsel is warranted.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification is GRANTED. Defendants' request for oral argument is DENIED as moot.

The requirements of Rule 23(a) and (b)(1)(B) having been satisfied, it is hereby ORDERED that Plaintiffs are appointed the Class Representatives to sue on behalf of a class of "all participants and beneficiaries of the Deutsche Bank Matched Savings Plan at any time on or after December 21, 2009, whose individual accounts suffered losses as a result of the conduct alleged in Counts One through Four of the Third Amended Complaint, excluding Defendants, any of their directors, and any officers or employees of Defendants with responsibility for the Plan's investment or administrative function." It is further ordered that Nichols Kaster, PLLP is appointed Class Counsel.

The Clerk of Court is respectfully directed to close the motion at Docket Number 127 and 150.

Dated: September 5, 2017
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE