# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Ramon Moreno, Donald O'Halloran, Omkharan Arasaratnam, Baiju Gajjar, and Rajath Nagaraja, individually and as representatives of a class of similarly situated persons, and on behalf of the Deutsche Bank Matched Savings Plan,<br><br>               Plaintiffs,<br><br>v.<br><br>Deutsche Bank Americas Holding Corp., Deutsche Bank Matched Savings Plan Investment Committee, Deutsche Bank Americas Holding Corp. Executive Committee, Richard O'Connell, John Arvanitis, Robert Dibble, Tim Dowling, Richard Ferguson, James Gnall, Louis Jaffe, Patrick McKenna, David Pearson, Joseph Rice, Scott Simon, Andrew Threadgold, and James Volkwein,<br><br>               Defendants. | Case No. 1:15-cv-09936 (LGS)<br><br><br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE IN PART THE EXPERT REPORTS AND TESTIMONY OF DR. WALTER TOROUS AND TERRY A. DENNISON** |

## INTRODUCTION

As revealed by their own admissions, Defendants' experts Walter Torous and Terry Dennison are not qualified to render opinions regarding Plaintiffs' recordkeeping claim (for which damages amount to over $7 million). Dr. Torous testified that he has not done any work with the recordkeeping functions of 401(k) plans, or ever studied that topic as part of his academic work. *Torous Dep. (Schutz Decl. Ex. 1) 17:16-18.* Likewise, Mr. Dennison flatly admitted that he does not claim to be a recordkeeping expert. *Dennison Dep. (Schutz Decl. Ex. 2) 101:14-102:9.* Nor have Dr. Torous or Mr. Dennison rendered any opinions on the subject of recordkeeping that would assist the trier of fact. While they opine that Plaintiffs' recordkeeping expert, Martin Schmidt, did not adequately "substantiate" his opinions regarding the reasonable cost of recordkeeping services (a credibility determination that will be for the Court to make at trial), they offer no independent analysis of their own on the subject, and do not offer any other meaningful "expert" analysis relating to recordkeeping. Accordingly, Plaintiffs respectfully request that the court exclude any testimony from these witnesses relating to recordkeeping.

## BACKGROUND

**I.       Dr. Torous Has No Relevant Experience with Respect to 401(k) Recordkeeping.**

Dr. Torous has a Ph.D. in economics, and since 1980 has held various posts in academia. *Torous Report* (*Schutz Decl. Ex. 3*) *¶ 1 & App'x A.*  His "areas of research include fixed income securities, equities, and derivative instruments as well as real estate markets, the behavior of stock prices, corporate governance, and financial distress." *Id.*

Dr. Torous has not done any work related to the recordkeeping functions of 401(k) plans. *Torous Dep. 17:16-18.*  He also has never studied recordkeeping functions or costs, and is not aware of any academic work in this area. *Id. at 17:19-23, 260:23-261:1.* Moreover, he has no experience hiring recordkeepers or benchmarking recordkeeping fees. *Id. at 261:2-5.*

1

Presumably because of his lack of expertise in this area, Dr. Torous' opinions regarding recordkeeping are limited to a single paragraph at the end of his report, in which he argues that Mr. Schmidt's calculation of excess recordkeeping fees is "unreliable" because Mr. Schmidt purportedly did not "substantiate" his estimate of a reasonable fee level with "evidence beyond his own [] experience" (which Dr. Torous notably lacks). *Torous Report ¶ 75*. That is the full extent of his opinion. *Torous Dep. 26:7-9* ("I thought that [Mr. Schmidt's] opinion was unreliable in that regard, but that's the extent of my opinion there.").

## II.    Mr. Dennison Also Lacks Relevant Recordkeeping Experience.

Terry Dennison retired from Mercer Investments, LLC in January 2017. *Corrected Dennison Report* (*Schutz Decl. Ex. 4*) *¶ 2*. At Mercer, Mr. Dennison worked as a consultant and then as U.S. Director of Consulting. *Id.* ¶¶ 2-6. In his report, Mr. Dennison states that he actively "made recommendations and led discussions" with respect to "investment option design, investment manager/fund selection and retention, and evaluation of investment manager/fund performance in the context of the market environment." *Id.* ¶ 4. However, he only "observed and participated" in discussions regarding the recordkeeping services provided to client plans. *Id.*

Mr. Dennison admitted that he does "not claim to be an expert in recordkeeping." *Dennison Dep. at 101:14-17*; *see also id. at 101:3-13, 101:25-102:9.* The recordkeeping area was handled "by a separate organization within Mercer," which he "was not involved with." *Id. at 101:22-24; see also id. at 47:5-18.* As a result, he has no relevant experience:

Q:  Did you ever draft requests for proposal?
A.  For recordkeeping services? No.
Q.  Did you ever sign off on requests for proposal for recordkeeping services?
A.  No.
Q.  Did you ever provide recommendations for proposals for recordkeeping services?
A.  No.
Q.   Did you ever provide recommendations on candidates for recordkeeping services?
A.   No.

Q. Did you ever conduct any benchmarking studies in connection with recordkeeping services?

A. No. That was done by the other group.

Q. Did you ever make any recommendations regarding to retain or drop recordkeepers?

A. No.

*Dennison Dep. 48:23-49:17.*

Despite his lack of recordkeeping expertise, Mr. Dennison's report purports to offer 14 paragraphs of expert opinion relating to recordkeeping. *Corrected Dennison Report, ¶¶ 113-126.* In summary, he repeats Dr. Torous' assertion that the analysis of Plaintiffs' recordkeeping expert (Mr. Schmidt) is "unsubstantiated," and asserts that the Plan Administrator properly monitored the recordkeeping fees paid to ADP. *Id. at ¶¶ 117, 120.*

With respect to the first point, his central charge is that Mr. Schmidt did not sufficiently consider the level of services that were provided by ADP in exchange for the recordkeeping fee. *Id. at ¶¶ 115, 116, 118.* However, he offers no explanation or analysis as to whether those services justified a higher fee than what Mr. Schmidt determined to be reasonable:

Q. Did you undertake your own analysis [as] to what a reasonable cost of recordkeeping would be during the time that ADP was the recordkeeper for the plan?

A. It is manifestly impossible for me to do such an analysis …

Q. My question wasn't whether you were right or wrong to do it, it was whether you did it.

A. I did not do it.

Q. You didn't undertake to analyze what would be a reasonable amount for recordkeeping services, correct?

A. No.

Q. You also did not conduct an analysis of the bundle of services offered by ADP to the plan versus what is typical in the 5 market, correct?

A. I did not do such an analysis.

Q. And you also did not conduct any analysis of the quality of the services of ADP, correct?

A. Correct.

Q. And you did not conduct any comparison of the services offered by ADP and Fidelity?

A. That's correct.

*Dennison Dep. 257:25-259:14.*

As to the second point (regarding the monitoring of the recordkeeping fees paid to ADP), he simply repeats the evidence in the record, and then offers a conclusory assertion that "the Plan administrator adhered appropriately to evolving industry standards and monitored the Plan's recordkeeping expenses." *Corrected Dennison Report, ¶¶ 120-26.* He offers no analysis of these unspecified standards or how they evolved, except in a footnote that references the adoption of certain fee disclosures by the Department of Labor ("DOL"). *Id. at n.176.*[1]

## ARGUMENT

### I. Defendants' Experts Are Not Qualified As Experts on Recordkeeping.

To provide an expert opinion, a witness must be "qualified as an expert by knowledge, skill, experience, training, or education" on the matter at issue. FED. R. EVID. 702. "[I]t is worth emphasizing that, because a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields." *Nimely v. City of New York*, 414 F.3d 381, 399 n.13 (2d Cir. 2005). An expert lacks qualification to testify on a subject if "[h]is experience ... does not translate to an understanding of" that subject. *Loyd v. United States*, 2011 WL 1327043, at *5 (S.D.N.Y. Mar. 31, 2011).

Here, neither Mr. Dennison nor Dr. Torous are qualified to provide expert opinions with respect to 401(k) recordkeeping services, or reasonable compensation for the same. Although Dr. Torous may be qualified to provide expert opinions as to his fields of study, he simply has no relevant experience as to 401(k) plan recordkeeping. Similarly, although Mr. Dennison has experience working with retirement plans, he readily admitted that he is not an expert on recordkeeping. Accordingly, he is not qualified to opine on the subject. *See Estate of Jaquez v.*

---

[1] Even with respect to these fee disclosures, Mr. Dennison appeared to be uninformed. Specifically, Mr. Dennison initially asserted that "the Plan's recordkeeping services and its associated revenue sharing payments were disclosed to **Plan participants** in periodic disclosures of ADP's compensation." *Initial Dennison Report* (*Schutz Decl. Ex. 5*) ¶ *121* (emphasis added). However, these disclosures were sent only to the Plan **sponsor**. *See* 77 Fed. Reg. at 5655. Mr. Dennison later submitted a corrected expert report, but his initial error regarding the disclosure requirement illustrates his lack of expertise in this area.

*City of New York*, 104 F. Supp. 3d 414, 429 (S.D.N.Y. 2015), *aff'd*, 706 F. App'x 709 (2d Cir. 2017) ("Emergency room doctors may see some of everything, but it does not make them experts in everything."); *MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 576 (S.D.N.Y. 2017) (experts in financial markets and credit rating cannot provide expert opinion as to auditing); *Loyd*, 2011 WL 1327043, at *4 (expert could not testify as to cause of injury where expert had admitted at deposition that "the pathophysiology is a little beyond me").

## II.   Defendants' Experts Do Not Render Expert Opinions as to Recordkeeping.

Aside from their lack of qualifications as to 401(k) plan recordkeeping, Dr. Torous and Mr. Dennison do not offer opinions that will "help the trier of fact to understand the evidence or to determine a fact in issue" with respect to recordkeeping. FED. R. EVID. 702. Their personal beliefs regarding whether they believe Mr. Schmidt's recordkeeping analysis is "substantiated" or credible (without any analysis of their own) are not the stuff of expert opinion.[2] Likewise, Mr. Dennison's testimony regarding whether the Plan Administrator "adhered to industry standards" with respect to monitoring recordkeeping fees is unhelpful because he neither articulates the baseline standard of care nor identifies a reasonable and appropriate level of fees.[3]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court exclude the expert reports and testimony of Dr. Torous and Mr. Dennison to the extent they relate to recordkeeping.

---

[2] *See Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005) ("[T]his court, echoed by our sister circuits, has consistently held that expert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702."); *Secured Sys. Tech., Inc. v. Frank Lill & Son, Inc.*, 2012 WL 6628878, at *5 (W.D.N.Y. Dec. 19, 2012) ("[O]pinions as to the credibility of other expert witnesses are not admissible.").

[3] *See Stelman v. United States*, 2016 WL 5315196, at *13 (S.D.N.Y. Sept. 21, 2016) ("Dr. Korsten opined that Stelman's October 2012 wound care fell below the standard of care, but he did not articulate how or give any opinion about what the relevant standard of care should be. Accordingly, Dr. Korsten will be precluded at trial from testifying about Stelman's wound care ...."); *accord, Major League Baseball Props., Inc. v. Salvino, Inc.,* 542 F.3d 290, 311-12 (2d Cir.2008) (conclusory expert opinions are inappropriate); *Simmons v. United States,* 88 Fed.Appx. 435, 437-38 (2d Cir.2004) (expert's conclusory statement that physician's actions fell below the standard of care was "rightly regarded by the district court as insufficient to raise a genuine issue of material fact").

Dated: May 21, 2018                    **NICHOLS KASTER, PLLP**

/s/ Jacob T. Schutz
Kai H. Richter, MN Bar No. 0296545*
Paul J. Lukas, MN Bar No. 22084X*
Jacob T. Schutz, MN Bar No. 0395648*
Carl F. Engstrom, MN Bar No. 0396298*
Michele R. Fisher, NY Bar Code # MF4600
  *admitted *pro hac vice*
4600 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878

*Attorneys for Plaintiffs and the Class*


## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2018, a true and correct copy of Plaintiffs' Memorandum of Law in Support of Motion in Limine to Exclude in Part the Expert Reports and Testimony of Dr. Walter Torous And Terry A. Dennison was served by CM/ECF to the parties registered to the Court's CM/ECF system.

Dated: May 21, 2018                    /s/ Jacob T. Schutz
                                       Jacob T. Schutz