IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAMON MORENO, DONALD O'HALLORAN, OMKHARAN ARASARATNAM, BAIJU BAJJAR, and RAJATH NAGARAJA, individually and as representatives of a class of similarly situated persons, and on behalf of the Deutsche Bank Matched Savings Plan,<br><br>*Plaintiffs*,<br><br>v.<br><br>DEUTSCHE BANK AMERICAS HOLDING CORP., DEUTSCHE BANK MATCHED SAVINGS PLAN INVESTMENT COMMITTEE, DEUTSCHE BANK AMERICAS HOLDING CORP. EXECUTIVE COMMITTEE, RICHARD O'CONNELL, JOHN ARVANITIS, ROBERT DIBBLE, TIM DOWLING, RICHARD FERGUSON, JAMES GNALL, LOUIS JAFFE, PATRICK McKENNA, DAVID PEARSON, JOSEPH RICE, SCOTT SIMON, ANDREW THREADGOLD, and JAMES VOLKWEIN,<br><br>*Defendants*. | Case No. 1:15-CV-09936 (LGS)<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE IN PART THE EXPERT REPORTS AND TESTIMONY OF DR. WALTER TOROUS AND TERRY A. DENNISON**

Jaime A. Santos, *admitted pro hac vice*
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC 200014
(202) 346-4000

James O. Fleckner, *admitted pro hac vice*
Alison V. Douglass, *admitted pro hac vice*
Paul E. Nemser, *admitted pro hac vice*
Michael K. Murray, *admitted pro hac vice*
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000

Richard M. Strassberg
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 813-8800

Dated: May 31, 2018

*Attorneys for Defendants*

95387442

Defendants file this memorandum in opposition to Plaintiffs' Motion *in Limine* to Exclude in Part the Expert Reports and Testimony of Dr. Walter Torous and Terry A. Dennison. Plaintiffs ask the Court to exclude their critiques of Plaintiff's expert, Martin A. Schmidt, as well as Mr. Dennison's opinion that Defendants properly monitored recordkeeping fees, on the ground that neither expert is supposedly qualified to render such opinions. The motion should be denied. Dr. Torous's opinion that Mr. Schmidt's calculation is "unreliable" is based on his knowledge and skill as an economist, and there is no dispute that Dr. Torous—a Senior Lecturer at the Massachusetts Institute of Technology and Professor of Finance Emeritus and the former Lee and Seymour Graff Endowed Professor at the John E. Anderson School of Management at the University of California at Los Angeles—is qualified as an expert in that field. Similarly, Mr. Dennison's opinions are based on his more than 40 years' experience in the retirement industry—most recently as the U.S. Director of Consulting at Mercer Investments, LLC—during which he advised clients on a range of plan-related topics, participated in discussions about recordkeeping, and helped clients analyze information about recordkeeping fees.

**I.      Dr. Torous is Qualified to Testify that Mr. Schmidt's Recordkeeping Damages Calculation is "Unreliable."**

Dr. Torous received a Ph.D. in economics from the University of Pennsylvania in 1981, and has taught economics at the master's and doctoral levels for over thirty years. Expert Report of Dr. Walter Torous (ECF No. 202-3; Murray Decl. Ex. A) ("Torous Rep.") ¶ 1, Appx. A. Dr. Torous has conducted extensive economic research on an array of financial topics, published articles on the same, and testified as an expert in dozens of cases, *id.* ¶ 2, Appx. A-B. As such, Dr. Torous is indisputably qualified as an expert in economic principles and empirical analysis.

Indeed, Plaintiffs for the most part do not dispute Dr. Torous's qualifications to testify in this case. Plaintiffs take issue with just one of Dr. Torous's many opinions: that Mr. Schmidt's

1

calculation of damages from recordkeeping fees is "unreliable." *Id.* ¶ 75. Plaintiffs seek to exclude this testimony because Dr. Torous is not "qualified to provide expert opinions with respect to 401(k) recordkeeping services, or reasonable compensation for the same." Pltfs.' Memo at 4. But this argument is based on the erroneous premise that Dr. Torous is proffering an expert opinion on *recordkeeping*. He is not. He is offering an opinion as *an economist* testifying about damages.

Dr. Torous explains "the fundamental principles of a proper damages methodology." Torous Rep. at 10. "[A] damages expert," he states, "should apply reliable, tested, and supported theories . . . to the circumstances of the case, and should not merely perform mechanical calculations." *Id.* ¶ 20. Dr. Torous explains that "it is not sufficient to simply calculate the difference between actual and but-for scenarios without regard for whether those scenarios are *properly constructed*." *Id.* (emphasis added). Properly constructing a but-for scenario requires considering "relevant issues, *data* and facts." *Id.* (emphasis added). Indeed, courts regularly recognize this concept when determining whether to admit all kinds of expert testimony.[1]

It is the application of these economic principles that leads Dr. Torous to conclude that Mr. Schmidt's calculation is unreliable.[2] As Dr. Torous explains, Mr. Schmidt provides *no data* to support his choice of a reasonable annual recordkeeping fee of $45-50 per participant.[3] *Id.* ¶ 75 ("Mr. Schmidt . . . does not provide any data, support, or evidence beyond his own claimed experience to substantiate his 'reasonable' range."). As a result, Dr. Torous cannot verify Mr. Schmidt's data, replicate his numbers, or assess the validity of his analysis. This renders Mr.

---

[1] *See, e.g.*, *Mink Mart, Inc. v. Reliance Ins. Co.*, 65 F. Supp. 2d 176, 180 (S.D.N.Y. 1999) (expert opinion must be "grounded on verifiable propositions of fact"); *see also Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G.*, No. 11-CV-681-KBF, 2015 WL 5459662, at *8 (S.D.N.Y. Sept. 16, 2015) (there "must be some verifiable way of demonstrating the validity of" expert opinions for the testimony to be admissible).
[2] Plaintiffs' contention that Dr. Torous's opinion is a mere "personal belief[]" lacks merit. Pltfs.' Memo at 5.
[3] Relying on some of the same infirmities identified by Dr. Torous, Defendants have moved to exclude Mr. Schmidt's testimony. *See* Defts' Mot. to Exclude Expert Testimony of Martin Schmidt (ECF No. 212).

Schmidt's damages opinion "unreliable." *Id.* ("Due to the lack of support materials for [Mr. Schmidt's] claimed reasonable recordkeeping fee ranges, I am not able to replicate or verify the validity of Mr. Schmidt's figures.").[4] Dr. Torous's analysis is not specific to the recordkeeping industry (nor need it be[5]); it is rooted in basic principles of empirical economics that Dr. Torous identifies—principles he is plainly qualified to use.

## II. Mr. Dennison is Qualified to Testify that Mr. Schmidt's Recordkeeping Damages Calculation is "Unsubstantiated" and that Defendants Properly Monitored Recordkeeping Fees.

Mr. Dennison has over 40 years of experience providing investment consulting services to the retirement industry. Expert Report of Terry A. Dennison (ECF No. 202-4) ("Dennison Rep.") ¶ 1. In that time, he has worked with more than 40 different plan clients, attended over 500 client meetings, and interacted directly with plan investment committees to address their needs and concerns. *Id.* ¶¶ 2-5. In light of his experience, Mr. Dennison has specialized knowledge that will help the Court to understand the evidence and evaluate Mr. Schmidt's opinions. This specialized knowledge includes the factors fiduciaries consider and the processes they use when making decisions about 401(k) recordkeeping services and the associated fees.

Indeed, Plaintiffs largely do not dispute Mr. Dennison's qualifications to testify in this case. They focus only on recordkeeping: (1) his opinion that Mr. Schmidt's calculation of recordkeeping damages is flawed because it is "unsubstantiated" and because Mr. Schmidt did not consider the level of recordkeeping services that were provided to the Plan in estimating a "reasonable" recordkeeping fee; and (2) his opinion that Defendants properly monitored the fees paid to ADP. Pltfs.' Memo at 3-4. Plaintiffs contend that these opinions should be excluded

---

[4] *Accord* Deposition of Dr. Walter Torous (ECF No. 202-1), at 26:5-9 ("There was nothing for me to substantiate. There was nothing that I could analyze; so I thought that his opinion was unreliable in that regard.").

[5] *See, e.g.*, *In re Bayou Grp.*, 439 B.R. 284, 331-332 (S.D.N.Y. 2010) (allowing expert in accounting to testify to hedge fund's insolvency even where expert had no expertise in *hedge fund* accounting in particular, where expert's conclusions did not rely on any analysis specific to hedge funds).

3

because Mr. Dennison is not qualified to opine on anything related to recordkeeping. *Id.* at 4. In support, Plaintiffs point to isolated parts of Mr. Dennison's deposition testimony. But this testimony does not establish that Mr. Dennison is not qualified to give the challenged opinions.

Mr. Dennison did testify, as Plaintiffs point out, that he does not "claim to be an expert in recordkeeping." Deposition of Terry Dennison (ECF No. 202-2) ("Dennison Dep."), at 101:14-17. But Plaintiffs take that statement out of context and argue that Mr. Dennison is not qualified to testify to *anything* related to recordkeeping. The statement was made in response to the question whether a committee should "benchmark and negotiat[e] recordkeeping and investment fees separately." *Id.* at 101:3-8. While Mr. Dennison responded that he had no opinion on that specific subject—*i.e.*, separately benchmarking and negotiating recordkeeping fees—and thus could not purport to be an expert on *all things recordkeeping*, he was quick to add that he had "observed at client meetings and had discussion subsequently [about] recordkeeping issues." *Id.* 101:18-21; *see also* Dennison Rep. ¶ 4 ("I also observed and participated in discussions regarding the recordkeeping services provided to client plans.").[6] His experience was not limited to discussions and observation; he also helped committees analyze material provided by other consultants on recordkeeping requests for proposals and *recordkeeping pricing*. Dennison Dep. at 47:18-22 ("I assisted in interpreting the material that was provided by our retirement consultants in the process of doing [a request for proposal] or price check for our recordkeeper").

This experience qualifies Mr. Dennison to give the opinions Plaintiffs seek to exclude. As a seasoned retirement consultant who regularly advised individuals as to whether they had sufficient data to support their decisions, Mr. Dennison is qualified to testify that Mr. Schmidt's

---

[6] As Plaintiffs note, Pltfs.' Memo at 2-3, Mr. Dennison stated that he had not engaged in other discrete recordkeeping tasks, such as advising on recordkeeping proposals and candidates for recordkeeping services or conducting benchmarking studies for recordkeeping services. Dennison Dep. at 48:23-49:17. Those services were provided by a different consultant. *Id.* at 47:5-11. But the opinions Plaintiffs seek to exclude do not call for expertise in recordkeeping candidates, proposals, or benchmarking.

4

recordkeeping damages analysis is "unsubstantiated" because Mr. Schmidt provided no basis for his choice of a "reasonable" fee. And having helped clients understand outside analyses of recordkeeping pricing (and having observed and engaged in discussions about recordkeeping), Mr. Dennison is also qualified to opine that an accurate calculation of a "reasonable recordkeeping fee" would take into account the specific service's unique features. Finally, Mr. Dennison is qualified to opine on monitoring procedures generally (indeed, Plaintiffs do not contend otherwise), including procedures for monitoring recordkeeping fees, because his opinions are grounded in his personal observations of the recordkeeping monitoring performed by many plan fiduciaries over his decades-long career. *See* Dennison Rep. ¶ 121 (fee reports provided to Investment Committee were "consistent with the information that plan fiduciaries of defined contribution plans I have worked with received and reviewed").

Plaintiffs further criticize Mr. Dennison for not providing any "analysis of [his] own" and, in particular, for not "identif[ying] a reasonable and appropriate level of fees." Pltfs.' Memo at 5. But Plaintiffs point to no requirement that an expert provide his own analysis in order to critique another expert's analysis, nor could they. *See In re Zyprexa Prods. Liability Lit.*, 489 F. Supp. 2d 230, 285 (E.D.N.Y. 2007) ("defendants' experts . . . have no burden to produce models or methods of their own; they need only attack those of plaintiffs' experts").[7]

\* \* \*

For these reasons, the Court should deny Plaintiffs' Motion *in Limine* to Exclude in Part the Expert Reports and Testimony of Dr. Walter Torous and Terry A. Dennison.

---

[7] Plaintiffs argue that both experts' opinions should be excluded because their "personal beliefs regarding whether . . . Mr. Schmidt's recordkeeping analysis is . . . credible" is "not the stuff of expert opinion." Pltfs.' Memo at 5 & n.2. But neither expert will opine on Mr. Schmidt's ***credibility***, and therefore the two cases Plaintiffs cite are inapposite. *See Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005) (expert testimony that police officers testified untruthfully was inadmissible); *Secured Sys. Tech., Inc. v. Frank Lill & Son, Inc.*, No. 08-CV-6256, 2012 WL 6628878, at \*5 (W.D.N.Y. Dec. 19, 2012) (excluding expert testimony that another expert's opinions were "disingenuous" and in "bad faith" in part because "opinions as to the credibility of the other expert witnesses are not admissible").

Dated: May 31, 2018                                Respectfully Submitted,

/s/ James O. Fleckner
James O. Fleckner, *admitted pro hac vice*
Alison V. Douglass, *admitted pro hac vice*
Paul E. Nemser, *admitted pro hac vice*
Michael K. Murray, *admitted pro hac vice*
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000

Jaime A. Santos, *admitted pro hac vice*
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC 200014
(202) 346-4000

Richard M. Strassberg
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 813-8800

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

      I hereby certify that this document, filed on May 31, 2018, through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                              /s/ James O. Fleckner
                                              James O. Fleckner