USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/6/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RAMON MORENO, et al.,
        Plaintiffs,

    -against-        15 Civ. 9936 (LGS)

DEUTSCHE BANK AMERICAS HOLDING  **OPINION AND ORDER**
CORP., et al.,
        Defendants.
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

  Plaintiffs Ramon Moreno, Donald O'Halloran, Omkhar Arasartnam, Baiju Gajjar and Rajath Nagaraja bring this action individually and as representatives of a class of beneficiaries of the Deutsche Bank Matched Savings Plan (the "Plan"), claiming mismanagement of their 401(k) plan in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. Defendants Deutsche Bank Americas Holding Corp.,[1] Deutsche Bank Matched Savings Plan Investment Committee, Deutsche Bank Americas Holding Corp. Executive Committee and Richard O'Connell, the Plan Administrator, move for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the motion is granted in part and denied in part.

**I. BACKGROUND**

  The following background is taken from the parties' Rule 56.1 Statements and the parties' submissions on this motion. Familiarity with the case is assumed based on previous opinions with respect to Defendants' motion to dismiss and Plaintiffs' motion for class certification. *See Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 Civ. 9936, 2016

---

[1] Deutsche Bank Americas Holding Corp. and its affiliates are referred to herein as "Deutsche Bank."

WL 5957307, at *1 (S.D.N.Y. Oct. 13, 2016) (granting in part the motion to dismiss and dismissing Count V and certain Deutsche Bank affiliates from all counts); *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 Civ. 9936, 2017 WL 3868803, at *1 (S.D.N.Y. Sept. 5, 2017) (certifying a class under Federal Rule of Civil Procedure 23(b)(1)(B)).

Briefly, Plaintiffs claim that Defendants violated their fiduciary duties under ERISA in two principal ways relevant to this motion: (1) Defendants selected and retained Deutsche Bank's expensive and poorly performing proprietary mutual funds as available investments to participants in the Plan and (2) Defendants failed to consider non-mutual fund investment alternatives, such as lower cost separate accounts available to other Deutsche Bank clients.

Four causes of action remain and are alleged in the Third Amended Complaint, the operative complaint, (the "Complaint"):

I. Breach of ERISA duties of loyalty and prudence under ERISA §§ 404(a), 29 U.S.C. § 1104(a)(1)(A)-(B), (D), for offering proprietary funds despite their excessive fees and underperformance relative to other investments; failing to investigate the possibility of separate accounts and collective trusts, and failing to monitor and control excessive recordkeeping fees paid to ADP, Deutsche Bank's close business partner.

II. Prohibited transactions with a party in interest, in violation of ERISA §§ 406(a)(1), 29 U.S.C. § 1106(a)(1), based on offering "high-cost investments that generated revenue for Deutsche Bank."

III. Prohibited transactions with a fiduciary in violation of ERISA §§ 406(b)(1) and (3), 29 U.S.C. § 1106(b)(1) and (3), based on offering mutual funds managed by Deutsche Bank.

IV. Failing to monitor fiduciaries, in violation of ERISA §§ 409(a), 29 U.S.C. § 1109(a), in connection with the other alleged ERISA violations.

**II.   STANDARD**

Summary judgment is appropriate where the record establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). There is a genuine dispute as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Liberty Lobby*, 477 U.S. at 248; *accord Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 148 (2d Cir. 2017).

The court must construe the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of the nonmoving party. *Liberty Lobby*, 477 U.S. at 255; *accord Soto v. Gaudett*, 862 F.3d 148, 154 (2d Cir. 2017) (citations omitted). When the movant has properly supported its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (alteration in original) (internal quotation marks omitted); *accord Dudley v. N.Y.C. Hous. Auth.*, No. 14 Civ. 5116, 2017 WL 4315010, at *14 (S.D.N.Y. Sept. 25, 2017) (citations omitted).

### III. DISCUSSION

Defendants seek summary judgment with respect to Counts II and III in their entirety, and with respect to Counts I and IV to the extent that they are predicated on the investment options included in the Plan's core lineup. Defendants do not seek summary judgment with respect to Counts I and IV to the extent they are predicated on failures to mitigate ADP

recordkeeping expenses.

## A. Breach of Fiduciary Duty Claims (Counts I and IV)

ERISA imposes both a duty of loyalty and a duty of care. *See* 29 U.S.C. § 1104(a)(1); *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570 (1985). The duty of loyalty requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries; and . . . defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A)(i)-(ii). Section 1104 requires "complete loyalty to participants;" a fiduciary must act "with an eye single to the interests of the participants and beneficiaries." *Rothstein v. Am. Int'l Grp., Inc.*, 837 F.3d 195, 208-09 (2d Cir. 2016) (internal quotations omitted).

The duty of care compels a fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). "[T]his standard focus[es] on a fiduciary's conduct in arriving at an investment decision, not on its results, and ask[s] whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir. 2013) (second and third alteration in original) (internal quotation marks and citation omitted). Whether a fiduciary acted with the requisite care "is measured according to the objective prudent person standard developed in the common law of trusts." *Chao v. Merino*, 452 F.3d 174, 182 (2d Cir. 2006); *accord Osberg v. Foot Locker, Inc.*, 138 F. Supp. 3d 517, 551 (S.D.N.Y. 2015). "[U]nder trust law, a fiduciary normally has a continuing duty of some kind to monitor investments and

remove imprudent ones." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828-29 (2015).

"To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege facts which, if true, would show that the defendant acted as a fiduciary, breached its fiduciary duty, and thereby caused a loss to the plan at issue." *Pension Benefit Guar.*, 712 F.3d at 730.

In this case, there is a dispute of material fact as to whether Defendants breached these two fiduciary duties. Defendants seek summary judgment on the separate ground that Plaintiffs cannot establish "loss causation." As described below, that argument is rejected. Defendants' motion for summary judgment on the breach of fiduciary duty claims is denied.

1. **ERISA recoverable losses**

Under ERISA, a fiduciary "who breaches any [fiduciary] responsibilities, obligations, or duties . . . shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . ." ERISA § 409, 29 U.S.C. § 1109. "ERISA does not define 'loss' as that term is used in section 409." *Donovan v. Bierwirth,* 754 F.2d 1049, 1052 (2d Cir. 1985); *accord Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 131 F. Supp. 3d 103, 121 (S.D.N.Y. 2015) ("*Ivy Asset Mgmt I*"). "Section 409, by providing for the recovery of losses, primarily seeks to undo harm that may have been caused a pension plan by virtue of the fiduciaries' acts." *Bierwirth,* 754 F.2d at 1056; *accord Ivy Asset Mgmt. I*, 131 F. Supp. 3d at 121.

The Second Circuit has provided binding guidance on what qualifies as a loss for which a fiduciary is liable under Section 409: "If, but for the breach, the plan would have earned even more than it actually earned, there is a 'loss' for which the breaching fiduciary is liable." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 567 (2d Cir. 2016) (*Ivy Asset Mgmt. II*) (internal quotation marks and citations omitted). The same decision also dictates

how the amount of loss is to be determined: "Losses are measured by the difference between the plan's actual performance and how the plan would have performed if the funds had been invested like other funds being invested during the same period in proper transactions. Where several alternative investment strategies were equally plausible, the court should presume that the funds would have been used in the most profitable of these." *Id.* (internal quotation marks and citations omitted).

Here, the parties dispute whether a loss occurred -- i.e., whether "but for [Defendants'] breach, the plan would have earned even more than it actually earned." *Ivy Asset Mgmt. II*, 843 F.3d 567 (internal quotation marks and citation omitted). Each side has retained an expert to opine on precisely this issue. Plaintiffs' expert, Dr. Steve Pomerantz, states, "the Plan incurred between $56.4 and $68.9 million in losses from December 21, 2009 to September 30, 2017 due to Defendant's mismanagement of the Plan's investments" and puts forward various models to substantiate this statement. Defendant's expert, Dr. Walter Torous, counters that Dr. Pomerantz has not established that the inclusion of proprietary index funds harmed the Plan, because his "cherry-picking [of comparator funds] ignores that the expense ratios of the Proprietary Index Funds generally fall within the distribution of expense ratios of their respective peers." Defendants ask essentially for a determination that Dr. Pomerantz's statistical analyses are fundamentally flawed to the point of being invalid as a matter of law. No such determination is appropriate at the summary judgment stage. Even if it were appropriate to weigh the competing expert opinions now on this summary judgment motion -- rather than at the bench trial scheduled to begin shortly -- the cursory seven-paragraph rebuttal of Dr. Pomerantz's work in the Torous report is not sufficiently persuasive to justify that rejection.[2] Accordingly, there is a dispute of

---

[2] To the extent that Defendants' "loss causation" argument also applies to the prohibited transaction claims, it is also denied for these reasons.

6

material fact as to whether Plaintiffs sustained recoverable losses caused by Defendants. The motion for summary judgment is denied.

2. **"Objective prudence"**

Defendants argue that "loss causation is an element" of the ERISA fiduciary duty claims, and that Plaintiffs have failed to show it. "Loss causation" is a term of art used to describe an element of securities claims, *see Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 92 (2d Cir. 2018), but the term of art is not used in the ERISA context. *See Ivy Asset Mgmt. II*, 843 F.3d at 567 (requiring "but for" causality). The principal Second Circuit case Defendants cite with respect to "loss causation" illustrates this point, *see Emergent Capital Inv. Mgmt., L.L.C. v. Stonepath Grp., Inc.*, 343 F.3d 189 (2d Cir. 2003), as it is a securities case -- not an ERISA case. The Second Circuit has cautioned against importing "loss causation" from the securities context into other non-securities areas of law. *See Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 113 n.4 (2d Cir. 2018) ("We have never imported loss causation from the securities context and we do not begin to do so with this case."). Accordingly, no "loss causation" requirement is appropriate in this ERISA case.

Regardless of terminology, among the elements that a plaintiff claiming a breach of fiduciary duty under ERISA must show is that the breach "caused a loss to the plan at issue." *Pension Benefit Guar.*, 712 F.3d at 730. Defendants argue that the above Second Circuit "but for" test does not apply to the question of ERISA causation, but only to calculation of losses once causation has been established. That argument is unpersuasive. The issues of causation and loss calculation are intertwined; the calculation measures the quantum of loss caused by the breach. Defendants cite the concurring opinion in *Silverman* for the proposition that a plaintiff must prove that losses "result[ed] from" a defendant's breach. *Silverman v. Mut. Benefit Life*

7

*Ins. Co.*, 138 F.3d 98, 105 (2d Cir. 1998). That is correct. *See Pension Benefit Guar.*, 712 F.3d at 716. And a plaintiff must prove that the alleged losses "resulted from" a defendant's breach by establishing that "but for" the defendant's breach, they would have made more money. *See Ivy Asset Mgmt. II*, 843 F.3d at 567.

Defendants' argument is, at its core, a request to ignore the "but for" Second Circuit test for determining compensable, and therefore actionable, losses in favor of the "objective prudence" test adopted in another circuit. The objective prudence test requires plaintiffs to demonstrate that, even if a breach occurred, that breach resulted in investments that were objectively imprudent. *See, e.g.*, *Plasterers' Local Union No. 96 Pension Plan v. Pepper*, 663 F.3d 210, 217-18 (4th Cir. 2011) ("[I]n order to hold the Former Trustees liable for damages based on their given breach of fiduciary duty, the district court must first determine that the Former Trustees' investments were [objectively] imprudent."). This argument fails for two reasons.

First, the Second Circuit's binding precedent cannot be ignored. No "objective prudence" requirement is contained in the Second Circuit's succinct and unambiguous description of the loss analysis -- "If, but for the breach, the plan would have earned even more than it actually earned, there is a 'loss' for which the breaching fiduciary is liable." *Ivy Asset Mgmt. II*, 843 F.3d at 567 (internal quotation marks and citations omitted). In substance, Defendants ask the court to abandon the Second Circuit comparative measure of loss for the Fourth Circuit objective measure of loss. In other words, instead of asking, "Could Plaintiffs' investments have performed better had Defendants not breached their fiduciary duties?" per Second Circuit law, Defendants propose asking, "Did Plaintiffs' investments perform satisfactorily despite Defendants' breach of their duties?" per Fourth Circuit law. The Second

8

Circuit's definition of loss is plainly more expansive, and is controlling here.

Second, infusing the loss analysis with questions of "objective prudence" is analytically messy. "Objective prudence" is already the cornerstone for evaluating whether or not the duty of care has been breached. *See, e.g.*, *Pension Benefit Guar.*, 712 F.3d at 716 ("The duty of prudence mandated by § 1104(a)(1)(B) is measured according to the objective prudent person standard developed in the common law of trusts." (internal quotation marks omitted)). But Defendants are not arguing that they are entitled to summary judgment on the question of whether their actions breached the duty of care. Instead, they attempt to attach the objectively prudent test to the investments that may have resulted from imprudent conduct. In this Circuit, there is no legal basis to do so.

### B. Prohibited Transaction Claims (Counts II and III)

Plaintiffs claim that, by offering the Plan proprietary mutual funds -- i.e., mutual funds managed by Deutsche Bank -- Defendants engaged in prohibited transactions with a party in interest in violation of ERISA §§ 406(a)(1)(C) and (D), as amended, 29 U.S.C. § 1106(a)(1)(C) and (D), and in prohibited transactions with a fiduciary in violation of ERISA §§ 406(b)(1) and (3), as amended, 29 U.S.C. § 1106(b)(1) and (3). For the reasons below, summary judgment is granted with respect to the prohibited transaction claims, because the transactions are exempt under Department of Labor ("DOL") Prohibited Transaction Exemption 77–3 ("PTE 77–3"), 42 Fed. Reg. 18,734 (Mar. 31, 1977). Consequently, this opinion does not address Defendants' other arguments in support of summary judgment on these claims.

#### 1. PTE 77-3

A defendant bears the burden of showing that an exemption to Section 406 applies. *See Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1215 (2d Cir. 1987) (holding that a fiduciary

charged with engaging in a prohibited transaction "must prove by a preponderance of the evidence that the transaction in question fell within an exemption"); *accord Forgione v. Gaglio*, No. 13 Civ. 9061, 2015 WL 718270, at *11 (S.D.N.Y. Feb. 13, 2015). PTE 77–3 creates a "Class Exemption Involving Mutual Funds," which, under certain conditions, "exempt[s] from the prohibited transaction restrictions the acquisition and sale of shares of a registered open-end investment company ("mutual fund") by an employee benefit plan which covers employees of the mutual fund or the mutual fund's investment adviser or principal underwriter, or an affiliate thereof . . ." PTE 77–3 (defined term in first paragraph of the original); *accord Leber v. Citigroup, Inc.*, No. 07 Civ. 9329, 2010 WL 935442, at *10 (S.D.N.Y. Mar. 16, 2010).

Four requirements must be satisfied in order for the exemption to apply. PTE 77–3; *accord Leber*, 2010 WL 935442, at *10. Plaintiffs dispute only the fourth requirement: "All other dealings between the plan and the investment company [i.e., the mutual fund]" must be "on a basis no less favorable to the plan than such dealings are with other shareholders of the investment company [i.e., the mutual fund]." PTE 77–3(d). [3]

In this case, Deutsche Bank meets the fourth requirement of PTE 77–3, because it offered the Plan shares in its mutual funds at a price and on terms at least as favorable as it offered shares to other investors in those mutual funds. *See Expert Rep. of Dr. Lee Heavner*, Dated May 4, 2017, ¶¶ 57-62, ECF 149-1. "The plain meaning of language in a regulation governs unless that meaning would lead to absurd results." *Lopes v. Dep't of Soc. Servs.*, 696 F.3d 180, 188 (2d Cir. 2012) (citations omitted). PTE 77–3's plain language dictates that if a fiduciary sells shares in

---

[3] The first three requirements of PTE 77–3 are: "first, the plan must pay no "investment management, investment advisory or similar fee" to the mutual fund, although the mutual fund itself may pay such fees to its managers; second, the plan must not pay "a redemption fee" when selling its shares; third, the plan must not pay a sales commission in connection with the sale or acquisition." *Leber*, 2010 WL 935442, at *10.

its mutual fund to its own employees' 401(k) plan at the same price that it sells shares to all other investors in that mutual fund -- i.e., "on a basis no less favorable to the plan than such dealings are with *other shareholders of the investment company* [i.e., the mutual fund]" -- then the transaction satisfies the fourth requirement. PTE 77–3(d) (emphasis added).

Nothing in the summary judgment record suggests, nor do Plaintiffs argue, that Deutsche Bank offered different share classes for its mutual funds resulting in a higher price per share to the Plan than other investors in the same proprietary mutual funds. *Compare, e.g.*, *Wildman v. Am. Century Servs., L.L.C.*, No. 16 Civ. 0737, 2018 WL 2326627 at *5-6 (W.D. Mo. May 22, 2018) (denying summary judgment on prohibited transaction claims based on a report by Dr. Pomerantz, which illustrated that the defendants failed to offer the cheapest available share class of proprietary investments to the plan). Although that allegation appears in the Complaint,[4] the summary judgment record -- including Dr. Pomerantz's report -- does not contain evidence that a different and more expensive share class of the funds was offered to the Plan as compared with that offered to other shareholders.

Instead Plaintiffs now argue that the transactions are not exempt under PTE 77–3 because "other dealings between the plan and the investment company [i.e., the mutual fund]" were "on a basis . . . less favorable to the plan than such dealings are with other shareholders" in another similar investment -- but not "other shareholders of the investment company [i.e., the mutual fund]," as required by PTE 77–3(d). In particular, Deutsche Bank offered other investors lower-priced *separate accounts* that were substantially similar to the mutual funds offered to the Plan.

---

[4] The Complaint alleges that Deutsche Bank "fail[ed] to utilize the least expensive available share class for several mutual funds within the Plan. For example, Defendants retained so-called institutional shares of the Deutsche Capital Growth Fund and Deutsche High Income Fund with expense ratios of 0.71% and 0.69%, respectively, even though otherwise identical R6 shares of the same funds became available in August 2014 and had lower expense ratios of 0.60% and 0.62%."

Defendants' argument fails, because it ignores the explicit language of PTE 77-3, which requires at least equally favorable terms only with other shareholders in the mutual fund, but not investors in similar but distinct investments. Plaintiffs repeatedly acknowledge in their motion papers that the separate accounts are "alternative investment vehicles." *See also Separately Managed Account (SMA)*, Dictionary of Finance and Investment Terms (9th ed. 2014) ("The Chief advantage of SMA's over mutual funds is direct ownership of securities in the portfolio"); *Inv. Co. Inst. v. Camp*, 401 U.S. 617, 625 n.11 (1971) ("A mutual fund is an open-end investment company."). Accordingly, summary judgment is granted with respect to the prohibited transaction claims.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED with respect to Plaintiffs' prohibited transaction claims, and DENIED with respect to Plaintiffs' breach of fiduciary duty claims. The Clerk of Court is directed to close the motion at Dkt. No. 183.

Dated: June 6, 2018

New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE