**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAMON MORENO, DONALD O'HALLORAN, OMKHARAN ARASARATNAM, BAIJU GAJJAR, and RAJATH NAGARAJA, individually and as representatives of a class of similarly situated persons, and on behalf of the Deutsche Bank Matched Savings Plan, <br><br> *Plaintiffs*, <br><br> v. <br><br> DEUTSCHE BANK AMERICAS HOLDING CORP., DEUTSCHE BANK MATCHED SAVINGS PLAN INVESTMENT COMMITTEE, DEUTSCHE BANK AMERICAS HOLDING CORP. EXECUTIVE COMMITTEE, RICHARD O'CONNELL, JOHN ARVANITIS, ROBERT DIBBLE, TIM DOWLING, RICHARD FERGUSON, JAMES GNALL, LOUIS JAFFE, PATRICK McKENNA, DAVID PEARSON, JOSEPH RICE, SCOTT SIMON, ANDREW THREADGOLD, and JAMES VOLKWEIN, <br><br> *Defendants*. | Case No. 1:15-CV-09936 (LGS) <br><br><br> **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

### TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

BACKGROUND ............................................................................................................3

   I.   PROCEDURAL HISTORY .........................................................................................3

       A.   Pleadings and Motion Practice .................................................................3

       B.   Discovery and Trial Submissions. ............................................................5

   II.   MEDIATION ........................................................................................................5

   III.   OVERVIEW OF THE SETTLEMENT TERMS ............................................................6

       A.   The Settlement Class ................................................................................6

       B.   Monetary Relief .......................................................................................6

       C.   Prospective Relief ....................................................................................7

       D.   Review by Independent Fiduciary ...........................................................8

       E.   Release of Claims ....................................................................................8

       F.   Class Notice and Settlement Administration ...........................................8

       G.   Attorneys' Fees and Expenses .................................................................9

ARGUMENT ...............................................................................................................10

   I.   STANDARD OF REVIEW ......................................................................................10

   II.   THE SETTLEMENT SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL ...................11

       A.   The Settlement is the Product of Arms-Length Negotiations Between Experienced Counsel ............................................................................11

       B.   The Settlement Provides Significant Relief to Class Members ...............12

       C.   Plaintiffs Would Have Faced Potential Litigation Risks and Substantial Delay in the Absence of the Settlement ................................................16

   III.   THE CLASS NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED ...................19

IV.    The Certified Class Should be Amended for Settlement Purposes ...............21

**CONCLUSION** .....................................................................................................................23

# TABLE OF AUTHORITIES

## Cases

*Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475 (S.D. Ill. July 17, 2015) ..........................19

*Brotherston v. Putnam Investments, LLC*, 2017 WL 2634361 (D. Mass. June 19, 2017).......16, 18

*Clark v. Ecolab Inc.*, 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009)................................10, 11, 12

*Dardaganis v. Grace Capital Inc.*, 889 F.2d 1237 (2d Cir. 1989)................................................14

*Deutsche Bank Americas Holding Corp. v. Moreno*, 2017 WL 6506349 (2d Cir. Dec. 19, 2017) ........................................................................................................................................19

*Donovan v. Bierwirth*, 680 F.2d 263 (2d Cir. 1982)..................................................................17

*Donovan v. Bierwirth*, 754 F.2d 1049 (2d Cir. 1985)..................................................................15

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005).................................................11

*In re China Sunergy Sec. Litig.*, 2011 WL 1899715 (S.D.N.Y. May 13, 2011)...........................14

*In re Excess Value Ins. Coverage Litig.*, 2004 WL 1724980 (S.D.N.Y. July 30, 2004) ..............11

*In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151 (S.D.N.Y. 2011) ..........................14

*In re IMAX Sec. Litig.*, 283 F.R.D. 178 (S.D.N.Y. 2012)...........................................................14

*In re Initial Public Offering Sec. Litig.*, 243 F.R.D. 79 (S.D.N.Y. 2007)....................................11

*In re Medical X-ray Film Antitrust Litig.*, 1997 WL 33320580 (E.D.N.Y. Dec. 26, 1997) ..........11

*In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57 (S.D.N.Y. 1993) ..............................20

*In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99 (S.D.N.Y. 1997).......................10

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997)..............................11, 16

*In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132 (2d Cir. 1998) ...........................................11

*In re Rite Aid Corp. Sec. Litig.,* 146 F.Supp.2d 706 (E.D. Pa. 2001) ...........................................14

*In re Traffic Exec. Ass'n*, 627 F.2d 631 (2d Cir. 1980) ...............................................................10

*In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) .....................16

*Krueger v. Ameriprise*, 2015 WL 4246879 (D. Minn. July 13, 2015)...........................18

*Kruger v. Novant Health, Inc.*, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016)...........................19

*Latino Officers Ass'n City of New York, Inc. v. City of New York*, 2004 WL 574493
(S.D.N.Y. Mar. 22, 2004) ...........................20, 22

*Lomeli v. Sec. & Inv. Co. Bahrain*, 546 Fed. App'x 37 (2d Cir. 2013) ...........................20

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465 (S.D.N.Y.
Mar. 31, 2009)...........................16

*Main v. American Airlines, Inc.*, 248 F. Supp.3d 786 (N.D. Tex. 2017)...........................13

*Main v. American Airlines, Inc.*, 3:16-cv-01033 (N.D. Tex. Feb. 21, 2018)...........................13

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007) ...........................20

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1995) ...........................10

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ...........................22

*Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985) ...........................20

*Reyes v. Buddha-Bar NYC*, 2009 WL 5841177 (S.D.N.Y. May 28, 2009)...........................16

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)...........................19

*Sacerdote v. New York Univ.*, 2018 WL 3629598 (S.D.N.Y. July 31, 2018)...........................16, 18

*Tibble v. Edison Int'l*, 2017 WL 3523737 (C.D. Cal. Aug. 16, 2017) ...........................19

*Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014) ...........................15

*Tussey v. ABB, Inc.*, 850 F.3d 951 (8th Cir. 2017) ...........................15

*Tussey v. ABB Inc.,* 2017 WL 6343803 (W.D. Mo. Dec. 12, 2017)...........................18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ...........................11, 13

**Rules, Regulations, and Statutes**

68 Fed. Reg. 75632 ...........................8

75 Fed. Reg. 33830 ...........................8

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................19

Fed. R. Civ. P. 23(e)(1)............................................................................................19

**<u>Other Authorities</u>**

MANUAL FOR COMPLEX LITIGATION § 30.42 ..............................................................12

5 MOORE'S FEDERAL PRACTICE § 23.83[a].................................................................10

4 NEWBERG ON CLASS ACTIONS (4th ed. 2002) ...............................................10, 11, 12

## INTRODUCTION

Plaintiffs Ramon Moreno, Donald O'Halloran, Omkharan Arasaratnam, Baiju Gajjar, and Rajath Nagaraja ("Plaintiffs") submit this Memorandum in support of their Motion for Preliminary Approval of Class Action Settlement. A copy of the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") is attached as Exhibit A to the accompanying Declaration of Kai Richter ("*Richter Decl.*").[1] This Settlement resolves Plaintiffs' certified class action claims against Defendants Deutsche Bank Americas Holding Corp. ("DBAHC" or, together with its affiliates, "Deutsche Bank"), the Deutsche Bank Matched Savings Plan Investment Committee ("Investment Committee"), the Deutsche Bank Americas Holding Corp. Executive Committee ("Executive Committee") and the named Committee members (collectively, "Defendants") under the Employee Retirement Income Security Act ("ERISA"), concerning Defendants' administration and management of the Deutsche Bank Matched Savings Plan ("Plan").[2]

Under the terms of the proposed Settlement, Deutsche Bank or its insurers will pay a gross settlement amount of $21,900,000 into a common fund for the benefit of Settlement Class Members. This is a significant recovery for the Class, and falls well within the range of negotiated settlements in similar ERISA cases. Moreover, the Settlement also provides for meaningful prospective relief, as DBAHC has agreed to delegate all decisions regarding proprietary investments (i.e., investments affiliated with Deutsche Bank) to an independent fiduciary, and will seek guidance from the independent fiduciary regarding whether any of the mutual funds in the Plan should be replaced with alternative investment vehicles such as separate accounts or collective trusts.

---

[1] All capitalized terms have the meaning assigned to them in Article 2 of the accompanying Settlement Agreement, unless otherwise specified herein.
[2] Defendants dispute the allegations and deny liability for any alleged ERISA violations.

For the reasons set forth below, the Settlement is fair, reasonable, and adequate, and merits preliminary approval so that the proposed Settlement Notices can be sent to the Settlement Class. Among other things supporting preliminary approval:

- The Settlement was negotiated at arm's length by experienced and capable counsel, with the assistance of a well-respected mediator, Retired Judge Layn Phillips;

- The proposed Settlement Class is consistent with the class that was previously certified by the Court for litigation purposes (subject to minor housekeeping adjustments);

- The Settlement provides for significant monetary relief that compares favorably to settlements in other cases;

- The Settlement provides for automatic distribution of the settlement funds to the accounts of Class Members who are Current Participants in the Plan, and for a simple claim form to be submitted by Former Participants, which allows Former Participants to elect either to roll their distribution into another qualified retirement account or to receive a check;

- The Settlement provides for meaningful prospective relief in the form of independent fiduciary review of the Plan's proprietary investment options and investment vehicles;

- The Class Release is appropriately tailored to the claims that were asserted in the action;

- The proposed Settlement Notices provide fulsome information to Class Members about the Settlement, and will be distributed via first-class mail; and

- The Settlement Agreement provides Class Members the opportunity to raise any objections they may have to the Settlement and appear at the final approval hearing.

Accordingly, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlement; (2) approving the proposed Settlement Notices and authorizing distribution of the Notices; (3) certifying the proposed Settlement Class; (4) scheduling a final approval hearing; and (5) granting such other relief as set forth in the proposed Preliminary Approval Order submitted herewith. This motion is not opposed by Defendants.

## BACKGROUND

### I.   PROCEDURAL HISTORY

#### A.   Pleadings and Motion Practice

On December 21, 2015, Ramon Moreno and Donald O'Halloran, participants in the Plan, filed a Class Action Complaint against DBAHC and certain related parties, asserting claims for breach of fiduciary duty, prohibited transactions, and equitable restitution under ERISA. *See ECF No. 1.* In summary, Plaintiffs alleged that the Plan's fiduciaries (1) retained proprietary funds in the Plan lineup that a prudent and unbiased fiduciary would not have retained; and (2) failed to give appropriate consideration to alternative investment vehicles such as separate accounts and collective trusts. *See id. ¶¶ 2-10.* On March 30, 2016, the same two Plaintiffs filed a First Amended Complaint ("FAC"). *ECF No. 27.*

On April 29, 2016, DBAHC and the other defendants to the FAC filed a motion to dismiss the FAC. *ECF No. 30.* On October 13, 2016, the Court issued an Opinion and Order granting the motion to dismiss as to Plaintiffs' equitable restitution claim (Count V of the FAC), and denying the motion to dismiss as to Plaintiffs' other claims for breach of fiduciary duty, prohibited transactions with fiduciaries and parties-in interest, and failure to monitor fiduciaries. *ECF No. 57.*

On January 3, 2017, Plaintiffs filed their Second Amended Complaint ("SAC"), naming certain individual defendants previously identified as John Does, adding Aon Hewitt Investment Consulting, Inc. ("Aon Hewitt") as a defendant, adding three named Plaintiffs (Omkharan Arasaratnam, Baiju Gajjar, and Rajath Nagaraja), and adding certain allegations, including those related to the Plan's recordkeeping expenses. *See ECF. No. 66.* The defendants affiliated with DBAHC filed an Answer to the SAC on January 17, 2017, and an Amended Answer adding one

affirmative defense on March 15, 2017. *ECF Nos. 96, 136*. Aon Hewitt filed a motion to dismiss

on February 17, 2017. *ECF No. 108.*

After obtaining document discovery from Aon Hewitt and deposition testimony from

certain witnesses affiliated with Deutsche Bank, Plaintiffs voluntarily dismissed Aon Hewitt

from the action without prejudice on March 13, 2017. *ECF No. 126.*  On the same date, Plaintiffs

moved for class certification. *ECF No. 127.* On September 5, 2017, the Court granted Plaintiffs'

motion for class certification and certified under Rule 23(b)(1)(B) the following class:

> [A]ll participants and beneficiaries of the Deutsche Bank Matched Savings Plan at
> any time on or after December 21, 2009, whose individual accounts suffered
> losses as a result of the conduct alleged in Counts One through Four of the Third
> Amended Complaint, excluding Defendants, any of their directors, and any
> officers or employees of Defendants with responsibility for the Plan's investment
> or administrative function.

*ECF No. 165.*

While Plaintiffs' motion for class certification was pending, Plaintiffs filed their Third

Amended Complaint ("TAC"), adding additional allegations regarding Defendants' alleged

failure to adhere to Plan documents as required by 29 U.S.C. § 1104(a)(1)(D). *ECF No. 162.*

Defendants filed an Answer to the TAC on September 8, 2017. *ECF No. 166.*

On February 5, 2018, Defendants filed a motion for partial summary judgment (*ECF No.

183*), and the Class Representatives filed their response on March 5, 2018 (*ECF No. 192*).  On

June 6, 2019, the Court granted in part and denied in part Defendants' motion. *ECF No. 249.*

Specifically, the Court granted Defendants' motion as to Plaintiffs' prohibited transaction claims,

but denied the motion as Plaintiffs' breach of fiduciary duty claim and claim for failure to

monitor fiduciaries. *Id.*  A bench trial on liability was scheduled to commence on July, 9, 2018.[3]

*ECF No. 179.*

---

[3] The Court had ordered that only liability would be tried during this trial, reserving a determination of damages for
a later date (assuming the Court found liability). *ECF No. 248.*

### B.       Discovery and Trial Submissions

Throughout the litigation, the Parties engaged in extensive discovery, including: (1) production of over 90,000 pages of documents by Defendants; (2) production of over 44,000 pages of documents by third parties; (3) production of additional documents by the Class Representatives; (4) eight depositions of defense fact witnesses; (5) depositions of each of the Class Representatives; (6) two third-party fact witness depositions; and, (7) five expert depositions (following an exchange of their expert reports). *Richter Decl.¶ ¶ 15-20.*

Based on the evidence that was gathered, the Parties submitted a large volume of materials in anticipation of trial. Among other things, these included over two dozen witness declarations (*ECF Nos. 250, 253, 255-258, 260, 263-266, 267-268, 285-2, -3, -4, 299-305, 312*), hundreds of exhibits (*see ECF Nos. 316-1, -2, -3*), and extensive proposed findings of fact and conclusions of law (*ECF Nos. 285-1, 295*). Plaintiffs also filed a trial brief (*ECF No. 276*), to which Defendants responded (*ECF No. 283*).

## II.   MEDIATION

On April 16, 2018, prior to trial and while Defendants' motion for partial summary judgment was still pending, the Parties engaged in a full-day mediation before retired federal district court judge Layn Phillips. *Richter Decl. ¶¶ 21-22.* Judge Phillips is an experienced and well-respected mediator, who has successfully resolved numerous ERISA cases and other actions. *Richter Decl. ¶ 21 & Ex. C.* Although a settlement was not reached during the mediation, the Parties agreed that negotiations could continue through Judge Philips. *Id. ¶ 23.* After extensive further negotiations through Judge Phillips, the parties reached a settlement-in-principle on July 8, 2018 (immediately preceding the scheduled start date of trial). The terms of the parties' settlement are memorialized in the Settlement Agreement. *Id. ¶ 24.*

### III.    OVERVIEW OF THE SETTLEMENT TERMS

#### A.    The Settlement Class

The Settlement Agreement applies to the following Settlement Class:

[A]ll participants and beneficiaries of the Deutsche Bank Matched Savings Plan at any time during the Class Period from December 21, 2009 through August 14, 2018, whose individual accounts were invested in the Disputed Investments, excluding Defendants, any of their directors, and any officers or employees of Defendants with responsibility for the Plan's investment or administrative functions.

*Settlement Agreement ¶ 2.49.* This class definition is designed to track the existing class certified by the Court *(see ECF No. 165)*, while providing for an end date to the Class Period and operationalizing the language from the existing class definition that limited the class to persons "whose individual accounts suffered losses as a result of the conduct alleged in Counts One through Four of the Third Amended Complaint."[4] Based on information provided by Defendants, there are approximately 34,700 class members.

#### B.    Monetary Relief

Under the Settlement, Deutsche Bank or its insurers will contribute a Gross Settlement Amount of $21.9 million to a common settlement fund (the "Settlement Fund"). *Settlement ¶¶ 2.34, 5.4-5.5.*   After accounting for any attorneys' fees, expenses, and class representative service awards approved by the Court, the Net Settlement Amount will be distributed to eligible Class Members. *Id. ¶¶ 2.38, 6.1.*

The Net Settlement Amount will be allocated among eligible Class Members in proportion to their weighted quarterly account balances in the Disputed Investments.[5]   *Id. ¶ 6.4.*

---

[4] Under the Settlement Agreement, the "Class Period" runs from December 21, 2009 through August 14, 2018 (the date of Plaintiffs' Preliminary Approval Motion), *Settlement ¶ 2.13,* and the Settlement Class is limited to persons whose accounts were invested in the "Disputed Investments" that Plaintiffs contended resulted in losses to the Plan, *Settlement ¶ 2.25.*

[5] The Disputed Investments consist of the Deutsche Funds and Non-Deutsche Funds identified in Paragraphs 2.24 and 2.39 of the Settlement Agreement. They do not include the Stable Value Fund or Vanguard collective trusts.

Consistent with Class Counsels' assessment of the relative strength of the claims that were asserted and the loss calculations of Plaintiffs' damages expert (Dr. Steve Pomerantz), Class Members' balances in the Deutsche Funds will be weighted three times more heavily than balances in the Non-Deutsche Funds. *Id. ¶ 6.4.1*; *see also Richter Decl. ¶ 4.*[6]

Current Participants will have their Plan accounts automatically credited with their share of the Settlement Fund. *Id. ¶ 6.5.* Former Participants will be required to submit a claim form, which allows them to elect to have their distribution rolled-over into an individual retirement account or other eligible employer plan, or to receive a direct payment by check. *Id. ¶ 6.6.*[7] Under no circumstances will any monies revert to Deutsche Bank. Any checks that are uncashed will revert to the Qualified Settlement Fund and will be paid to the Plan for the purpose of defraying administrative fees and expenses of the Plan. *Id. ¶¶ 6.11, 6.12.*

### C.   Prospective Relief

The Settlement also provides that the following procedures shall apply to the management of the Plan on a prospective basis:

- All decisions regarding the selection, retention, removal, or evaluation of any Deutsche Fund in the Plan shall be delegated to an independent fiduciary appointed pursuant to ERISA § 3(38); and

- Deutsche Bank shall retain the independent fiduciary to provide a written opinion, within six months of the Settlement Effective Date, regarding whether any of the existing Deutsche Funds or Non-Deutsche Funds in the plan should be replaced with alternative investment vehicles (e.g., separate accounts or collective trusts).

*Settlement, ¶ 7.1.* Subject to the foregoing, the Investment Committee shall retain the responsibilities and authority vested to it by the Plan Document. *Id. ¶ 7.1.3.*

---

[6] Plaintiffs' expert estimated approximately $42,552,090 - $43,352,090 in damages resulting from the Deutsche Funds, and approximately $13,855,917 in damages from the Non-Deutsche Funds. *See Richter Decl. ¶ 8.* The ratio of these amounts is approximately 3:1.

[7] The Claim Form also allows the Settlement Administrator to verify the addresses of Class Members who are sent checks.

### D.      Review by Independent Fiduciary

As required under ERISA, Deutsche Bank will retain a separate independent fiduciary to review and authorize the settlement (if approved) on behalf of the Plans. *Settlement ¶ 3.1.1; see also* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, *as amended*, 75 Fed. Reg. 33830 ("PTE 2003-39"). This independent fiduciary will be different than the one selected to evaluate the Plan's proprietary investments and investment vehicles. *Settlement ¶ 7.1.1 n.4.* The independent fiduciary will issue its report prior to the final approval hearing, so the Court may consider it. *Id. ¶ 3.1.2.*

### E.      Release of Claims

In exchange for the relief provided by the Settlement, the Settlement Class will release Defendants and affiliated persons and entities (the "Released Parties") from all claims:

> **2.45.1**  That were asserted in the Action (including any assertion set forth in the Complaint or First, Second, or Third Amended Complaints, or any other submission made by the Class Representatives, Class Members, or their expert witnesses or Class Counsel in connection with the Action) or that arise out of, relate to, are based on, or have any connection with any of the allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions or occurrences asserted in the Class Action …;

> **2.45.2**  That would be barred by res judicata based on entry by the Court of the Final Approval Order;

> **2.45.3**  That relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Net Settlement Fund pursuant to the Plan of Allocation; or

> **2.45.4**  That relate to the approval by the Independent Fiduciary of the Settlement Agreement, unless brought against the Independent Fiduciary alone.

*See Settlement Agreement ¶¶ 2.44, 2.45.*

### F.      Class Notice and Settlement Administration

Class Members will be sent a direct notice of the settlement ("Settlement Notice") via U.S. Mail. *Settlement Agreement ¶¶ 2.51, 3.3.1, & Exs. 1 & 2.* The Settlement Notice sent to

Former Participants also will include a Claim Form enabling them to make the elections described above. *Settlement Agreement ¶ 3.3.2 & Ex. 3.* These Settlement Notices provide information to the Settlement Class regarding, among other things: (1) the nature of the claims; (2) the scope of the Settlement Class; (3) the terms of the settlement; (4) the process for submitting claims (Former Participants only); (5) Settlement Class members' right to object to the settlement and the deadline for doing so; (6) the class release; (7) the identity of Class Counsel and the amount of compensation they will seek in connection with the Settlement; (8) the amount of any requested Class Representatives' compensation; (9) the date, time, and location of the final approval hearing; (10) Settlement Class Members' right to appear at the final approval hearing. *Settlement Agreement ¶ 2.51 & Exs. 1-2.*

To the extent that Class Members would like more information about the Settlement, the Settlement Administrator will establish a Settlement Website on which it will post the following documents or links to the following documents: the operative Third Amended Complaint, Settlement Agreement and its Exhibits, Settlement Notices, Former Participant Claim Form, Preliminary Approval Order and any other Court orders related to the Settlement, and any other documents or information mutually-agreed upon by the Parties. *Id. ¶ 12.1.* When filed, the Settlement Administrator will also post or include links to Plaintiffs' Motion for Attorneys' Fees and Costs, Administrative Expenses, and Class Representatives' Compensation. *Id.*

### G.    Attorneys' Fees and Expenses

The Settlement Agreement requires that Class Counsel shall file their motion for attorneys' fees and costs at least 30 days before the deadline for objections to the proposed Settlement. *Settlement ¶¶ 8.1.* Under the Settlement, attorneys' fees are subject to Court approval and are capped at no more than 30% of the Gross Settlement Fund ($6,570,000), plus litigation

costs and settlement administration expenses. *Id.* ¶ *8.2.*[8] The Settlement also provides for service

awards up to $10,000 per Class Representative, subject to Court approval. *Id.*

## ARGUMENT

### I.   STANDARD OF REVIEW

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any

settlement agreement that will bind absent class members. The decision whether to approve a

proposed class-action settlement is a matter of judicial discretion, *see Maywalt v. Parker &*

*Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995), based on a "two-step process." *In re*

*NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). In the first step,

the court considers whether the settlement warrants preliminary approval, such that notice of the

settlement may be sent to the class members. *NASDAQ Market-Makers Antitrust Litig.*, 176

F.R.D. at 102. In the second step, after notice of the proposed settlement has been issued and

class members have had an opportunity to be heard, the court considers whether the settlement

warrants final court approval. *Id.*

A motion for preliminary approval involves only an "initial evaluation" of the fairness of

the proposed settlement. *Clark v. Ecolab Inc.*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27,

2009) (citing 4 NEWBERG ON CLASS ACTIONS ("NEWBERG") § 11:25 (4th ed. 2002)). To grant

preliminary approval, the court need only find that there is "probable cause" to submit the

settlement to class members and hold a full-scale hearing as to its fairness. *In re Traffic Exec.*

*Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980). The court is not required to answer the ultimate

question of whether the settlement is fair, reasonable, and adequate. *See* 5 MOORE'S FEDERAL

PRACTICE § 23.83[a], at 23-336.2 to 23-339. Instead, the court simply evaluates whether the

---

[8] Plaintiffs estimate the Claim Administrator's fees, costs and expense will be $64,036 and lawsuit-related costs and expenses to be $694,028. *See Richter Decl. Ex. B.*

settlement "appears to fall within the range of possible approval[.]" *Clark*, 2009 WL 6615729, at *3; NEWBERG § 11:25. Thus, "preliminary approval should be granted and notice of the proposed settlement given to the class if there are no obvious deficiencies in the proposed settlement." *In re Medical X-ray Film Antitrust Litig.*, 1997 WL 33320580, *6 (E.D.N.Y. Dec. 26, 1997); *see also In re Initial Public Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

The Second Circuit has recognized that there is a "strong judicial policy in favor of settlements, particularly in the class action context." *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998). "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks and citation omitted); *citing* 4 NEWBERG ON CLASS ACTIONS ("NEWBERG") § 11:41, at 87 (4th ed. 2002). As a result, "courts should give proper deference to the private consensual decision of the parties ... [and] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Clark v. Ecolab Inc.*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (citations omitted).

## II.   THE SETTLEMENT SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). Here, both the terms of the settlement and the manner in which they were negotiated strongly support preliminary approval.

### A.   The Settlement is the Product of Arms-Length Negotiations Between Experienced Counsel

A proposed class action settlement enjoys a "presumption of fairness, adequacy, and reasonableness" if "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116; *see also In re Excess Value Ins.*

*Coverage Litig.*, 2004 WL 1724980, *10 (S.D.N.Y. July 30, 2004); MANUAL FOR COMPLEX LITIGATION § 30.42 ("[A] presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel."). That is precisely the situation presented here. Counsel for Plaintiffs and Defendants are knowledgeable and experienced in complex class actions, particularly actions involving allegations of breaches of fiduciary duties under ERISA. *See ECF No. 165* (appointing Nichols Kaster, PLLP as class counsel and noting they "serve as class counsel in ERISA actions involving defined-contribution plans, and serve or served as counsel of record in other actions alleging breach of fiduciary duty claims under ERISA."); *Richter Decl. ¶¶ 25-27* (outlining qualifications and experience of class counsel). The Settlement of this matter occurred after Class Counsel conducted a thorough investigation, prepared a detailed Complaint (and three amended complaints), briefed numerous motions, obtained comprehensive discovery, and retained multiple experts. *Richter Decl. ¶¶ 15-21.* The Parties settled shortly before trial and had engaged in extensive pretrial preparation, including the filing of over two dozen trial declarations (*see ECF Nos. 250, 253, 255-258, 260, 263-266, 267-268, 285-2, -3, -4, 299-305, 312*), hundreds of exhibits (*ECF Nos. 316-1, -2, -3*), and detailed proposed findings of fact and conclusions of law (*ECF Nos. 285-1, 295*).  As a result, each party had ample opportunity to assess each other's case. Moreover, the Parties were assisted in their negotiations by an experienced and well-regarded mediator. All of these factors lend the Settlement a presumption of fairness.

**B.     The Settlement Provides Significant Relief to Class Members**

The product of these serious and informed negotiations was a Settlement that provides significant relief to the Class.  The $21.9 million recovery speaks for itself.  Indeed, the amount of this recovery is impressive not only in the aggregate, but also when measured on a per-capita

basis (about $631.12 per Class Member) and as a percentage of Plan assets (approximately 1% of

Plan assets, exclusive of the stable value fund). *Richter Decl. ¶ 6.* By either of these measures,

the Settlement compares favorably to other recent 401(k) settlements. *Id.*

An excellent case in point is the settlement that was recently approved in another 401(k)

lawsuit involving American Airlines and its former investment subsidiary, American Beacon.

*See Main v. American Airlines, Inc.*, 3:16-cv-01033, ECF No. 137 (N.D. Tex. Feb. 21, 2018).

Like the present case, that case also involved a 401(k) plan lineup with some proprietary funds

and some non-proprietary funds, and the allegations relating to the non-proprietary funds focused

on the failure to utilize separate accounts as alternatives to those funds. *See Main v. American*

*Airlines, Inc.*, 248 F. Supp.3d 786, 793-94 (N.D. Tex. 2017) (recounting allegations relating to

proprietary index funds, proprietary actively-managed funds, and failure to use separate account

alternatives to mutual funds). The recovery here is almost identical to *American Airlines* on an

absolute basis ($21.9 million vs. $22.0 million), and is significantly greater than *American*

*Airlines* on a per-participant basis and percentage-of-assets basis. *Richter Decl. ¶ 6.*[9]

The negotiated settlement amount also represents a significant portion of the damages

that Plaintiffs alleged were caused by Defendants' alleged fiduciary breaches. *Richter Decl. ¶ 8.*

Plaintiffs' experts calculated the following losses associated with the following alleged breaches:

- Losses from Retention of Proprietary Index Funds: $4,652,090
  (*Pomerantz Report, ECF No. 307, ¶ 67*).

- Losses from Retention of Actively-Managed Proprietary Funds
  Model 1 – Market Based Analysis = $38,700,000 (*Id. ¶ 88*).
  Model 2 – Fiduciary Based Analysis = $37,900,000 (*Id. ¶ 92*)

- Losses from Failure to Consider Separate Account Alternatives to Funds:

---

[9] Like the present Settlement, the *American Airlines* settlement weighted participant balances in proprietary funds more heavily than non-proprietary funds. *See American Airlines*, ECF No. 127-2 at ¶ 6.4.1. In that case, the ratio was 10:1 (instead of 3:1) because the claims relating to the non-proprietary funds had already been dismissed, and could only be revived on appeal. *See Main*, 248 F. Supp.3d at 794.

Proprietary Funds: $17,091,465 (*Id.* ¶ *144*)[10]
Non-Proprietary Funds: $13,855,917 (*Id.* ¶ *146*).

- Losses from Excess Recordkeeping Expenses: $7,401,734
  (*Schmidt Report, ECF No. 309, ¶ 124*).

*Richter Decl.* ¶ *8.* The $21.9 million recovery represents over 50% of the estimated damages associated with the proprietary funds in the Plan (using the average of Dr. Pomerantz's two models for the seven actively-managed proprietary funds, plus the damages he calculated for the three proprietary index funds), and approximately 38.5% of the total investment damages including non-proprietary funds. If recordkeeping damages are included, the $21.9 million recovery represents over 34% of total estimated damages.[11] These recovery percentages compare favorably to other class action settlements. *See generally In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011) (settlement providing recovery of 16.5% of maximum recoverable damages was within the range of reasonableness); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 191 (S.D.N.Y. 2012) (approving recovery of approximately 13% of maximum provable damages); *In re China Sunergy Sec. Litig.*, No. 07-7895, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting that average settlement amounts in securities class actions over the past decade "have ranged from 3% to 7% of the class members' estimated losses") (internal quotation marks omitted); *see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

The recovery as a percentage of damages is particularly impressive given the inherent "uncertainties in fixing damages" in cases such as this. *Dardaganis v. Grace Capital Inc.*, 889

---

[10] The estimated losses from failure to consider separate account alternatives to proprietary funds overlapped with the overall estimates of proprietary fund damages outlined above.

[11] Losses associated with excess recordkeeping expenses arguably overlapped to some degree with damages associated with the funds, since recordkeeping expenses were paid out of the expenses charged for the funds, in a practice known as "revenue sharing". *Schmidt Report, ¶ 82; see also Schmidt Trial Decl., ECF No. 312, ¶ 55.*

F.2d 1237, 1244 (2d Cir. 1989); *accord*, *Donovan v. Bierwirth*, 754 F.2d 1049, 1058 (2d Cir. 1985) (such determinations are "of necessity somewhat arbitrary").[12] Because of this uncertainty, Plaintiffs were careful to provide the Court with multiple damages analyses, some of which generated lower damages estimates than others.   In particular, Dr. Pomerantz provided an alternative calculation for the Deutsche Large Cap Value Fund, with damages beginning at the end of 2012 (when the fund would have begun appearing on the "Termination Review List" set forth in the Plan's Investment Policy Statement) instead of at the beginning of the Class Period. *See Pomerantz Report (ECF No. 307) ¶¶ 111, 121*. For this timeframe, estimated damages for the Large Cap Value Fund amounted to between $17 and $18.5 million, *id. ¶ 121*, instead of $26.9 to $29.7 million for the same fund under Dr. Pomerantz's Models #1 and #2 (which calculated damages from the beginning of the statutory period ). *Pomerantz Report ¶¶ 88, 92*. In short, using a different damages methodology for one of the ten proprietary funds in the Plan would reduce Plaintiffs' damages calculation by approximately $10 million, rendering the recovery as a percentage of damages even higher.

Moreover, in addition to the foregoing monetary compensation, the Settlement also provides for meaningful prospective relief. *Richter Decl. ¶ 11.* As noted above, DBAHC has agreed that (1) all decisions regarding the selection, retention, removal, or evaluation of any Deutsche Fund in the Plan shall be delegated to an independent fiduciary appointed pursuant to ERISA § 3(38), *Settlement Agreement ¶ 7.1.1*; and (2) Deutsche Bank shall retain the independent fiduciary to provide a written opinion, within six months of the Settlement Effective Date, regarding whether any of the existing Deutsche Funds or Non-Deutsche Funds in the plan

---

[12] *See also, e.g., Tussey v. ABB, Inc.*, 746 F.3d 327, 338 (8th Cir. 2014) (instructing district court to "reevaluate its method of calculating the damage award, if any, for the participants' investment selection . . . claims"); *Tussey v. ABB, Inc.*, 850 F.3d 951, 958–61 (8th Cir. 2017), *cert. denied*, No. 17-265, 2017 WL 3594208 (U.S. Oct. 2, 2017) (remanding a second time, finding that the district court still did not adequately consider "other ways of measuring the plans' losses").

should be replaced with alternative investment vehicles (e.g., separate accounts or collective trusts), *id. ¶ 7.1.2.* This directly addresses the two issues that Plaintiffs raised in the lawsuit (self-interested selection of proprietary funds and failure to consider alternative investment vehicles to mutual funds), and further supports approval of the Settlement. *See Compare Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 06 CIV.4270 (PAC), 2009 WL 5851465, at *4 (S.D.N.Y. Mar. 31, 2009) (noting the settlement provided for "meaningful injunctive relief", the Court concluded that the settlement was "fair, reasonable, and adequate"); *Reyes v. Buddha-Bar NYC*, 08 CIV. 02494(DF), 2009 WL 5841177, at *3 (S.D.N.Y. May 28, 2009) (same).

### C. Plaintiffs Would Have Faced Potential Litigation Risks and Substantial Delay in the Absence of the Settlement

In the absence of a Settlement, Plaintiffs would have faced potential litigation risks. *See In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (noting that there is a "general risk inherent in litigating complex claims such as these to their conclusion."); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks."). These risks are objectively illustrated by the judgment that was recently entered in favor of the defendants in another case in this District involving the New York University retirement plan, following a bench trial. *See Sacerdote v. New York Univ.*, 2018 WL 3629598 (S.D.N.Y. July 31, 2018). While the facts of that case differed significantly from those here, judgment also was entered in favor of the defendants following the trial of another recent ERISA case in the District of Massachusetts that (like this case) involved the inclusion of proprietary funds in a 401(k) plan. *See Brotherston v. Putnam Investments, LLC*,

2017 WL 2634361 (D. Mass. June 19, 2017).[13] The judgment in *Putnam* is on appeal to the First Circuit, but further demonstrates the risks posed by a case such as this.

Although Plaintiffs believe there is strong support for their case, it is uncertain whether they would have prevailed at trial. Defendants' Proposed Findings of Fact and Conclusions of Law ran well over 200 pages, and included a plethora of arguments aimed at avoiding liability, including assertions that proprietary funds never made up than 50% of the funds in the Plan's core lineup, that the Plan's Qualified Default Investment Alternative ("default fund") was never a proprietary fund, that no proprietary funds were added during the statutory period, and that the percentage of plan assets invested in proprietary funds in the Plan as of March 31, 2017 was only 6.7%. *Defs.' PFFCL (ECF No. 295) ¶¶ 34-35, 37, 39.* To counter these arguments, Plaintiffs relied in part on evidence that pre-dated the class period, which Plaintiffs believed provided important context for the claims at issue. *See Pls' PFFCL (ECF No. 251) at pp. 5-12, 51-53.* However, the relevance and weight of this pre-statutory period evidence was hotly contested. *See, e.g.*, *Defs.' PFFCL ¶ 70* ("Because that statute bars any theory of breach based on the initial investment decision occurring prior to the statutory period, Plaintiffs cannot base their theory of breach within the period on … the initial investment decision.").

Defendants also emphasized the fact that they relied on an outside investment consultant (Aon Hewitt), which reviewed the Plan's investment lineup during and prior to the class period. *See Defs.' PFFCL (ECF No. 295) ¶ 62.* In response, Plaintiffs pointed out that outside advice from consultants does not "operate as a complete whitewash," *Pls' PFFCL at ¶ 134* (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272 (2d Cir. 1982)), but it was uncertain whether and to what extent this outside advice would color the Court's findings on liability.

These are just two examples of many disputed liability issues that the Court would have

---

[13] Nichols Kaster also was appointed to represent the class in Putnam, and tried the case. *Richter Decl. ¶¶ 26-27.*

had to resolve during the first phase of trial.[14] Moreover, even if Plaintiffs proved a fiduciary breach, significant issues relating to losses would have remained to be tried in the second phase of trial. *See ECF No. 249 at 6-7* (noting that "there is a dispute of material fact as to whether Plaintiffs sustained recoverable losses caused by Defendants."). The *Putnam* case illustrates the risks that plaintiffs face in attempting to prove losses caused by a fiduciary breach, and was cited extensively by Defendants' in their proposed findings of fact and conclusions of law. *See Defs.' PFFCL ¶¶ 18, 29, 32, 47, 55, 63-64, 130, 134*). The trial court in *Putnam* found that the plaintiffs "failed to establish a prima facie case of loss," despite making a persuasive showing that the fiduciaries were "no paragon of diligence" and that the defendants had failed to monitor the plan's investments. *Putnam*, 2017 WL 2634361, at *12. Similarly, in *Sacerdote*, the court found that "while there were deficiencies in the Committee's processes—including that several members displayed a concerning lack of knowledge relevant to the Committee's mandate— plaintiffs have not proven that … the Plans suffered losses as a result." 2018 WL 3629598, at *2. Although Plaintiffs believed that their damages experts had developed robust loss models, and the Court declined to grant Defendants' motion for summary judgment on this issue, these trial decisions illustrate the risks that Plaintiffs also faced on the issue of loss.

Aside from these risks, continuing the litigation would have inherently resulted in additional complex and costly proceedings before this Court, which would have significantly delayed any relief to Class Members (at best), and might have resulted in no relief at all. It is well-recognized that ERISA 401(k) cases "often lead[] to lengthy litigation." *See Krueger v. Ameriprise*, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015). In fact, it is not unusual for

---

[14] Defendants also argued (among other things) that Plaintiffs could not prove the investments in the Plan were "objectively unreasonable." *See, e.g.*, *Defs.' PFFCL ¶ 126* ("But the fact that Vanguard index funds have better cumulative performance, net of fees, th[e]n some of the proprietary active funds Plaintiffs challenge does not establish that those active funds were objectively unreasonable investment options.").

ERISA fee cases to extend for a decade or longer before final resolution. *See Tussey v. ABB Inc.*, 2017 WL 6343803, at *3 (W.D. Mo. Dec. 12, 2017) (requesting proposed findings more than ten years after suit was filed on December 29, 2006); *Tibble v. Edison Int'l*, 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed on August 16, 2007); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015) (noting that the case had originally been filed on "September 11, 2006"); *Richter Decl.* ¶ 13 (noting that "the *Boeing* litigation lasted nearly a decade before it was settled").

Even if Plaintiffs had prevailed at trial and the Court found that Defendants breached their fiduciary duties, caused the Plan to suffer losses, and awarded damages, there is a strong likelihood that Defendants would have appealed such findings to the Second Circuit. Indeed, Defendants already sought interlocutory review of the Court's order granting class certification. See *Deutsche Bank Americas Holding Corp. v. Moreno*, No. 17-2911, 2017 WL 6506349 (2d Cir. Dec. 19, 2017). Thus, at a minimum, Defendants "would undoubtedly have appealed certification if there were a final, adverse judgment." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). Given the risks, cost, and delay of further litigation, it was reasonable and appropriate for Plaintiffs to reach a settlement on the terms that were negotiated. *See Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *5 (M.D.N.C. Sept. 29, 2016) ("settlement of a 401(k) excessive fee case benefits the employees and retirees in multiple ways").

## III. THE CLASS NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED

In addition to reviewing the substance of the parties' Settlement Agreement, the Court must ensure that notice is sent in a reasonable manner to all class members who would be bound by the proposed settlement. Fed. R. Civ. P. 23(e)(1). The "best notice" practicable under the

circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice proposed here.

The Settlement Agreement provides that the Settlement Administrator will provide direct notice of the Settlement to the Settlement Class via U.S. Mail. *Settlement Agreement ¶¶ 2.51, 3.3.1.* This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985).

The content of the Settlement Notice is also reasonable. Both Settlement Notices include, among other things: (1) a summary of the lawsuit; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) a disclosure of the release of claims; (5) instructions for submitting a claim (in the event one is required); (6) instructions as to how to object to the Settlement and a date by which Settlement Class members must object; (7) the date, time, and location of the final approval hearing; (8) contact information for the Settlement Administrator; and (9) information regarding Class Counsel and the amount that Class Counsel will seek in attorneys' fees and expenses (as well as the amount of the proposed service awards). *Settlement Agreement Exs. 1 & 2.* This Settlement Notice is clearly reasonable as it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *See Lomeli v. Sec. & Inv. Co. Bahrain*, 546 Fed. App'x 37, 41 (2d Cir. 2013) (quoting *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 438 (2d Cir. 2007)) (internal citations omitted); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (settlement notice "need only describe the terms of the settlement generally").

**IV.**    **THE CERTIFIED CLASS SHOULD BE AMENDED FOR SETTLEMENT PURPOSES**

Finally, Plaintiffs request that the Court amend the existing class definition and approve

the proposed Settlement Class.  *See Latino Officers Ass'n City of New York, Inc. v. City of New*

*York*, 2004 WL 574493, at *1 (S.D.N.Y. Mar. 22, 2004) ("*Latino Officers*") (amending prior

class definition "for purposes of effectuating the proposed Settlement").

In its Class Certification Order, the Court certified the following class for litigation

purposes:

> [A]ll participants and beneficiaries of the Deutsche Bank Matched Savings Plan at
> any time on or after December 21, 2009, whose individual accounts suffered
> losses as a result of the conduct alleged in Counts One through Four of the Third
> Amended Complaint, excluding Defendants, any of their directors, and any
> officers or employees of Defendants with responsibility for the Plan's investment
> or administrative function.

*ECF No. 165*. The Court noted that this definition was "sufficient at this stage of the litigation."

The proposed Settlement Class is consistent in substance with the existing class

definition, but contains two minor modifications (as shown by the redlines below):

> [A]ll participants and beneficiaries of the Deutsche Bank Matched Savings Plan at
> any time ~~on or after~~ during the class period from December 21, 2009 through
> August 14, 2018, whose individual accounts ~~suffered losses as a result of the
> conduct alleged in Counts One through Four of the Third Amended Complaint~~
> were invested in the Disputed Investments, excluding Defendants, any of their
> directors, and any officers or employees of Defendants with responsibility for the
> Plan's investment or administrative function.

*See Settlement Agreement ¶ 2.49.*  First, the Settlement Class definition includes an end date for

the class period, now that the case has been resolved.  Second, the Settlement Class definition

operationalizes the language from the existing class definition that limited the class to persons

"whose individual accounts suffered losses as a result of the conduct alleged in … the Third

Amended Complaint." This language has been clarified to apply to persons "whose individual

accounts were invested in the Disputed Investments," which include the ten Deutsche Funds in

21

Dr. Pomerantz's damages model, *see Settlement, ¶ 2.25*, and the Non-Deutsche Funds that Plaintiffs contended could have been replaced with non-mutual fund alternatives such as separate accounts and collective trusts, *see Settlement, ¶ 2.39*. Investments that were not challenged as part of the lawsuit (such as the Deutsche stable value fund and the Vanguard collective trusts that were added to the Plan in 2014) are not included.

Federal Rule of Civil Procedure Rule 23(c)(1)(C) expressly provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Because the changes here are consistent with the existing class definition and simply provide greater clarity regarding the scope of the class period and the investments at issue, the revised Settlement Class definition should be approved. *See Latino Officers*, 2004 WL 574493, at *1.

For the reasons previously stated in the Court's class certification order (ECF No. 165), the Settlement Class meets the requirement of Rule 23(a).

- Numerosity is not in dispute as the Settlement Class includes thousands of current and former Plan participants, *see ECF No. 165 at 8*;

- The same questions supporting commonality for the original class (including Defendants' status as fiduciaries, their process for managing the Plan, and whether such process was tainted by a conflict of interest or imprudent) exist for the Settlement Class, *id. at 8-13*;

- The Class Representatives' claims continue to be typical of those of the other Class Members, *id. at 13-14*; and,

- Plaintiffs and Class Counsel continue to be adequate (having only committed more of their time to this case since class certification), *id. at 14-15*.

Likewise, certification under Rule 23(b)(1) continues to be appropriate for the Settlement Class, given the ongoing risk that separate actions would be dispositive of the interests of other

participants not parties to those separate actions, or substantially impair other participants' ability to protect their own interests. *Id. at 15-19; see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (noting that a breach trust action by a fiduciary is a "classic example" of a Rule 23(b)(1) class). Accordingly, the Court should certify the Settlement Class as defined in the Settlement Agreement.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) preliminarily approve the Settlement; (2) approve the proposed Settlement Notices and authorize distribution of the Notices; (3) approve the amended class definition and certify the Settlement Class; (4) schedule a final approval hearing; and (5) enter the accompanying Preliminary Approval Order.

Respectfully Submitted,

Dated: August 14, 2018            **NICHOLS KASTER, PLLP**

/s/ Kai H. Richter
Kai H. Richter, MN Bar No. 0296545*
Paul J. Lukas, MN Bar No. 22084X*
James H. Kaster, MN Bar No. 53946*
Carl F. Engstrom, MN Bar No. 0396298*
Jacob T. Schutz, MN Bar No. 0395648*
Michele R. Fisher, NY Bar Code # MF4600
*admitted *pro hac vice*
4600 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
krichter@nka.com
cengstrom@nka.com
lukas@nka.com
kaster@nka.com
jschutz@nka.com
fisher@nka.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2018, a true and correct copy of Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement was served by CM/ECF to the parties registered to the Court's CM/ECF system.

Dated: August 14, 2018          /s/Kai H. Richter
                                         Kai H. Richter