**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAMON MORENO, DONALD O'HALLORAN, OMKHARAN ARASARATNAM, BAIJU GAJJAR, and RAJATH NAGARAJA, individually and as representatives of a class of similarly situated persons, and on behalf of the Deutsche Bank Matched Savings Plan,<br><br>       *Plaintiffs*,<br><br>   v.<br><br>DEUTSCHE BANK AMERICAS HOLDING CORP., DEUTSCHE BANK MATCHED SAVINGS PLAN INVESTMENT COMMITTEE, DEUTSCHE BANK AMERICAS HOLDING CORP. EXECUTIVE COMMITTEE, RICHARD O'CONNELL, JOHN ARVANITIS, ROBERT DIBBLE, TIM DOWLING, RICHARD FERGUSON, JAMES GNALL, LOUIS JAFFE, PATRICK McKENNA, DAVID PEARSON, JOSEPH RICE, SCOTT SIMON, ANDREW THREADGOLD, and JAMES VOLKWEIN,<br><br>       *Defendants*. | Case No. 1:15-CV-09936 (LGS)<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................................1

BACKGROUND .................................................................................................................1

    I.   PROCEDURAL HISTORY .................................................................................1

        A.  Pleadings and Motion Practice.................................................................1

        B.  Discovery and Trial Submissions. ...........................................................3

    II.  MEDIATION .......................................................................................................4

    III.  SETTLEMENT TERMS .......................................................................................4

        A.  Scope .......................................................................................................4

        B.  Monetary Relief.......................................................................................5

        C.  Prospective Relief....................................................................................6

        D.  Release of Claims ....................................................................................7

    IV.  PRELIMINARY APPROVAL OF SETTLEMENT ..................................................7

    V.  CLASS NOTICE AND REACTION TO SETTLEMENT .........................................8

    VI.  REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY ...............................10

ARGUMENT .....................................................................................................................10

    I.  STANDARD OF REVIEW .................................................................................10

    II.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ........................12

        A.  The Recovery Provided by the Settlement Is Fair and Reasonable .......12

        B.  Continued Litigation Would Have Entailed Significant Risk..................15

        C.  ERISA Class Cases Are Complex, Expensive, and Often Lengthy ........17

        D.  The Case Was Ripe for Settlement .........................................................19

        E.  The Independent Fiduciary and Majority of Class Members Support the Settlement, and the Two Objections that Were Received Are Meritless................20

F.     The Ability of DBAHC to Withstand a Greater Judgment Is Not a Reason to Withhold Approval of the Settlement in Light of the Other Factors ........................22

III.     THE SETTLEMENT PROCESS WAS FAIR, REASONABLE, AND ADEQUATE......................22

IV.     THE CLASS NOTICE WAS REASONABLE ........................................................................23

**CONCLUSION** .....................................................................................................................24

## TABLE OF AUTHORITIES

**Cases**

*Abbott v. Lockheed Martin Corp.*, 725 F.3d 803 (7th Cir. 2013 ....................................................19

*Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475 (S.D. Ill. July 17, 2015) ..........................18

*Andrus v. New York Life Ins. Co.*, No. 1:16-cv-05698, ECF No. 75-4,

      84 (S.D.N.Y) ........................................................................................22

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ..........................................................................21

*Brotherston v. Putnam Invs., LLC*, 2017 WL 2634361 (D. Mass. June 19, 2017) ................15, 17

*Brotherston v. Putnam Investments, LLC*, 907 F.3d 17 (1st Cir. 2018) .......................................15

*Charron v. Pinnacle Group N.Y. LLC*, 874 F. Supp. 2d 179 (S.D.N.Y. 2012) ............................21

*Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013) .........................................................................21

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ..............................................11, 12

*Clark v. Ecolab Inc.*, 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ............................................11

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ..........................................................18, 22

*Dardaganis v. Grace Capital Inc.*, 889 F.2d 1237 (2d Cir. 1989) ...............................................17

*Deutsche Bank Americas Holding Corp. v. Moreno*, 2017 WL 6506349

      (2d Cir. Dec. 19, 2017) ............................................................................19

*Donovan v. Bierwirth*, 680 F.2d 263 (2d Cir. 1982) .....................................................................16

*Donovan v. Bierwirth*, 754 F.2d 1049 (2d Cir. 1985) ...................................................................17

*Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ........................23

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ..................................................11

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164

      (S.D.N.Y. 2000) ........................................................................................18

*In re China Sunergy Sec. Litig.*, 2011 WL 1899715 (S.D.N.Y. May 13, 2011)...........................13

*In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151 (S.D.N.Y. 2011) ..........................13

*In re IMAX Sec. Litig.*, 283 F.R.D. 178 (S.D.N.Y. 2012)...............................................13

*In re Lockheed Martin Corp.*, 412 Fed. Appx. 892 (7th Cir. 2011) .............................................19

*In re Marsh ERISA Litig.*, 265 F.R.D. 128 (S.D.N.Y.2010).....................................................20, 21

*In re Med. X-Ray Film Antitrust Litig.*, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998)...................19

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156

    (S.D.N.Y. 2007).......................................................................................21

*In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57 (S.D.N.Y. 1993) ..............................24

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997)...............................15, 22

*In re PaineWebber Ltd. P'ships Litig.*, 117 F.3d 721 (2d Cir. 1997) ...........................................22

*In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132 (2d Cir. 1998) ...........................................11

*In re Rite Aid Corp. Sec. Litig.,* 146 F.Supp.2d 706 (E.D. Pa. 2001) ...........................................13

*In re Sumitomo Copper Litig.*, 189 F.R.D. 274 (S.D.N.Y.1999).....................................................20

*In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) ...............15, 18

*Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000) .........................................................................10

*Johnson v. Fujitsu Tech. & Business of America, Inc.*, 2018 WL 2183253

    (N.D. Cal. May 11, 2018) ...................................................................................13

*Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, 2016 WL 6542707

    (D. Conn. Nov. 3, 2016) .....................................................................................12, 18

*Krueger v. Ameriprise*, 2015 WL 4246879 (D. Minn. July 13, 2015)..........................................18

*Kruger v. Novant Health, Inc.*, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016)............................19

*Langford v. Devitt*, 127 F.R.D. 41 (S.D.N.Y. 1989).....................................................................23

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1995) .................................11

*Main v. American Airlines, Inc.*, 248 F. Supp.3d 786 (N.D. Tex. 2017) ......................................14

*Main v. American Airlines, Inc.*, 3:16-cv-01033 (N.D. Tex. Feb. 21, 2018) ..........................13, 14

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465

     (S.D.N.Y. Mar. 31, 2009) ................................................................................14

*Perkins v. Linkedin Corp.*, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016) ....................................22

*Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985) .................................................................23

*Reyes v. Buddha-Bar NYC*, 2009 WL 5841177 (S.D.N.Y. May 28, 2009) .................................14

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ......................................................19

*Sacerdote v. New York Univ.*, 2018 WL 3629598 (S.D.N.Y. July 31, 2018) .........................15, 17

*Tibble v. Edison Int'l.*, 135 S. Ct. 1823 (2015) ...........................................................................19

*Tibble v. Edison Int'l*, 2017 WL 3523737 (C.D. Cal. Aug. 16, 2017) ........................................18

*Torres v. Gristede's Operating Corp.,* 519 F. App'x 1 (2d Cir. 2013) .........................................15

*Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014) ......................................................................19

*Tussey v. ABB, Inc.*, 850 F.3d 951 (8th Cir. 2017) ......................................................................19

*Tussey v. ABB, Inc.*, 2017 WL 3594208 (U.S. Oct. 2, 2017) ......................................................19

*Tussey v. ABB Inc.,* 2017 WL 6343803 (W.D. Mo. Dec. 12, 2017) ...........................................18

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 8:15-cv-01614, ECF No. 185

     (C.D. Cal. July 30, 2018) ................................................................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ............................... *passim*

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) ......................................................11, 12, 24

*Wildman v. Am. Century Servs., LLC*, No. 4:16-cv-00737, slip op.

     (W.D. Mo. Jan. 23, 2019) ................................................................................17

*Wildman v. Am. Century Servs., LLC*, No. 4:16-cv-00737, ECF No. 304

(W.D. Mo. Jan. 23, 2019) ...................................................................................................15

**Rules, Regulations, and Statutes**

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................................23

Fed. R. Civ. P. 23(e)(2)........................................................................................................10

**Other Authorities**

Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended,

75 Fed. Reg. 33830 .......................................................................................................10

4 NEWBERG ON CLASS ACTIONS (4th ed. 2002).........................................................................11

Restatement (Third) of Trusts, § 100 cmt. b(1) (2012)...................................................17

## INTRODUCTION

On October 9, 2018, this Court preliminarily approved the Parties' Class Action Settlement Agreement, which resolves Plaintiffs' claims against Defendants under the Employee Retirement Income Security Act ("ERISA") relating to the Deutsche Bank Matched Savings Plan ("Plan").[1] *ECF No. 335.* The Court found on a preliminary basis that the terms of the Settlement are "sufficiently fair, reasonable, and adequate to warrant sending notice of the Settlement to the Settlement Class," and approved the distribution of the Settlement Notices as specified in the Settlement Agreement. *Id. ¶¶ 1.D, 5.* Since that time, an Independent Fiduciary has confirmed that the Settlement terms are reasonable, *see Declaration of Kai Richter in Support of Motion for Final Approval ("Third Richter Decl."), Ex. 1,* and only two Class Members out of more than 36,000 have objected to the Settlement. These objections are conclusory (*see Third Richter Decl., Exs. 2-3*), lack any legal support, and are meritless for the reasons discussed below. Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement. Defendants do not oppose this motion as parties to the Settlement.

## BACKGROUND

### I. PROCEDURAL HISTORY[2]

#### A.    Pleadings and Motion Practice

On December 21, 2015, Ramon Moreno and Donald O'Halloran, participants in the Plan, filed a Class Action Complaint against the sponsor of the Plan, Deutsche Bank Americas Holding Corp. ("DBAHC"), and certain related parties, asserting claims for breach of fiduciary duty, prohibited transactions, and equitable restitution under ERISA. *See ECF No. 1.* In

---

[1] All capitalized terms have the meaning assigned to them in Article 2 of the Parties' Settlement Agreement, which appears on the docket at ECF No. 322-1.

[2] The procedural history of the litigation was previously recounted in Plaintiffs' briefing in support of their motion for preliminary approval of the Settlement (ECF No. 321) and their pending motion for attorneys' fees, costs, and class representative service awards (ECF No. 339). For ease of reference, Plaintiffs have recounted that history here.

summary, Plaintiffs alleged that the Plan's fiduciaries: (1) retained proprietary funds in the Plan's investment lineup that a prudent and unbiased fiduciary would not have retained; and (2) failed to appropriately consider alternative investment vehicles such as separate accounts and collective trusts. *See id.* ¶¶ *2-10.* On March 30, 2016, the same two Plaintiffs filed a First Amended Complaint ("FAC"). *ECF No. 27.*

On April 29, 2016, DBAHC and the other defendants to the FAC filed a motion to dismiss the FAC. *ECF No. 30.* On October 13, 2016, the Court issued an Opinion and Order granting the motion to dismiss as to Plaintiffs' equitable restitution claim (Count V of the FAC), and denying the motion to dismiss as to Plaintiffs' other claims for breach of fiduciary duty, prohibited transactions, and failure to monitor fiduciaries. *ECF No. 57.*

On January 3, 2017, Plaintiffs filed their Second Amended Complaint ("SAC"), naming certain individual defendants previously identified as John Does, adding Aon Hewitt Investment Consulting, Inc. ("Aon Hewitt") as a defendant, adding three named Plaintiffs (Omkharan Arasaratnam, Baiju Gajjar, and Rajath Nagaraja), and adding certain allegations, including those related to the Plan's recordkeeping expenses. *See ECF. No. 66*. The defendants affiliated with DBAHC filed an Answer to the SAC on January 17, 2017, and an Amended Answer adding one affirmative defense on March 15, 2017. *ECF Nos. 96, 136*. Aon Hewitt filed a motion to dismiss on February 17, 2017. *ECF No. 108*.

After obtaining document discovery from Aon Hewitt and deposition testimony from certain witnesses affiliated with Deutsche Bank, Plaintiffs voluntarily dismissed Aon Hewitt from the action without prejudice on March 13, 2017. *ECF No. 126*. On the same date, Plaintiffs moved for class certification. *ECF No. 127.* On September 5, 2017, the Court granted Plaintiffs' motion for class certification and certified under Rule 23(b)(1)(B) the following class:

> [A]ll participants and beneficiaries of the Deutsche Bank Matched Savings Plan at any time on or after December 21, 2009, whose individual accounts suffered losses as a result of the conduct alleged in Counts One through Four of the Third Amended Complaint, excluding Defendants, any of their directors, and any officers or employees of Defendants with responsibility for the Plan's investment or administrative function.

*ECF No. 165.* Defendants subsequently filed a petition seeking review of the Court's class certification order pursuant to Federal Rule of Civil Procedure 23(f), but the Second Circuit denied the petition on December 19, 2017. *See ECF No. 174.*

While Plaintiffs' motion for class certification was pending, Plaintiffs filed their Third Amended Complaint ("TAC"), adding allegations regarding Defendants' alleged failure to adhere to Plan documents as required by 29 U.S.C. § 1104(a)(1)(D). *ECF No. 162.* Defendants filed an Answer to the TAC on September 8, 2017. *ECF No. 166.*

On February 5, 2018, Defendants filed a motion for partial summary judgment (*ECF No. 183*), and Plaintiffs filed their response on March 5, 2018 (*ECF No. 192*). On June 6, 2019, the Court granted in part and denied in part Defendants' motion. *ECF No. 249.* Specifically, the Court granted Defendants' motion as to Plaintiffs' prohibited transaction claims, but denied the motion as to Plaintiffs' fiduciary duty claim and claim for failure to monitor fiduciaries. *Id.* A bench trial on liability was scheduled to commence on July 9, 2018.[3] *ECF No. 179.*

### B.    Discovery and Trial Submissions

Throughout the litigation, the Parties engaged in extensive discovery, including: (1) production of over 90,000 pages of documents by Defendants; (2) production of over 44,000 pages of documents by third parties; (3) production of additional documents by the Class Representatives; (4) eight depositions of defense fact witnesses; (5) depositions of each of the Class Representatives; (6) two third-party fact witness depositions; and (7) five expert

---

[3] The Court had ordered that only liability would be tried during this trial, reserving a determination of damages for a later date (assuming the Court found liability). *ECF No. 248.*

depositions (following an exchange of their expert reports). *Declaration of Kai Richter in Support of Motion for Preliminary Approval ("First Richter Decl."), ECF No. 322, ¶¶ 15-20.*

Based on the evidence that was gathered, the Parties submitted a large volume of materials in anticipation of trial. Among other things, these included over two dozen witness declarations (*ECF Nos. 250, 253, 255-258, 260, 263-266, 267-268, 285-2, -3, -4, 299-305, 312*), hundreds of exhibits (*see ECF Nos. 316-1, -2, -3*), and extensive proposed findings of fact and conclusions of law (*ECF Nos. 285-1, 295*). Plaintiffs also filed a trial brief (*ECF No. 276*), to which Defendants responded (*ECF No. 283*).

## II. MEDIATION

On April 16, 2018, prior to trial and while Defendants' motion for partial summary judgment was still pending, the Parties engaged in a full-day mediation before retired federal district court judge Layn Phillips. *First Richter Decl. ¶¶ 21-22.* Judge Phillips is an experienced and well-respected mediator, who has successfully resolved numerous ERISA cases and other actions. *First Richter Decl. ¶ 21 & Ex. C.* Although a settlement was not reached during the mediation, the Parties agreed that negotiations could continue through Judge Philips. *Id. ¶ 23.* After extensive further negotiations through Judge Phillips, the parties reached a settlement-in-principle on July 8, 2018, immediately preceding the scheduled start date of trial on July 9. The terms of the parties' settlement are memorialized in the Settlement Agreement. *Id. ¶ 24.*

## III. SETTLEMENT TERMS

### A. Scope

Consistent with the Court's earlier class certification order, the Settlement Agreement applies to the following Settlement Class:

> [A]ll participants and beneficiaries of the Deutsche Bank Matched Savings Plan at any time during the Class Period from December 21, 2009 through August 14, 2018, whose individual accounts were invested in the Disputed Investments,[4] excluding Defendants, any of their directors, and any officers or employees of Defendants with responsibility for the Plan's investment or administrative functions.

*Settlement Agreement ¶ 2.49.* This class definition tracks the original class certified by the Court, *see ECF No. 165*, while providing for an end date to the Class Period and operationalizing the language from the original class definition that limited the class to persons "whose individual accounts suffered losses as a result of the conduct alleged in Counts One through Four of the Third Amended Complaint."

### B.     Monetary Relief

Pursuant to the Settlement Agreement, Defendants have agreed to contribute a Gross Settlement Amount of $21.9 million to a Qualified Settlement Fund ("Settlement Fund") for the benefit of the Settlement Class.[5]   *Settlement ¶¶ 2.34, 5.4-5.5.* All monies deposited in the Qualified Settlement Fund are held in an interest-bearing Escrow Account by an Escrow Agent (Alerus Financial). *Id. ¶¶ 2.28, 5.1, 5.5; see also Declaration of Michelle J. Kopperud (Kopperud Decl.") ¶¶ 14-15.* In the event that the Settlement receives final court approval and becomes effective, the Settlement Fund will be distributed to Class Members within 120 days after the Settlement Effective Date, pursuant to the Plan of Allocation in the Settlement Agreement (net of deductions for any approved payments of attorneys' fees and costs, administrative expenses, and Class Representative service awards).[6] *Settlement ¶¶ 2.38, 6.1.*

---

[4] The Disputed Investments consist of the Deutsche Funds and Non-Deutsche Funds identified in Paragraphs 2.24 and 2.39 of the Settlement Agreement. They do not include the Stable Value Fund or Vanguard collective trusts, as Plaintiffs did not raise any issues relating to those investments.

[5] One-third of the Gross Settlement Amount has already been deposited into the Settlement Fund. *See Settlement ¶ 5.4.* The remainder will be deposited within 20 business days of the Settlement Effective Date. *Id. ¶ 5.5.*

[6] Plaintiffs filed a separate Motion for Approval of Attorneys' Fees, Expenses and Service Awards on December 18, 2018. *ECF No. 338.* Pursuant to the Court's comments at the preliminary approval hearing, Class Counsel will receive any approved distributions at the same time as the Settlement Class.

Under the proposed Plan of Allocation, the Net Settlement Amount will be allocated among eligible Class Members in proportion to their weighted quarterly account balances in the Disputed Investments that formed the basis for the lawsuit. *Settlement ¶ 6.4.* Consistent with Class Counsel's assessment of the relative strength of the claims that were asserted and the loss calculations of Plaintiffs' damages expert (Dr. Steve Pomerantz), Class Members' balances in Deutsche Funds will be weighted three times more heavily than balances in the Non-Deutsche Funds. *Id. ¶ 6.4.1*; *see also First Richter Decl. ¶ 4.*[7]

Current Participants will have their Plan accounts automatically credited with their share of the Settlement Fund. *Id. ¶ 6.5.* Former Participants are required to submit a claim form, which allows them to elect to have their distribution rolled-over into an individual retirement account or other eligible employer plan, or to receive a direct payment by check. *Id. ¶ 6.6.*[8] Under no circumstances will any monies revert to Deutsche Bank.  Any checks that are uncashed will revert to the Qualified Settlement Fund and will be paid to the Plan for the purpose of defraying administrative fees and expenses of the Plan.  *Id. ¶¶ 6.11, 6.12.*

**C.  Prospective Relief**

In addition to the monetary relief described above, the Settlement also provides for prospective relief. Specifically, the following procedures shall apply to the management of the Plan on a prospective basis:

- All decisions regarding the selection, retention, removal, or evaluation of any Deutsche Fund in the Plan shall be delegated to an independent fiduciary appointed pursuant to ERISA § 3(38); and

---

[7] Plaintiffs' expert estimated approximately $42,552,090 - $43,352,090 in damages resulting from the Deutsche Funds, and approximately $13,855,917 in damages from the Non-Deutsche Funds.  *See First Richter Decl. ¶ 8.* The ratio of these amounts is approximately 3:1.

[8] To minimize administrative costs, if the dollar amount of the settlement payment to an Authorized Former Participant is calculated by the Settlement Administrator to be less than $5.00, then that Authorized Former Participant's payment or pro rata share shall be zero. *Id. ¶ 6.4.2.*

- Deutsche Bank shall retain the independent fiduciary to provide a written opinion, within six months of the Settlement Effective Date, regarding whether any of the existing Deutsche Funds or Non-Deutsche Funds in the plan should be replaced with alternative investment vehicles (e.g., separate accounts or collective trusts).

*Settlement ¶ 7.1.*  Subject to the foregoing, the Plan's Investment Committee shall retain the responsibilities and authority vested to it by the Plan Document.  *Id. ¶ 7.1.3.*

### D.    Release of Claims

In exchange for the relief provided by the Settlement, the Settlement Class will release Defendants and affiliated persons and entities (the "Released Parties") from all claims:

2.45.1  That were asserted in the Action . . . or that arise out of, relate to, are based on, or have any connection with any of the allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions or occurrences asserted in the Class Action . . . .;

2.45.2  That would be barred by res judicata based on entry by the Court of the Final Approval Order;

2.45.3  That relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Net Settlement Fund pursuant to the Plan of Allocation; or

2.45.4  That relate to the approval by the Independent Fiduciary of the Settlement Agreement, unless brought against the Independent Fiduciary alone.

*See Settlement ¶¶ 2.44, 2.45.*

### IV.    PRELIMINARY APPROVAL OF SETTLEMENT

On October 9, 2018, the Court issued an Order granting preliminary approval of the proposed Settlement. *See ECF No. 335*. In its Order, the Court preliminarily certified the Settlement Class for Settlement purposes and found that the terms of the Settlement were "sufficiently fair, reasonable, and adequate to warrant sending notice of the Settlement to the Settlement Class." *Id. ¶¶ 1.D, 5.* The Court therefore approved the distribution of the Settlement Notices as specified in the Settlement Agreement. *Id.* In addition, the Court appointed Analytics

Consulting, LLC ("Analytics") to serve as the Settlement Administrator, distribute the Settlement Notices, and carry out the other duties specified by the Settlement Agreement. *Id.* ¶¶ *3, 5.B.*[9]

## V.   CLASS NOTICE AND REACTION TO SETTLEMENT

Pursuant to the Court's Order preliminarily approving the Settlement, Analytics mailed the appropriate Settlement Notice (and Former Participant Claim Form, if applicable) to each of the Class members identified by the Plan's recordkeepers. *See Kopperud Decl.* ¶¶ *7-9.* In total, 36,081 Settlement Notices were mailed, including 21,295 Notices to Current Participants and 14,786 Notices to Former Participants. *Id.*

Prior to sending these Notices, Analytics cross-referenced the addresses on the Class List with the United States Postal Service National Change of Address ("NCOA") Database. *Id.* ¶ *8.* In the event that any Settlement Notices were returned, Analytics re-mailed the Notice to any forwarding address that was provided, and performed a skip trace in an attempt to ascertain a valid address for the Class Member in the absence of a forwarding address. *Id.* ¶¶ *11-12.* As a result, the notice program was very effective. Out of 36,081 Settlement Notices that were mailed, only 2.49% were ultimately undeliverable despite these efforts. *Id.* ¶ *13.*

In the event that any Class Members desired further information, Analytics established a settlement website at www.deutsche401ksettlement.com. *Id.* ¶ *16.* Among other things, the Settlement Website included: (1) a "Frequently Asked Questions" page containing a clear summary of essential case information; (2) a "Home" page and "Important Deadlines" page, each containing clear notice of applicable deadlines; (3) case and settlement documents for

---

[9] Shortly after the Court entered its preliminary approval order, the Court rescheduled the date of the final approval hearing for February 28, 2019 at the request of counsel. *See ECF No. 337.* Notice of the rescheduled hearing date is prominently displayed on the settlement website (www.deutsche401ksettlement.com), and the order resetting the hearing date also has been posted on the settlement website.

download (including the initial and Amended Complaints, Answer to the operative Third Amended Complaint, Order Granting Class Certification, Order regarding Summary Judgment, Settlement Agreement, Settlement Notices, Former Participant Claim Form, Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, the Preliminary Approval Order, the Order continuing the final approval hearing, and Plaintiffs' Motion for Approval of Attorneys' Fees, Expenses, and Service Awards); and (4) email, phone, and U.S. mail contact information for Analytics. *Id.* In addition, Analytics created and maintained a toll-free telephone support line (1-866-256-5912) as a resource for Class Members seeking information about the Settlement. *Id.* ¶ *17*. This telephone number was referenced in the Notices, and also appears on the settlement website. *Id.*

The deadline to submit objections to the Settlement was January 17, 2019. *ECF No. 335 at ¶ 7.* As of that date, only two objections to the Settlement were received. *See Third Richter Decl. ¶ 4 & Exs. 2-3.*[10] Neither objection is supported by any legal authority. The first objection states in its entirety:

> I have been informed of the Moreno vs. Deutsche Bank Class Action Settlement. I object to paying any attorneys' fees, costs, administrative expenses or class representatives' compensation because I did not initiate this class action suit.

*Third Richter Decl. Ex. 2.* The second objection states in its entirety:

> I worked for Bankers Trust and later Deutsche Bank for 17+ years from 1997-2014. Deutsche Bank was always very fair with their pension benefits.
>
> 30% of the settlement + attorney fees are going to you? I think this is just a money grab and I will have absolutely nothing to do with it. The judge who agrees to these terms should be ashamed…this is extortion…extortion through the legal process…but still just extortion.

*Id. Ex. 3.*

---

[10] No further objections have been received since that time. *Third Richter Decl. ¶ 4.*

## VI.   REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY

Pursuant to Paragraph 3.1 of the Settlement and applicable ERISA regulations,[11] the Settlement was submitted to an independent fiduciary (Newport Trust Company) for review following the Court's preliminary approval order. *See Third Richter Decl. Ex. 1*. After reviewing the Settlement and other case documents, and interviewing counsel for each of the Parties, the Independent Fiduciary concluded that "(i) the Settlement terms, including the scope of the release of claims, the $21.9 million Settlement amount and non-monetary relief provided for in the Settlement, and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone; (ii) the terms and conditions of the transaction are no less favorable to the Plan than comparable arms-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances; and, (iii) the transaction is not part of an agreement, arrangement, or understanding designed to benefit a party in interest." *Id. at 2-3*. Accordingly, the Independent Fiduciary "determined that the Plan should not object to the Settlement or any portion thereof, including but not limited to the requested attorneys' fees and costs, and as such authorize[d] the Plan's participation in the Settlement." *Id at 3*.

## ARGUMENT

### I.   STANDARD OF REVIEW

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. Fed. R. Civ. P. 23(e)(2). After notice to class members and a hearing, a court may approve a class action settlement if it is "fair, adequate, and reasonable, and not the product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000).

---

[11] *See* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830.

Whether to approve a proposed class action settlement is a matter of judicial discretion. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995). However, there is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks and citation omitted); *see also In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998); 4 NEWBERG ON CLASS ACTIONS ("NEWBERG") § 11:41 (4th ed. 2002).  As a result, "Courts should give proper deference to the private consensual decision of the parties . . . [and] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ." *Clark v. Ecolab Inc.*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (citations omitted).   A court "must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case" because "[s]uch procedure would emasculate the very the purpose for which settlements are made." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

In determining whether a proposed class action settlement is fair, reasonable, and adequate, courts review both the "substantive terms" of the settlement and the "process" by which the settlement was reached. *Weinberger v. Kendrick*, 698 F.2d 61, 73-74 (2d Cir. 1982). The following factors (the "*Grinnell* factors") guide the court's review: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range

of reasonableness of the settlement fund to a possible recovery in light of all of the attendant risks of litigation. *Grinnell,* 495 F.2d at 463; *see also Wal-Mart Stores*, 396 F.3d at 117; *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, 2016 WL 6542707, at *7 (D. Conn. Nov. 3, 2016) (applying *Grinnell* factors in determining that recent ERISA class settlement was "substantively fair" for plan participants). Additionally, in regards to the settlement process, courts look for "arms-length negotiations", "experience[d]" counsel, and "effective representation of the interests" in the negotiations. *Weinberger,* 698 F.3d at 74.

## II.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The *Grinnell* factors outlined above overwhelmingly favor approval of the Settlement in this case.

### A.   The Recovery Provided by the Settlement Is Fair and Reasonable

As the Independent Fiduciary noted in its Report, the recovery provided by the Settlement "[is] reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone." *Third Richter Decl. Ex. 1.* On a gross basis, the $21.9 million settlement amount represents over 50% of the estimated damages associated with the proprietary funds in the Plan (using the average of Dr. Pomerantz's two models for the seven actively-managed proprietary funds, plus the damages he calculated for the three proprietary index funds), and approximately 38.5% of the total investment damages including non-proprietary funds. *First Richter Decl., ¶ 8-9; see also Pomerantz Report, ECF No. 307, at ¶¶ 67, 88, 92, 144, 146.* If recordkeeping damages are included, the $21.9 million recovery represents over 34% of total estimated damages.[12] *First Richter Decl. ¶ 9; see also Schmidt Report, ECF No. 309, at ¶ 124.* This recovery exceeds the recovery percentage that has been approved in

---

[12] Losses associated with excess recordkeeping expenses arguably overlapped to some degree with damages associated with the funds, since recordkeeping expenses were paid out of the expenses charged for the funds, in a practice known as "revenue sharing." *Trial Decl. of Martin Schmidt, ECF No. 312, ¶¶ 55, 82.*

other cases. *See, e.g., In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011) (settlement providing recovery of 16.5% of maximum recoverable damages was within the range of reasonableness); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 191 (S.D.N.Y. 2012) (approving recovery of approximately 13% of maximum provable damages); *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting that average settlement amounts in securities class actions over the past decade "have ranged from 3% to 7% of the class members' estimated losses") (internal quotation marks omitted); *accord*, *In re Rite Aid Corp. Sec. Litig.,* 146 F.Supp.2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses"); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 8:15-cv-01614, ECF No. 185 (C.D. Cal. July 30, 2018) (approving $12 million ERISA 401(k) settlement that represented approximately one-quarter of estimated total plan-wide losses of $47 million). *Johnson v. Fujitsu Tech. & Business of America, Inc.*, 2018 WL 2183253, at *6-7 (N.D. Cal. May 11, 2018) (approving $14 million ERISA 401(k) settlement that "represent[ed] nearly 40% of Plaintiffs' core damages claim …, and just under 10% of the Plaintiffs' most aggressive 'all in' measure of damages").

Moreover, the Settlement compares favorably to other class action settlements when measured as a percentage of total plan assets or on a per-participant basis (or in the aggregate). *See First Richter Decl. ¶ 6.* An excellent case in point is the settlement that was recently approved in another 401(k) lawsuit involving American Airlines and its former investment subsidiary, American Beacon. *See Main v. American Airlines, Inc.*, 3:16-cv-01033, ECF No. 137 (N.D. Tex. Feb. 21, 2018). Like the present case, that case also involved a 401(k) plan lineup with some proprietary funds and some non-proprietary funds, and the allegations relating to the

non-proprietary funds focused on the failure to utilize separate accounts as alternatives to those funds. *See Main v. American Airlines, Inc.*, 248 F. Supp.3d 786, 793-94 (N.D. Tex. 2017) (recounting allegations relating to proprietary index funds, proprietary actively-managed funds, and failure to use separate account alternatives to mutual funds).  The recovery here is almost identical to *American Airlines* on an absolute basis ($21.9 million vs. $22.0 million), and is significantly greater than *American Airlines* on a per-participant basis and percentage-of-assets basis. *Richter Decl. ¶ 6.*[13]

Moreover, in addition to monetary compensation, the Settlement also provides for meaningful prospective relief. As noted above, DBAHC has agreed that (1) all decisions regarding the selection, retention, removal, or evaluation of any Deutsche Fund in the Plan shall be delegated to an independent fiduciary appointed pursuant to ERISA § 3(38), *Settlement Agreement ¶ 7.1.1*; and (2) DBAHC shall retain the independent fiduciary to provide a written opinion, within six months of the Settlement Effective Date, regarding whether any of the existing Deutsche Funds or Non-Deutsche Funds in the plan should be replaced with alternative investment vehicles (e.g., separate accounts or collective trusts), *id. ¶ 7.1.2.* This directly addresses the two issues that Plaintiffs raised in the lawsuit (self-interested retention of proprietary funds and failure to consider alternative investment vehicles to mutual funds), and further supports approval of the Settlement.  *See Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *4 (S.D.N.Y. Mar. 31, 2009) (noting the settlement provided for "meaningful injunctive relief", and concluding that the settlement was "fair, reasonable, and adequate"); *Reyes v. Buddha-Bar NYC*, 2009 WL 5841177, at *3 (S.D.N.Y. May 28, 2009)

---

[13] Like the present Settlement, the *American Airlines* settlement weighted participant balances in proprietary funds more heavily than non-proprietary funds.  *See American Airlines*, ECF No. 127-2 at ¶ 6.4.1.  In that case, the ratio was 10:1 (instead of 3:1) because the claims relating to the non-proprietary funds had already been dismissed, and could only be revived on appeal. *See Main*, 248 F. Supp.3d at 794.

(same); *accord*, *Torres v. Gristede's Operating Corp.,* 519 F. App'x 1, 5 (2d Cir. 2013) (noting that injunctive and non-monetary relief were relevant factors in assessing success obtained for purposes of fee award).

## B. Continued Litigation Would Have Entailed Significant Risk

In the absence of a settlement, Plaintiffs would have faced potential litigation risks. *See In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (noting that there is a "general risk inherent in litigating complex claims such as these to their conclusion."); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks."). These risks are objectively illustrated by the judgment that was recently entered in favor of the defendants in another case in this District involving the New York University retirement plan, following a bench trial. *See Sacerdote v. New York Univ.*, 2018 WL 3629598 (S.D.N.Y. July 31, 2018). While the facts of that case differed significantly from those here, other recent ERISA 401(k) cases involving proprietary funds also have resulted in trial judgments in favor of the defendants. *See Wildman v. Am. Century Servs., LLC*, No. 4:16-cv-00737, ECF No. 304 (W.D. Mo. Jan. 23, 2019) (ruling in favor of defendants on all counts); *Brotherston v. Putnam Invs., LLC*, 2017 WL 2634361 (D. Mass. June 19, 2017) (ruling in favor of defendants on plaintiffs' breach of fiduciary duty claim).[14]

Although Plaintiffs believe there is strong support for their case, it is uncertain whether they would have prevailed at trial. Defendants' Proposed Findings of Fact and Conclusions of Law ran well over 200 pages, and included a plethora of arguments aimed at avoiding liability, including assertions that proprietary funds never made up than 50% of the funds in the Plan's core lineup, that the Plan's Qualified Default Investment Alternative ("default fund") was never

---

[14] Although the trial court's decision in *Putnam* was vacated in part by the First Circuit, 907 F.3d 17 (1st Cir. 2018), the defendants in *Putnam* have filed a petition for writ of certiorari with the United States Supreme Court, highlighting the ongoing risk and uncertainty associated with that action.

a proprietary fund, that no proprietary funds were added during the statutory period, and that the percentage of plan assets invested in proprietary funds in the Plan as of March 31, 2017 was only 6.7%. *Defs.' PFFCL* (*ECF No. 295*) *¶¶ 34-35, 37, 39.* To counter these arguments, Plaintiffs relied in part on evidence that pre-dated the class period, which Plaintiffs believed provided important context for the claims at issue. *See Pls' PFFCL (ECF No. 251) at pp. 5-12, 51-53.* However, the relevance and weight of this pre-statutory period evidence was hotly contested. *See, e.g.*, *Defs.' PFFCL ¶ 70* ("Because that statute bars any theory of breach based on the initial investment decision occurring prior to the statutory period, Plaintiffs cannot base their theory of breach within the period on . . . the initial investment decision.").

Defendants also emphasized the fact that they relied on an outside investment consultant (Aon Hewitt), which reviewed the Plan's investment lineup during and prior to the class period. *See Defs.' PFFCL* (*ECF No. 295*) *¶ 62.* In response, Plaintiffs pointed out that outside advice from consultants does not "operate as a complete whitewash," *Pls' PFFCL at ¶ 134* (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272 (2d Cir. 1982)), but it was uncertain whether and to what extent this outside advice would color the Court's findings on liability. These are just two examples of many disputed liability issues that the Court would have had to resolve during the first phase of trial.[15]

Moreover, even if Plaintiffs proved a fiduciary breach, additional issues relating to loss would have remained to be tried in the second phase of trial. *See ECF No. 249 at 6-7* (noting that "there is a dispute of material fact as to whether Plaintiffs sustained recoverable losses caused by Defendants."). The Second Circuit has noted the inherent "uncertainties in fixing damages" in

---

[15] Defendants also argued (among other things) that Plaintiffs could not prove that the investments in the Plan were "objectively unreasonable." *See, e.g.*, *Defs.' PFFCL ¶ 126* ("But the fact that Vanguard index funds have better cumulative performance, net of fees, than some of the proprietary active funds Plaintiffs challenge does not establish that those active funds were objectively unreasonable investment options.").

cases such as this. *Dardaganis v. Grace Capital Inc.*, 889 F.2d 1237, 1244 (2d Cir. 1989); *see also Donovan v. Bierwirth*, 754 F.2d 1049, 1058 (2d Cir. 1985) (such determinations are "of necessity somewhat arbitrary"); Restatement (Third) of Trusts, § 100 cmt. b(1) (2012) (noting that determination of investment losses in breach of fiduciary duty cases is "difficult"); Accordingly, the loss issue would have presented significant additional risks for Plaintiffs. For example, in *Sacerdote*, the court found that "while there were deficiencies in the Committee's processes—including that several members displayed a concerning lack of knowledge relevant to the Committee's mandate—plaintiffs have not proven that ... the Plans suffered losses as a result." 2018 WL 3629598, at *2. Likewise, the trial court decisions in both *American Century* and *Putnam* resulted in adverse rulings on the issue of loss. *See American Century*, slip op. at 35-37 (finding that "Plaintiffs failed to prove a loss to the Plan"); *Putnam*, 2017 WL 2634361, at *12 (finding that plaintiffs "failed to establish a prima facie case of loss," despite making a persuasive showing that the fiduciaries were "no paragon of diligence" and that the defendants had failed to monitor the plan's investments).[16]  Although Plaintiffs believe that their damages experts developed robust loss models, it is uncertain how the Court would have ruled on the issue of loss in the event that it found a breach.

### C.   ERISA Class Cases Are Complex, Expensive, and Often Lengthy

Aside from these risks, continuing the litigation would have resulted in complex and costly additional proceedings, which would have significantly delayed any relief to Class Members (at best), and might have resulted in no relief at all.  These considerations also support approval of the Settlement.

---

[16] The loss ruling in *Putnam* was subsequently vacated by the First Circuit and is the subject of the defendants' pending petition for writ of certiorari.

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom., D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). ERISA cases are no exception. *See Kemp-DeLisser,* 2016 WL 6542707, at *9 (finding complex damages analysis weighed in favor of ERISA class settlement); *In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (observing that ERISA fiduciary breach claims are "complex" and contain "inherent" risks in litigating them to their conclusion); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015) (noting that ERSIA 401(k) cases are "particularly complex"). It is well-recognized that "ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation." *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015). In fact, it is not unusual for ERISA 401(k) cases to extend for a decade or longer before final resolution. *See Tussey v. ABB Inc.,* 2017 WL 6343803, at *3 (W.D. Mo. Dec. 12, 2017) (requesting proposed findings more than ten years after suit was filed on December 29, 2006); *Tibble v. Edison Int'l*, 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed on August 16, 2007); *Abbott*, 2015 WL 4398475, at *4 (noting that the case had originally been filed on "September 11, 2006"); *First Richter Decl. ¶ 13* (noting that "the *Boeing* litigation lasted nearly a decade before it was settled").

Although trial was imminent at the time the Parties reached their Settlement in this case, the impending trial only would have resolved the liability issues, and, if Plaintiffs prevailed, a second trial would have remained to be held at a later date on the issue of loss. Moreover, even if Plaintiffs had prevailed during both phases of trial (on liability and damages), there is a strong likelihood that Defendants would have appealed any adverse rulings to the Second Circuit.

Indeed, Defendants already sought interlocutory review of the Court's order granting class certification. *See Deutsche Bank Americas Holding Corp. v. Moreno*, No. 17-2911, 2017 WL 6506349 (2d Cir. Dec. 19, 2017). Thus, at a minimum, Defendants "would undoubtedly have appealed certification if there were a final, adverse judgment." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

Moreover, any appeal to the Second Circuit might not have ended there, and could have resulted in a remand for further trial court proceedings (as the First Circuit ordered in *Putnam* and as other circuit courts have ordered in ERISA cases – sometimes multiple times),[17] or further appellate proceedings before the Supreme Court (as happened in *Tibble*).[18] Given the inherent risks, cost, and delay of further litigation, it was reasonable and appropriate for Plaintiffs to reach a settlement on the terms that were negotiated. *See Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *5 (M.D.N.C. Sept. 29, 2016) ("[S]ettlement of a 401(k) excessive fee case benefits the employees and retirees in multiple ways"); *accord*, *In re Med. X-Ray Film Antitrust Litig.*, 1998 WL 661515, at *3 (E.D.N.Y. Aug. 7, 1998) ("[C]ontinued litigation would require significant amounts of time on the part of the litigants, with accompanying expense . . . . Accordingly, the complexity of this case as well as the probable duration and expense of further litigation favor approval of the proposed settlement.").

### D.   The Case Was Ripe for Settlement

There is no question that the case was ripe for settlement. As noted above, the Parties did not reach an agreement-in-principle until literally the eve of trial. *See supra* at 4.  By that time,

---

[17] *See, e.g., Tussey v. ABB, Inc.*, 746 F.3d 327, 338 (8th Cir. 2014) (instructing district court to "reevaluate its method of calculating the damage award, if any, for the participants' investment selection … claims"); *Tussey v. ABB, Inc.*, 850 F.3d 951, 958-61 (8th Cir. 2017), *cert. denied,* No. 17-265, 2017 WL 3594208 (U.S. Oct. 2, 2017) (remanding a second time, finding that the district court still did not adequately consider "other ways of measuring the plans' losses"); *In re Lockheed Martin Corp.*, 412 Fed. Appx. 892, 893 (7th Cir. 2011) (remanding for further proceedings on issue of class certification); *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803 (7th Cir. 2013) (remanding class certification issue a second time).
[18] *See Tibble v. Edison*, 135 S. Ct. 1823 (2015).

the Parties had completed extensive fact discovery (including voluminous document productions, eight defense witness depositions, five named Plaintiff depositions, and two third-party depositions) and also had exchanged expert reports and taken the depositions of five experts. *See supra* at 3-4. The Parties were further informed in their negotiations by the Court's pretrial rulings on Defendants' motion to dismiss, Plaintiffs' motion for class certification, Defendants' motion for partial summary judgment, and several motions in limine. In addition, the Parties had the opportunity to review each side's pretrial filings setting forth their legal arguments and the evidence they intended to rely upon at trial. The advanced stage of proceedings objectively demonstrates that the settlement negotiations were fully informed, and strongly supports approval of the Settlement. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 139 (S.D.N.Y.2010) (stage of proceedings "weigh[ed] heavily in favor of approval" where class counsel conducted document discovery and depositions, exchanged expert reports, and fully briefed class certification); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281-82 (S.D.N.Y.1999) (stage of proceedings "strongly" favored approval of settlements reached after "[p]laintiffs had conducted extensive discovery, investigation and analyses, and the proceedings were in the advanced stage of pointing or preparing for trial").

  **E.**  **The Independent Fiduciary and Majority of Class Members Support the Settlement, and the Two Objections that Were Received Are Meritless**

  The positive response from the Independent Fiduciary and the Class as a whole also support the Settlement. After completing the review required by the Paragraph 3.1 of the Settlement and applicable law (*see supra* at n.11), the Independent Fiduciary approved "the Settlement terms, including the scope of the release of claims, the $21.9 million Settlement amount and non-monetary relief provided for in the Settlement, and the amount of any attorneys' fee award or any other sums to be paid from the recovery," and found them to be reasonable.

*See Third Richter Decl., Ex. 1.*  Moreover, the Settlement received nearly unanimous approval from the Settlement Class, as all five class representatives have submitted declarations in Support of the settlement, *see ECF Nos. 323-327*, and only two Class Members out of more than 36,000 (less than one-hundredth of a percent of the Class) objected to the Settlement.  The Court may infer from this that the overwhelming majority of Class Members believe the Settlement is fair, reasonable, and adequate. *See Charron v. Pinnacle Group N.Y. LLC*, 874 F. Supp. 2d 179, 198 (S.D.N.Y. 2012) ("The Court cannot help but conclude that the silence and acquiescence of 99% of the Class Members speaks more loudly in favor of approval than the strident objections of the 1% against it."), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167–68 (S.D.N.Y. 2007) ("[T]he relatively small number of objections . . . militate in favor of approving the settlement as fair, adequate, and reasonable.").  As the Second Circuit has noted, "the absence of substantial opposition is indicative of class approval[.]" *Wal-Mart Stores,* 396 F.3d at 118.

The two objections that were submitted should be overruled. The first objects to any distribution from the Settlement Fund for fees or costs.  *See Third Richter Decl. Ex. 2* ("I object to paying any attorneys' fees, costs, administrative expenses or class representatives' compensation because I did not initiate this class action suit."). However, it is accepted and customary to charge attorneys' fees, expenses, and service awards against a common fund, as there would be no fund to distribute but for the efforts of counsel and the class representatives. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y.2010) ("It is well-established that counsel who create a common fund like this one

are entitled to the reimbursement of litigation costs and expenses."). The second objection appears to be directed at the claims in general rather than the Settlement. *See Third Richter Decl., Ex. 3* ("Deutsche Bank was always very fair with their pension benefits."). "Because such objections [arguing the class claims lack merit] appear to support no recovery for the Class, these objectors' interests are adverse to the Class, and the objections are overruled." *Perkins v. Linkedin Corp.*, 2016 WL 613255, at *4 (N.D. Cal. Feb. 16, 2016). Indeed, an almost identical objection was overruled in another ERISA 401(k) case in this District. *See Andrus v. New York Life Ins. Co.*, No. 1:16-cv-05698 (S.D.N.Y), at ECF No. 75-4 (objecting that lawsuit was "frivolous") and ECF No. 84 at ¶ 9(i) (overruling objection on ground that the "objection did not contest the adequacy of the settlement").[19]

### F.  The Ability of DBAHC to Withstand a Greater Judgment Is Not a Reason to Withhold Approval of the Settlement in Light of the Other Factors

Finally, although DBAHC has considerable assets, the "ability to withstand a higher judgment, standing alone, does not suggest that [a] settlement is unfair." *D'Amato*, 236 F.3d at 86; *see also In re Painewebber I*, 171 F.R.D. at 129, *aff'd* 117 F.3d 721 (2d Cir. 1997). Because the other *Grinnell* factors "weigh heavily in favor of settlement[,]" the Settlement should be approved, notwithstanding the financial wherewithal of DBAHC. *D'Amato*, 236 F.3d at 86.[20]

### III.  THE SETTLEMENT PROCESS WAS FAIR, REASONABLE, AND ADEQUATE

The process by which the Settlement was reached also was fair, reasonable, and adequate. As the Court noted in its Preliminary Order: (A) "The proposed settlement resulted from arm's-length negotiations between Class Counsel and defense counsel overseen by a neutral mediator;" and (B) "The Settlement was negotiated only after Class Counsel had conducted discovery and

---

[19] In any event, the objection misapprehends the nature of the suit, as this case related to Deutsche Bank's 401(k) plan, not its "pension benefits."

[20] The other defendants to the case were all individuals or collections of individuals (the Investment Committee and Executive Committee).

received pertinent information and documents from Defendants and non-parties[.]" *ECF No. 335 at 1*. Accordingly, the Settlement is entitled to a presumption of fairness. *See Wal-Mart*, 396 F.3d at 116 ("[A] presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery") (citation omitted).[21]

## IV.    THE CLASS NOTICE WAS REASONABLE

Finally, the class notice program in this case also was reasonable and satisfied the requirements of Due Process and Rule 23.  The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice that was provided here.

As noted above, the Settlement Administrator mailed the Court-approved Settlement Notices to Class Members via U.S. Mail to their last known address.  *See supra* at 8.  This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Langford v. Devitt*, 127 F.R.D. 41, 45 (S.D.N.Y. 1989) ("[N]otice mailed by first class mail has been approved repeatedly as sufficient notice of a proposed settlement."); *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *11 (S.D.N.Y. Sept. 9, 2015) ("Here, the robust Notice Program, which included mailing individual Notices to the last known address of all Class members, more than meets the requirements of due process, Rule 23, and the notice standards articulated by the Second Circuit."). The record reflects that 97.5% of Settlement Notices were successfully delivered. *Kopperud Decl. ¶ 13*. This confirms the effectiveness of the notice program in this case.

---

[21] Class Counsel's qualifications were set forth in the detail in connection with their prior motion for attorneys' fees. *See Second Richter Decl. (ECF No. 340) ¶¶ 2-16.*

The content of the Notices also was reasonable. Both Settlement Notices included, among other things: (1) a summary of the lawsuit; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) a disclosure of the release of claims; (5) instructions for submitting a claim (in the event that one was required); (6) instructions as to how to object to the Settlement and a date by which Settlement Class members must object; (7) the date, time, and location of the final approval hearing; (8) contact information for the Settlement Administrator; and (9) information regarding Class Counsel and the amount that Class Counsel would seek in attorneys' fees and expenses. *See Kopperud Decl. Exs. 2 & 3.* This was more than sufficient to "apprise the prospective members of the class of the terms of the proposed settlement and of the options . . . open to them in connection with the proceedings." *Wal-Mart Stores*, 396 F.3d at 114 (quoting *Weinberger*, 698 F.2d at 70); *see also In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (settlement notice "need only describe the terms of the settlement generally").  Notably, no Settlement Class Member has claimed that the Notices were deficient, and to the extent they had any questions, they could review the settlement website, call the toll-free telephone line, or contact the Settlement Administrator or Class Counsel.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order granting final approval of the Settlement in the form submitted herewith.

Respectfully Submitted,

Dated: January 31, 2019        **NICHOLS KASTER, PLLP**


/s/Kai H. Richter
Kai H. Richter, MN Bar No. 0296545*
Paul J. Lukas, MN Bar No. 22084X*

James H. Kaster, MN Bar No. 53946*
Carl F. Engstrom, MN Bar No. 0396298*
Jacob T. Schutz, MN Bar No. 0395648*
Michele R. Fisher, NY Bar Code # MF4600
*admitted *pro hac vice*
4600 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
krichter@nka.com
cengstrom@nka.com
lukas@nka.com
kaster@nka.com
jschutz@nka.com
fisher@nka.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2019, a true and correct copy of Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement was served by CM/ECF to the parties registered to the Court's CM/ECF system.

Dated: January 31, 2019                    /s/Kai H. Richter
                                           Kai H. Richter