```
UNITED STATES DISTRICT COURT                                    USDC SDNY
SOUTHERN DISTRICT OF NEW YORK                                   DOCUMENT
------------------------------------------------------------X   ELECTRONICALLY FILED
                                                            :   DOC #:_____
RAMON MORENO, et al.,                                       :   DATE FILED: 3/7/2019
                                        Plaintiffs,         :
                                                            :   15 Civ. 9936 (LGS)
               -against-                                    :
                                                            :   OPINION AND ORDER
DEUTSCHE BANK AMERICAS HOLDING                              :
CORP., et al.,                                              :
                                        Defendants.         :
----------------------------------------------------------- X
```

LORNA G. SCHOFIELD, District Judge:

This is an ERISA class action brought by participants in the Deutsche Bank Matched Savings Plan (the "Plan"). On March 1, 2019, the Court granted final approval of the parties' class action settlement, which created a settlement fund of $21,900,000 (the "Settlement Fund"). Pursuant to Federal Rule of Civil Procedure 23(h), Class Counsel moves for attorneys' fees, reimbursement of litigation expenses, settlement administration expenses and incentive awards for the named Plaintiffs. For the reasons discussed herein, the Court awards Class Counsel attorneys' fees of $6,570,000, equivalent to 30% of the Settlement Fund. The Court also awards $759,779.30 in litigation expenses, $106,536 in settlement administration expenses and $10,000 incentive awards for each of the five named Plaintiffs.

**I.     STANDARD**

In a Rule 23 class action, the "attorneys whose efforts created the fund are entitled to a reasonable fee -- set by the court -- to be taken from the fund." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). "What constitutes a reasonable fee is properly committed to the sound discretion of the district court . . . and will not be overturned absent an abuse of discretion . . . ." *Id.* (citations omitted). In evaluating a proposed fee, a court must heed the

factors set forth in *Goldberger*: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* at 50 (alterations omitted).

The Second Circuit has approved the use of two methods to calculate attorneys' fees: the "lodestar" method and the "percentage of the fund" method. *See id.* at 47. Under the lodestar method, the court multiplies the reasonable hours billed by a reasonable hourly rate, then adjusts the award based on factors such as the risk of the litigation and the performance of the attorneys. *See id.* Under the percentage of the fund method, the fee is a reasonable percentage of the total value of the settlement fund created for the class. *See id.* The percentage method is adopted in this case, as it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014) (comparing the lodestar and percentage methods); *McDaniel v. Cty. Of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (noting that the percentage method is the trend in the Second Circuit). Nevertheless, the lodestar remains useful as a "cross check on the reasonableness of the requested percentage." *Goldberger*, 209 F.3d at 50 (internal quotation marks omitted).

## II. DISCUSSION

### A. Attorneys' Fees

In applying the *Goldberger* factors, this opinion adopts the three-step approach set forth in *Colgate-Palmolive*. The first step is to determine a baseline reasonable fee by reference to other common fund settlements of a similar size, complexity and subject matter. *Colgate-*

*Palmolive*, 36 F. Supp. 3d at 348. This step considers three of the *Goldberger* factors -- the requested fee in relation to the settlement, the magnitude and complexity of the case, and the policy consideration of avoiding a windfall to class counsel. *Id.* The second step is to make any necessary adjustments to the baseline fee based on the *Goldberger* factors of risk, quality of representation and other public policy concerns. *Id.* The third step is to apply the lodestar method as a cross-check, which addresses the final *Goldberger* factor of the time and labor expended by counsel. *Id.* Based on this analysis, a reasonable baseline fee in this case is 27%. A 3% upward adjustment to the baseline fee is warranted based on the substantial non-monetary benefits of the settlement.

### i. Comparison to Court-Approved Fees in Other Class Action Settlements

In using the percentage of the fund approach, the critical *Goldberger* factor is the size of the requested fee in relation to the settlement. *See Colgate-Palmolive*, 36 F. Supp. 3d at 348. Accordingly, the first step is to determine a baseline reasonable fee by looking to other common fund settlements of a similar size, complexity and subject matter. In conducting this assessment, a "sliding scale" approach -- awarding a smaller percentage for fees as the size of the settlement fund increases -- is appropriate. *See Wal-Mart,* 396 F.3d at 122–23 ("Recognizing that economies of scale could cause windfalls in common fund cases, courts have traditionally awarded fees for common fund cases in the lower range of what is reasonable."); *Goldberger*, 209 F.3d at 52 (noting that it is not "ten times as difficult to prepare, and try or settle a 10 million dollar case as it is to try a 1 million dollar case").

Historical data of fees awarded in common fund cases provide an unbiased and useful reference for comparing fees cases of similar magnitude as a starting point for the sliding scale. Professor Brian T. Fitzpatrick's 2010 empirical study examined data from 688 class action

3

settlements in 2006 and 2007.  *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL LEGAL STUD. 811, 839 (2010) ("Fitzpatrick"). Fitzpatrick divided the cases into ten ranges of recovery (deciles) based on the amount of the settlement, and then calculated the mean and median fee percent, as well as the standard deviation.  *See id.* at 839.  The $21.9 million settlement in this case is in the eighth decile of cases; in that decile, the median fee was 25% with a standard deviation of 7.5%.  *See id.*  As noted by the court in *Colgate-Palmolive*, Fitzpatrick may "understate the appropriate percentage for fees in ERISA cases," which "concern[] a highly specialized area of law."  *Colgate-Palmolive*, 36 F. Supp. 3d at 350.  Accordingly, a reasonable baseline fee for an ERISA case of this size is 27%.

### ii. Consideration of Risk, Result and Policy Considerations

In light of the substantial non-monetary benefits achieved by the settlement, an upward adjustment to the baseline fee is warranted.  "Considering the non-monetary benefits and relief created by counsel's efforts is important because it encourages attorneys to obtain meaningful affirmative relief."  *Kruger v. Novant Health, Inc.*, No. 14 Civ. 208, 2016 WL 6769066, at *3 (M.D.N.C. Sept. 29, 2016); *Torres v. Gristede's Operating Corp.*, 519 Fed. App'x 1, 5 (2d. Cir. 2013) (summary order) (considering non-monetary benefits in assessing the proportionality of a fee award to the settlement amount).  Here, the parties' settlement provides for significant prospective non-monetary relief.  Pursuant to the settlement agreement, Defendant Deutsche Bank Americas Holding Corp. has agreed that all decisions regarding the selection, retention, removal or evaluation of any Deutsche Fund in the Plan shall be delegated to an independent fiduciary.  Moreover, the independent fiduciary will provide a written opinion regarding whether any of the existing funds in the Plan should be replaced with alternative investment vehicles.

4

Under the circumstances of this case, these non-monetary benefits have significant value for Plan participants.

Litigation risk does not warrant an adjustment to the baseline fee; there is no evidence that the risks in this action were significantly greater than those in cases of a similar size, complexity and subject matter. Likewise, quality of representation does not warrant an adjustment to the baseline fee; although the $21.9 million settlement represents over 34% of total estimated damages, there is no reason for the Court to conclude that this result is so exceptional as to warrant an increase in the baseline percentage. *See Goldberger*, 209 F.3d at 55 (stating that "the quality of representation is best measured by results").

### iii. The Lodestar Cross–Check

The last step of the analysis is to cross-check the fee award against the lodestar multiplier. The lodestar multiplier is calculated by dividing the fee award by the lodestar (the reasonable hours billed multiplied by a reasonable hourly rate). Here, a fee award equivalent to 30% of the settlement fund represents a lodestar multiplier of approximately 1.8. This is within the typical range for cases of this size, complexity and subject matter. *See Colgate-Palmolive*, 36 F. Supp. 3d at 353 (approving lodestar multiplier of 5.0 in $45.9 million ERISA settlement); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 469 (S.D.N.Y. 2004) (approving lodestar multiplier of 2.6 in $78 million ERISA settlement).

### B.     Litigation and Settlement Administration Expenses

Class Counsel moves for reimbursement of $759,779.30 in litigation expenses incurred in connection with this action. This figure includes expenses for experts ($568,519.42), travel ($69,307.96), mediation ($42,340.00) and depositions ($34,908.49). Courts routinely award such costs. *See Fleisher v. Phoenix Life Ins. Co.*, Nos. 11 Civ. 8405, 14 Civ. 8714, 2015 WL

10847814, at *23 (S.D.N.Y. Sept. 9, 2015). Likewise, Class Counsel's request for $106,536 in settlement administration expenses (comprising $64,036 to the settlement administrator, $2,500 to the escrow agent and $40,000 to the independent fiduciary) is granted.

**C. Incentive Awards**

An incentive award may be given to compensate named plaintiffs for efforts expended "for the benefit of the lawsuit." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Civ. 5450, 2018 WL 3863445, at *2 (S.D.N.Y. Aug. 14, 2018). Class Counsel requests an incentive award of $10,000 for each of the five named plaintiffs to compensate them for their efforts and personal time spent advancing the litigation on behalf of the Class. Plaintiffs produced documents, appeared for depositions, participated in mediation and reviewed pleadings and the settlement agreement. The requested incentive award is in line with those awarded in similar ERISA class actions. *See, e.g.*, *Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 09 Civ. 686, 2012 WL 2064907, at *3 (S.D.N.Y. June 7, 2012) (awarding $50,000 to each of the three named plaintiffs); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 151 (S.D.N.Y. 2010) (awarding $15,000 to each of the three named plaintiffs).

**III. CONCLUSION**

For the foregoing reasons, Class Counsel's request for $6,570,000 in attorneys' fees, $759,779.30 in litigation expenses, $106,536 for settlement administration expenses and $10,000 in incentive awards for each of the five named Plaintiffs is GRANTED. Funds for litigation expenses and settlement administration expenses may be disbursed immediately. The attorneys' fees award and incentive awards shall be disbursed when the distribution of the Settlement Fund to the Class has been substantially completed.

Dated: March 7, 2019
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE